**INSTITUTE FOR JUSTICE**
Paul V. Avelar* (AZ Bar no. 023078)
398 S. Mill Ave., Suite 301
Tempe, AZ 85281
Tel.: (480) 557-8300
Fax: (480) 557-8305
Email: pavelar@ij.org
*Counsel for Service*

Michael Greenberg* (DC Bar no. 1723725)
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
Email: mgreenberg@ij.org

* Application for admission
*pro hac vice* to be filed

**THE KERNAN LAW FIRM, APC**
S. Michael Kernan (CA Bar no. 181747)
R. Paul Katrinak (CA Bar no. 164057)
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
Tel: (310) 490-9777
Fax: (310) 861-0503
Email: MKernan@kernanlaw.net
         PKatrinak@kernanlaw.net

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RYAN CROWNHOLM; and CROWN CAPITAL ADVENTURES, INC., d/b/a MYSITEPLAN.COM, | |
| Plaintiffs, | No. _____ |
| v. | |
| RICHARD B. MOORE, in his official capacity as Executive Officer of the California Board for Professional Engineers, Land Surveyors, and Geologists; ROSSANA D'ANTONIO, in her | **COMPLAINT** |

official capacity as President of the California
Board for Professional Engineers, Land
Surveyors, and Geologists; MICHAEL
HARTLEY, in his official capacity as Vice-
President of the California Board for
Professional Engineers, Land Surveyors, and
Geologists; FEL AMISTAD, ALIREZA
ASGARI, DUANE FRIEL, KATHY JONES
IRISH, COBY KING, ELIZABETH
MATHIESON, PAUL NOVAK,
MOHAMMAD QURESHI, FRANK
RUFFINO, WILFREDO SANCHEZ, and
CHRISTINA WONG, in their official
capacities as members of the California Board
for Professional Engineers, Land Surveyors,
and Geologists,

Defendants.

1. This is a civil-rights complaint for declaratory and injunctive relief against the enforcement of a California law, the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code §§ 8700 *et seq.*, which Defendants enforce and have used to try to shut down MySitePlan.com, a business owned and operated by Plaintiffs.

2. Plaintiffs provide a useful service to homeowners and contractors that even the National Council of Examiners for Engineering and Surveying (NCEES) recognizes should not require a surveyor license. Plaintiffs use preexisting public data—Geographic Information System (GIS), satellite imagery and client-provided information—to generate new information—an aerial-view drawing of a property showing features relative to the lot boundaries, called a site plan. The creation and dissemination of information—including as part of a business—is speech within the protection of the First Amendment.

3. These kinds of site plans do not authoritatively determine property boundaries or locations and do not require training or experience as a surveyor. Indeed, building departments across the state accept site plans that are drawn by people other than surveyors, architects, or engineers. These include site plans drawn by contractors and by homeowners themselves.

4. Plaintiffs expressly explain that their site plans are not legal surveys or intended to be or replace a legal survey. Plaintiffs do not stamp, sign, or seal any plans. Instead, their site

plans are intended for general informational use and for use where building departments do not require that a site plan be prepared by a licensed surveyor, architect, or engineer.

5. Nevertheless, Defendants use California's vague, broad, and outdated statutes, rules, and regulations governing "land surveying" to shut down MySitePlan.com because it is not a licensed land surveyor. Defendants' enforcement violates Plaintiffs' constitutional rights protected by the First and Fourteenth Amendments.

<b>JURISDICTION AND VENUE</b>

6. Plaintiffs bring this civil-rights action under the First and Fourteenth Amendments to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

7. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

8. Venue is authorized in this judicial district by 28 U.S.C. § 1391(b)(1)-(2).

<b>PARTIES</b>

**I. Plaintiffs**

9. Plaintiff Ryan Crownholm, an individual, is a U.S. citizen who lives in California. He is the sole shareholder, director, and officer of Plaintiff Crown Capital Adventures, Inc.

10. Ryan is not licensed as a professional engineer, a professional land surveyor, a professional geologist, or in any other capacity by the Board.

11. Plaintiff Crown Capital Adventures, Inc., is a Delaware corporation, registered as a foreign corporation in California, doing business as MySitePlan.com. Plaintiff Ryan Crownholm is the sole shareholder, director, and officer of Plaintiff Crown Capital Adventures, Inc.

12. Through Plaintiff Crown Capital Adventures, Inc., Plaintiff Ryan Crownholm is the sole owner and operator of MySitePlan.com.

**II. Defendants**

13. The California Board for Professional Engineers, Land Surveyors, and Geologists is created by statute and vested by the State of California with the authority to enforce the provisions and requirements of the Act. Cal. Bus. & Prof. Code § 8710.

14. Defendant Richard B. Moore is the Executive Officer of the California Board for

Professional Engineers, Land Surveyors, and Geologists. He is sued in his official capacity. Defendant Richard B. Moore is also a licensed professional land surveyor ("PLS").

15. Defendant Rossana D'Antonio is the President of the California Board for Professional Engineers, Land Surveyors, and Geologists. She is sued in her official capacity.

16. Defendant Michael Hartley is the Vice-President of the California Board for Professional Engineers, Land Surveyors, and Geologists. He is sued in his official capacity.

17. Defendants Fel Amistad, Alireza Asgari, Duane Friel, Kathy Jones Irish, Coby King, Elizabeth Mathieson, Paul Novak, Mohammad Qureshi, Frank Ruffino, Wilfredo Sanchez, and Christina Wong are members of the California Board for Professional Engineers, Land Surveyors, and Geologists. They are each sued in their official capacity.

18. As the Executive Officer and members of the California Board for Professional Engineers, Land Surveyors, and Geologists, Defendants (collectively, the "Board") share ultimate responsibility for enforcing the statutes and regulations at issue here.

19. The Board's enforcement of those statutes and regulations has deprived and threatens to deprive Plaintiffs of their rights protected by the First and Fourteenth Amendments.

## STATEMENT OF FACTS

### I.     Ryan Crownholm and MySitePlan.com.

20. Ryan Crownholm describes himself as a "serial entrepreneur," and his history bears this out.

21. Ryan began his college education while serving in the Army from 1996 to 1999.

22. Upon his honorable discharge, Ryan continued his education at Diablo Valley College and then St. Mary's College in California, from which he graduated in 2003 with a Bachelor of Arts in economics and business administration.

23. While still in college, Ryan started a successful rubbish removal/hauling company using his own pickup truck.

24. That company's success led to more entrepreneurial opportunities. To take on larger jobs, Ryan obtained a California demolition contractor license.

25. Starting in 2007, during the housing market crash, Ryan's company began to

1    specialize in residential demolition, excavation, and swimming pool removal.

2        26.    Eventually, Ryan obtained a California "general engineering" contractor license.

3        27.    Ryan's experience as a licensed contractor gave him experience with site plans.

4        28.    As a precondition to issuing various building permits—including demolition
5    permits—California county and municipal building departments often require submission of a site
6    plan drawing.

7        29.    This site plan drawing is, however, not necessarily a survey.

8        30.    To obtain a permit, the site plan drawing need only show the basic layout of a
9    property and a simple explanation of the changes that will be made to it.

10        31.    The site plan drawing requirement is so simple that homeowners and contractors are
11    allowed to create and submit it themselves.

12        32.    For example, Contra Costa County explains that

13        Almost all projects require plans. These include, but are not limited to, new
14        structures, demolitions, additions, alterations, interior/exterior remodels, running
       new electrical, water or gas lines, repairs, outdoor kitchens, pergolas, pavilions,
       decks, carports, garages, docks, pools, foundation repairs, ADUs, and JR. ADUs,
15        solar, energy storage systems, and backup generators.

16    https://www.contracosta.ca.gov/7863/Applying-for-a-Building-or-Grading-Permi

17        33.    Contra Costa County further explains that

18        Most projects will require Architectural, Structural, Electrical, and often Mechanical and
19        Plumbing plans. Many details and calculations are also required, often these include
       structural and Title 24 energy calculations. Your design professional is the best resource to
20        help you have a complete submittal.

21    https://www.contracosta.ca.gov/7863/Applying-for-a-Building-or-Grading-Permi

22        34.    But not all projects require plans prepared by a "design professional." Some plans,
23    Contra Costa County explains, can be prepared by an "unlicensed person."
24    https://www.contracosta.ca.gov/DocumentCenter/View/45674/WHEN-IS-A-LICENSED-
25    PROFESSIONAL-REQUIRED?bidId=.

26        35.    Moreover, not all site plans must be prepared by a "design professional." Some
27    projects require only simple site plans that may be prepared by anyone.

28        36.    Several California counties and municipalities provide guidance to non-surveyors

on how to prepare their own site plan drawings for submission to permit issuing agencies.

37.   For example, Contra Costa County tells unlicensed people how to draw a site plan, what information to provide in a site plan, and provides an exemplar for unlicensed people to use:



https://www.contracosta.ca.gov/DocumentCenter/View/44308/How-to-Draw-a-Site-Plan?bidId=.

38.   Other counties and municipalities provide similar guidance, including:

- Monterey County: https://www.co.monterey.ca.us/government/departments-a-h/housing-community-development/development-services/building-services/preparing-a-site-plan

- Napa County: https://www.countyofnapa.org/DocumentCenter/View/7162/Sample-Site-Plan-PDF

- City of Citrus Heights: https://www.citrusheights.net/1094/How-to-Prepare-a-Site-Plan

- City of Chino Hills: https://www.chinohills.org/DocumentCenter/View/1563/How-

to-Prepare-A-Residential-Plot-Plan?bidId=

- City of Danville: https://www.danville.ca.gov/DocumentCenter/View/5351/How-to-Plot-Plan-PDF
- City of Murrieta: https://www.murrietaca.gov/DocumentCenter/View/137/Site-Plot-Plan-IB-105?bidId=
- City of Pleasant Hill: https://www.pleasanthillca.org/246/Plot-Plan-Instructions
- City of San Gabriel: https://www.sangabrielcity.com/DocumentCenter/View/217/How-to-Prepare-a-Site-Plan---A-Homeowners-Guide
- City of Visalia: https://www.visalia.city/civicax/filebank/blobdload.aspx?BlobID=14080.

39.     Site plans are routinely submitted to various California county and municipal building permit issuers by non-surveyors, including contractors and homeowners with no surveyor training.

40.     Site plans prepared by non-surveyors, including contractors and homeowners with no surveyor training, are routinely accepted by various California county and municipal building permit issuers.

41.     These various California county and municipal building permit issuers know that these site plans are not prepared by licensed surveyors and accept them because the permit issuers do not need legal surveys for their purposes. They just need a general picture of the site.

42.     When Ryan worked as a contractor, he spent hours hand drawing basic site plans to obtain demolition permits.

43.     Building permit issuers always accepted Ryan's hand-drawn site plans because they did not need a legal survey that required a licensed surveyor. They just needed a general picture of the site.

44.     Originally, Ryan did his site plan drawings by literally tracing by hand data and images from GIS data or even Google Maps, a method taught to him by county and municipal building permit issuer staff.

45.     For example, the City of San Gabriel Community Development Department advises

homeowners to prepare a site plan by using GIS maps maintained by the Los Angeles County Assessor to determine the "property boundaries," "dimensions" and "size" of their lot, and then adding the locations and measurements of "all structures and other physical features" of the site. City of San Gabriel, *A Homeowner's Guide to Site Plan Preparation for Small Projects*, https://www.sangabrielcity.com/DocumentCenter/View/217/How-to-Prepare-a-Site-Plan---A-Homeowners-Guide?bidId=.

46.    GIS (Geographic Information System) is a computer system that analyzes and displays geographically referenced information (data that is attached to a unique location). GIS is used in public health; urban planning; banking; insurance; supply chain management; forestry, timber, and other resource management; earth sciences, biology, and many other fields.

47.    The United States Geologic Survey maintains a publicly available GIS, The National Map, https://apps.nationalmap.gov/viewer/, which displays various geographically referenced data on a map.

48.    Many other governments, especially at the county and municipal level, also maintain publicly available GIS that contain greater detail within the jurisdiction. These display parcel property boundaries, property ownership and tax records, parcel addresses, property building and other coverage, orthoimagery (aerial and/or satellite imagery geometrically corrected to a uniform scale), and other information. And because this publicly available GIS is at a uniform scale, these GIS often allow measurements of distances, dimensions, and area, to be calculated within the GIS based on polygon drawings.

49.    The Sacramento County Assessor's Parcel Viewer, available at https://assessorparcelviewer.saccounty.gov/jsviewer/assessor.html, is an example of these GIS. Every county in California has a similar publicly available GIS.

50.    Google Maps is not a true GIS because it lacks the extensive analytical capabilities of true GIS. But Google Maps contains much of the same information as GIS, including information about parcel property boundaries, locations, and building and other coverage, orthoimagery, and even street-view imagery.

51.    On information and belief, hundreds, if not thousands, of non-surveyors in

California routinely submit site plans based on copied GIS data or Google Maps to county and municipal building permit issuers.

52.     On information and belief, county and municipal building permit issuers routinely accept site plans based on copied GIS data or Google Maps submitted by non-surveyors.

53.     Eventually, Ryan learned how to use publicly available information from GIS to create electronic site plan drawings in a Computer-aided Design (CAD) program.

54.     Based on government-provided GIS and other publicly available imagery, Ryan could electronically draft a site plan—including rough measurements—without ever visiting a property. He would then send the draft to a client to take measurements to confirm.

55.     These site plan drawings can be used for general informational or planning purposes.

56.     These site plan drawings can also be submitted by the client or by Ryan to a county or municipal building permit issuer.

57.     These site plan drawings were always accepted by county or municipal building permit issuers.

58.     In fact, building permit issuers appreciated Ryan's site plan drawings because they were easier to use than the typically hand-drawn plans they receive for such permits.

59.     Other contractors started asking Ryan for site plan drawings.

60.     No one ever thought that Ryan's site plan drawings were surveys.

61.     Eventually, Ryan used his experience to start MySitePlan.com in 2013.

62.     MySitePlan.com is headed by a disclaimer reading "THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR REPLACE ONE."

63.     The website further warns users that "**Before ordering:** Please verify with your building department that they **DO NOT** require that the plan to be prepared by surveyor, architect or engineer. **This is not a Legal Survey, nor is it intended to be or replace a Legal Survey**. We are a Drafting Company and do not stamp, sign or seal plans. Our plans are non-certified." https://www.mysiteplan.com/collections/frontpage.

64.     The webpage further explains:

**What Is a Non-Certified Site Plan?**

A non-certified site plan is one that can be created by a homeowner, unlicensed individual, or a company like My Site Plan.

We use GIS (Geographical Information System) lot lines, satellite imagery, and client provided information to create the first draft which is sent to the client to verify dimensions. If you need any dimensions adjusted just mark them onto the draft and send back to us. We take care of those free of charge. We make no representation regarding the accuracy of our sources.

As long as a certified plan isn't required for your project, we stand by our work with a money-back guarantee.

**What Is a Certified Site Plan?**

A certified site plan is a site plan that is prepared by and stamped by an architect, engineer, or surveyor and requires a high level of accuracy. This will require a visit to your site.

Often, permit authorities will require a certified site plan for building additions or lot subdivisions where having dead-on measurements is a must. Every city is different, so it is always best to call to verify requirements before ordering a plan.

https://www.mysiteplan.com/pages/certified-site-plans

65.     Occasionally, someone requests certified plans from MySitePlan.com. Ryan and his agents tell those requestors to seek a locally licensed surveyor, engineer, or architect.

66.     Neither MySitePlan.com nor Ryan have ever done a survey, claimed to do surveys, or claimed to be a surveyor.

67.     MySitePlan.com contracts with non-licensed individuals to prepare these site plan drawings based on publicly available satellite imagery and GIS data.

68.     Every drawing prepared by MySitePlan.com includes MySitePlan.com's name.

69.     No drawing done by MySitePlan.com carries any signature or seal.

70.     The drawings done by MySitePlan.com are literally that: drawings. They are pictures that do not purport to be authoritative or surveys, much less authoritative surveys.

71.     An example of the most popular version of a site plan drawing from MySitePlan.com is:

1
2
3
4
5
6
7
8
9
10
11
12
13



14  https://www.mysiteplan.com/collections/frontpage/products/plot-plan-showing-structures-tree-

15  and-vegetation?variant=386904444.

16      72.     The site plan drawings done by MySitePlan.com are used for a variety of purposes,

17  including:

18          • Applying for a building permit for a new outdoor structure (Shed, fence, deck, gazebo, etc.)

19          • Applying for a demolition permit for the demolition of a house or another structure

20

21          • Swimming pool removals or remodels

22          • Landscape planning, including layout of bushes, trees, and sprinklers, and yard work maintenance instructions

23          • Applying for building permits in cities with tree protection requirements. Planning departments find it useful to determine if any extra protection is required for trees on the property

24

25          • Wedding, farmers market, and other event layout planning

26          • During COVID shutdowns, restaurants used site plan drawings to plan outdoor dining tables on streets and parking lots

27

28

- Maps for apartment complexes, hotels, and motels to show tenants and guests the location of buildings and units and directions to get to their apartment or room

- Vacation rental permits

- Sketching out a new roof line

- Conditional Use Permits for Commercial Properties, including plotting out parking spaces

73. MySitePlan.com does drawings in any English-speaking jurisdiction that has GIS data publicly available. This includes Canada, Australia, and nearly all U.S. States—including California.

74. MySitePlan.com has created approximately 42,000 site plan drawings in its nine years of operation.

75. No building department or client has ever complained to Plaintiffs about MySitePlan.com site plan drawings.

**II.    The Board uses the Professional Land Surveyor's Act to try to shut down MySitePlan.com.**

76. California regulates land surveying through its Professional Land Surveyors' Act (Cal. Bus. & Prof. Code §§ 8700 *et seq.*), rules and regulations promulgated pursuant to the Act, and policies of the Board.

77. On December 28, 2021, Defendant Richard B. Moore, PLS, acting as the Executive Officer for the Board, issued a Citation Order to MySitePlan.com and Ryan.

78. The Board's Citation Order was served on MySitePlan.com and Ryan by email that same day.

79. The Board's Citation Order ordered MySitePlan.com and Ryan "to cease and desist from violating Business and Professions Code section(s) 8792(a) and (i)."

80. The Board's Citation Order also ordered MySitePlan.com and Ryan to pay "an administrative fine in the amount of $1,000.00".

81. The Board's Citation Order correctly notes that Ryan is not licensed as a "professional engineer, a professional land surveyor, a professional geologist, or in any other

capacity" by the Board.

82. As "Cause for Citation" the Board stated:

An investigation, including a review by at least one licensee of the Board who is competent in the branch of professional land surveying most relevant to the subject matter, determined that you have violated the Professional Land Surveyors' Act (Business and Professions Code section 8700, et seq.) related to your business known as My Site Plan. Specifically, you have offered and practiced land surveying, without legal authorization, as evidenced by a review of your business website by Board staff between March 2021 and December 2021. Preparing site plans which depict the location of property lines, fixed works, and the geographical relationship thereto falls within the definition of land surveying, pursuant to Business and Professions Code section(s) 8726(a) and (g). Offering to prepare subdivision maps and site plans which show the location of property lines, fixed works, and the geographical relationship thereto falls within the definition of land surveying pursuant to Business and Professions Code section 8726(i). In offering and practicing land surveying, you have violated Business and Professions Code section 8792(a). In managing a business from which land surveying is offered and practiced, without legal authorization, you have violated Business and Professions Code section 8792(i).

83. Business and Professions Code sections 8792(a) and (i) make it a misdemeanor to "practice[], or offer[] to practice, land surveying in this state without legal authorization" or exemption, or to "manage[] or conduct[] as manager, proprietor, or agent, any place of business from which land surveying work is solicited, performed, or practiced" without legal authorization.

84. In relevant part, *i.e.*, the portions the Board has invoked, California's definition of "land surveying," Cal. Bus. & Prof. Code § 8726,[1] provides:

(a) A person, including any person employed by the state or by a city, county, or city and county within the state, practices land surveying within the meaning of this chapter who, either in a public or private capacity, does or offers to do any one or more of the following:

(1) Locates, relocates, establishes, reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within the practice of civil engineering, as described in Section 6731.

(2) Determines the configuration or contour of the earth's surface, or the position of fixed objects above, on, or below the surface of the earth by applying the principles of mathematics or photogrammetry.

(3) Locates, relocates, establishes, reestablishes, or retraces any property line or boundary of any parcel of land, right-of-way, easement, or alignment of those

[1] Technical corrections to Cal. Bus. & Prof. Code § 8726 became effective shortly after the Board's letter. 2021 Cal Stat. ch. 106 (effective Jan. 1, 2022). These did not substantively affect the cited provisions but did change number and lettering conventions. Former subsection (a) is now (a)(1), former subsection (g) is now (a)(7), and former subsection (i) is now (a)(9). For ease of reference, this Complaint proceeds with citations to the current statute.

lines or boundaries.

(4) Makes any survey for the subdivision or resubdivision of any tract of land. For the purposes of this subdivision, the term "subdivision" or "resubdivision" shall be defined to include, but not be limited to, the definition in the Subdivision Map Act (Division 2 (commencing with Section 66410) of Title 7 of the Government Code) or the Subdivided Lands Law (Chapter 1 (commencing with Section 11000) of Part 2 of Division 4 of this code).

(5) By the use of the principles of land surveying determines the position for any monument or reference point that marks a property line, boundary, or corner, or sets, resets, or replaces any monument or reference point.

(6) Geodetic surveying or cadastral surveying. As used in this chapter:

(A) Geodetic surveying means performing surveys, in which account is taken of the figure and size of the earth to determine or predetermine the horizontal or vertical positions of fixed objects thereon or related thereto, geodetic control points, monuments, or stations for use in the practice of land surveying or for stating the position of fixed objects, geodetic control points, monuments, or stations by California Coordinate System coordinates.

(B) Cadastral surveying means performing a survey that creates, marks, defines, retraces, or reestablishes the boundaries and subdivisions of the public land survey system of the United States.

(7) Determines the information shown or to be shown on any map or document prepared or furnished in connection with any one or more of the functions described in paragraphs (1) to (6), inclusive.

. . . .

(9) Procures or offers to procure land surveying work for themselves or others.

85.     Based on the Board's citation and statutory provisions cited, MySitePlan.com and Ryan are threatened with enforcement and fines merely for doing and offering to do their site plan drawings because they depict or show "the location of property lines, fixed works, and the geographical relationship thereto".

86.     The Board has not claimed that MySitePlan.com and Ryan have falsely held themselves out as a licensed surveyor or other Board-licensed professional.

87.     MySitePlan.com and Ryan have never held themselves out as a licensed surveyor or other Board-licensed professional.

88.     Nonetheless, on September 21, 2022, Ryan signed a notice agreeing not to appeal the Board's citation, instead accepting its terms and paying the Board a $1,000 fine.

**III.    Experts recognize that not all mapping requires a license.**

89.    Even twenty years ago, experts recognized that a "literal interpretation" of practice of surveying definitions would mean that a large amount of spatial information, including GIS, would be illegal in the hands of people other than licensed surveyors. *See* Bruce A. Joffe, *Surveyors and GIS Professionals Reach Accord,* U.S. Geological Survey Open-File Report 02-370, 29 https://pubs.usgs.gov/of/2002/of02-370/dmt_02.pdf.

90.    Beginning in 2006, the National Council of Examiners for Engineering and Surveying (NCEES), whose members are the engineering and surveying licensing boards from all 50 states, the District of Columbia, and U.S. Territories, promulgated Model Rules to distinguish activities and uses of data that require a license from those that do not.

91.    The current version of the NCEES Model Rules, dated September 2021, provides in relevant part:

210.25 Inclusions and Exclusions to the Practice of Surveying

A. Activities Included within the Practice of Surveying

Activities that must be accomplished by or under the responsible charge of a professional surveyor (unless specifically exempted in subsection B of this section) include, but are not limited to, the following:

1.  The creation of maps or georeferenced databases representing authoritative locations for boundaries, the location of fixed works, or topography. This includes maps and georeferenced databases prepared by any person or government agency where that data is provided to the public as a surveying deliverable.

2.  Original data acquisition, or the resolution of conflicts between multiple data sources, when used for the authoritative location of features within the following data themes: geodetic control, orthoimagery, elevation and hydrographic, fixed works, private and public boundaries, and cadastral information

3.  Certification of positional accuracy of maps or measured survey data

4.  Adjustment or authoritative interpretation of raw survey data

5.  Geographic Information System (GIS)-based parcel or cadastral mapping used for authoritative boundary definition purposes wherein land title or development rights for individual parcels are, or may be, affected

6.  Authoritative interpretation of maps, deeds, and other land title documents to resolve conflicting data elements

7.  Acquisition of field data required to authoritatively position fixed works or cadastral data relative to geodetic control

8.  Analysis, adjustment or transformation of cadastral data of the parcel layers with respect to the geodetic control layer within a GIS resulting in the affirmation of positional accuracy

B. Activities Excluded from the Practice of Surveying

A distinction must be made in the use of electronic systems between making or documenting original measurements in the creation of surveying deliverables, versus the copying, interpretation, or representation of those measurements in such systems. Further, a distinction must be made according to the intent, use, or purpose of measurements derived from electronic systems to determine an authoritative location versus the use of those measurements as a reference for planning, infrastructure management, and general information. The following items are not to be included as activities within the definition of the practice of surveying:

1.  The creation of general maps
    a.  Prepared by private firms or government agencies for use as guides to motorists, boaters, aviators, or pedestrians
    b.  Prepared for publication in a gazetteer or atlas as an educational tool or reference publication
    c.  Prepared for or by education institutions for use in the curriculum of any course of study
    d.  Produced by any electronic or print media firm as an illustrative guide to the geographic location of any event
    e.  Prepared by laypersons for conversational or illustrative purposes. This includes advertising material and users [sic] guides.

2.  The transcription of previously georeferenced data into a GIS or LIS by manual or electronic means, and the maintenance thereof, provided the data are clearly not intended to indicate the authoritative location of property boundaries, the shape or contour of the earth, or fixed works

3.  The transcription of public record data, without modification except for graphical purposes, into a GIS- or LIS-based cadastre (tax maps and associated records) by manual or electronic means, and the maintenance of that cadastre, provided the data are clearly not intended to authoritatively represent property boundaries. This includes tax maps and zoning maps.

4.  The preparation of any document by any federal government agency that does not define real property boundaries. This includes civilian and military versions of quadrangle topographic maps, military maps, satellite imagery, and other such documents.

5.  The incorporation or use of documents or databases prepared by any federal agency into a GIS/LIS, including but not limited to federal census and demographic data, quadrangle topographic maps, and military maps

6.  Inventory maps or databases created by any organization, in either hard-copy or electronic form, of physical features, facilities, or infrastructure that are wholly contained within properties to which they have rights or for which they have management responsibility. The distribution of these maps or databases outside the organization must contain appropriate metadata describing, at a

minimum, the accuracy, method of compilation, data sources and dates, and disclaimers of use clearly indicating that the data are not intended to be used as a surveying deliverable.

7. Maps and databases depicting the distribution of natural resources or phenomena prepared by foresters, geologists, soil scientists, geophysicists, biologists, archeologists, historians, or other persons qualified to document such data

8. Maps and georeferenced databases depicting physical features and events prepared by any government agency where the access to that data is restricted by statute. This includes georeferenced data generated by law enforcement agencies involving crime statistics and criminal activities.

NCEES Model Rule § 210.25, https://ncees.org/wp-content/uploads/Model_Rules_2021_web-2.pdf.

92. The NCEES Model Rules reflect that the rationale for licensing land surveyors extends only to activities related to determining or representing "authoritative" location.

93. Plaintiffs do not engage in any activities related to determining or representing "authoritative" location.

94. As reflected in the NCEES Model Rules, surveyor licensing does not include non-authoritative uses of location data such as references for planning, infrastructure management, and general information.

95. Plaintiffs use GIS and data to generate only non-authoritative site plans for planning, infrastructure management, general information, and similar uses.

96. The Board has never adjusted its own rules or enforcement practices to reflect the NCEES Model Rules. To the contrary, as illustrated by the enforcement action that precipitated this case, the Board enforces California's vague, broad, and outdated statutes, rules, and regulations governing "land surveying" to their utmost limits.

97. In comparison to the NCEES Model Rules, California's definition of land surveying, read literally, criminalizes a vast amount of informal mapmaking and information conveying by anyone without a surveyor's license.

**IV.   Surveyor license requirements are burdensome and unnecessary for drawing non-authoritative site plans.**

98. There are a variety of ways to become a licensed professional land surveyor in

California, but all of them require many years of education, experience, and exams. *See* California Board for Professional Engineers, Land Surveyors, and Geologists, Flowchart-Do I qualify to apply for the Professional Land Surveyor License?, https://www.bpelsg.ca.gov/applicants/flowchart_for_pls.pdf.

99.     Generally, a person must (1) graduate from a four-year post-secondary curriculum "with an emphasis in land surveying approved by the board or accredited by a national or regional accrediting agency" and have "two years of actual broad based progressive experience in land surveying, including one year of responsible field training and one year of responsible office training, satisfactory to the board," (2) have "[a]ctual broad based progressive experience in land surveying for at least six years, including one year of responsible field training and one year of responsible office training, satisfactory to the board," or (3) already be licensed "as a civil engineer with two years of actual broad based progressive experience in land surveying satisfactory to the board." Cal. Bus. & Prof. Code § 8742(a); Cal. Code Regs. tit. 16, § 425.

100.    In addition, a would-be licensed professional land surveyor must generally first be certified as a land surveyor-in-training if they are not already licensed as a civil engineer. Cal. Bus. & Prof. Code § 8741.

101.    All would-be licensed professional land surveyors also must pass four examinations: the NCEES Fundamentals of Surveying exam (unless approved for a waiver), the NCEES Principles and Practice of Surveying exam, a California-specific Professional Land Surveyor exam, and a California Professional Land Surveyors State Laws and Rules exam.

102.    All would-be licensed professional land surveyors also must have references from at least four land surveyors or civil engineers. Cal. Bus. & Prof. Code § 8743.

103.    Because Ryan is not a licensed civil engineer, not a licensed land surveyor-in-training, and did not graduate from any post-secondary curriculum with an emphasis in land surveying, he would need to stop working at his own business, obtain at least six years of additional education and experience (gained under a licensed land surveyor) and pass all four exams to become a licensed professional land surveyor.

104.    These years of education, experience, and exams are overly burdensome and

unrelated to MySitePlan.com's non-authoritative site plan drawings.

105.    County and municipal building permit issuing entities in California regularly and repeatedly accept non-authoritative site plan drawings from contractors and homeowners who, like Ryan, do not have the years of education, experience, and exam passes necessary to obtain a surveyor's license.

## INJURY TO PLAINTIFFS

106.    MySitePlan.com and Ryan have offered their site plan drawing services in California since at least 2013.

107.    But for the Board's application of Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i) to MySitePlan.com and Ryan, MySitePlan.com and Ryan would be free to continue operating in California as they have done for many years and as they operate in other states and around the world.

108.    But for the Board's application of Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i) to MySitePlan.com and Ryan, MySitePlan.com and Ryan would be free to continue using publicly available GIS and other information to create and disseminate new information in the form of non-authoritative site plan drawings.

109.    California's definition of "land surveying," and in particular Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9), is unconstitutional in a substantial number of its applications, judged in relation to is plainly legitimate sweep.

110.    California's definition of "land surveying," and in particular Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9), does not provide fair warning or allow Ryan to determine if his business through MySitePlan.com is prohibited by the law.

111.    California's definition of "land surveying," and in particular Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9), impermissibly delegates to the Board the power to determine, on an ad hoc and subjective basis, whether Ryan's business through MySitePlan.com is prohibited, which leads to arbitrary and discriminatory application of the law.

112.    California's definition of "land surveying," and in particular Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9), operates to inhibit the exercise of protected constitutional rights.

113.    California county and municipal building permit issuing departments accept non-authoritative site plans prepared by non-surveyors, including contractors and homeowners with no surveyor training.

114.    Ryan's business through MySitePlan.com, creating non-authoritative site plans for submission to California county and municipal building permit issuing departments, is substantially different than the business of surveyors, who prepare drawings and materials related to authoritative location.

115.    The years of education and experience and four exams required to become a licensed professional land surveyor are unjustified burdens on Ryan and MySitePlan.com creating non-authoritative site plans for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments.

116.    But for the Board's application of Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i) to MySitePlan.com and Ryan, MySitePlan.com and Ryan would be free to continue to prepare non-authoritative site plans for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments without needing to first acquire years of education and experience and pass four exams.

117.    But for the Board's application of Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i) to MySitePlan.com and Ryan, MySitePlan.com and Ryan would be free to continue to prepare non-authoritative site plans for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments, just as other non-surveyors, including contractors and homeowners with no surveyor training, are allowed to.

## CONSTITUTIONAL VIOLATIONS AND CLAIMS FOR RELIEF

### First § 1983 Cause of Action:

### First Amendment

### Declaratory and Injunctive Relief

118.    Plaintiffs incorporate and re-allege paragraphs 1 through 117.

119.    The First Amendment, which is made applicable to the states through the Fourteenth Amendment, provides: "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

120.    Defendants' application of the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code §§ 8700 *et seq.*, to Plaintiffs abridges Plaintiffs' freedom of speech.

121.    Plaintiffs take existing data and information, including GIS data made available to the public by governments, and use it to create and disseminate new information in the form of non-authoritative site plans.

122.    The creation and dissemination of information are speech within the meaning of the First Amendment, do not fall within any recognized exception to the First Amendment, and are fully protected by the First Amendment.

123.    Plaintiffs create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes.

124.    Under California law, as interpreted and enforced by the Board, Plaintiffs may not use preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes.

125.    Under California law, as interpreted and enforced by the Board, licensed surveyors may create and disseminate non-authoritative site plans from preexisting public GIS data, but Plaintiffs may not create and disseminate non-authoritative site plans from preexisting public GIS data.

126.    Application of the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code §§ 8700 *et seq.*, to Plaintiffs restrains the way in which Plaintiffs may use and disseminate publicly available information.

127.    Application of the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code §§ 8700 *et seq.*, to Plaintiffs restrains the way in which they may provide non-authoritative site plans to their customers for planning, infrastructure management, general information, and

1  submission to California county and municipal building permit issuing departments purposes.

2  128.  Defendants' application of the California Professional Land Surveyors' Act, Cal.

3  Bus. & Prof. Code §§ 8700 *et seq.*, to Plaintiffs acts as a content- and speaker-based restriction on

4  the ability to use and generate information.

5  129.  Defendants lack a state interest, compelling or otherwise, in preventing Plaintiffs

6  from creating and disseminating non-authoritative site plans to their customers for planning,

7  infrastructure management, general information, and submission to California county and

8  municipal building permit issuing departments purposes.

9  130.  Defendants possess no evidence that any of Plaintiffs' site plan drawings have ever

10  caused any harm to anyone.

11  131.  Defendants possess no evidence that they achieve any state interest, compelling or

12  otherwise, by forbidding anyone other than licensed surveyors from drawing non-authoritative site

13  plans for planning, infrastructure management, general information, and similar uses.

14  132.  Defendants possess no evidence that they achieve any state interest, compelling or

15  otherwise, by forbidding anyone other than licensed surveyors from submitting site plan drawings

16  to permitting authorities that do not want and have not asked for formal surveys.

17  133.  Defendants possess no evidence that they achieve any state interest, compelling or

18  otherwise, by punishing Plaintiffs for creating site plan drawings of properties when it does not

19  enforce the law against countless other persons statewide, including contractors and homeowners,

20  who also create site plan drawings without being licensed surveyors.

21  134.  Application of the California Professional Land Surveyors' Act, Cal. Bus. & Prof.

22  Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and

23  8792(a) and (i), to Plaintiffs by Defendants, their agents and employees, acting under the color of

24  state law, denies Plaintiffs their right to free speech, as guaranteed by the First and Fourteenth

25  Amendments to the United States Constitution and protected by 42 U.S.C. § 1983.

26  135.  Unless the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code

27  §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a)

28  and (i), are declared unconstitutional as applied to Plaintiffs and Defendants are enjoined from

1   enforcing those sections against Plaintiffs, Plaintiffs will suffer continuing and irreparable harm to

2   their First Amendment rights.

**Second § 1983 Cause of Action:**

**Facial Unconstitutionality; Void for Vagueness and Overbreadth**

**Declaratory and Injunctive Relief**

6   136.   Plaintiffs incorporate and re-allege paragraphs 1 through 117.

7   137.   Even if the state could criminalize Plaintiffs' drawings (which it cannot), the state's

8   definition of "land surveying," Cal. Bus. & Prof. Code § 8726, and in particular the subparts cited

9   by the Board in its citation to Plaintiffs, Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9), is

10  unconstitutional on its face because it is so vague that there is no way to know that it outlaws

11  picture-drawing and/or it is so overbroad that it criminalizes innumerable wholly-innocuous

12  pictures.

13  138.   In our constitutional order, a vague law is no law at all and unconstitutional on its

14  face because it violates multiple constitutional guarantees.

15  139.   First, a vague law violates due process by trapping the innocent by not providing

16  fair warning to reasonable persons of ordinary intelligence that their conduct is prohibited by the

17  law in question.

18  140.   Second, a vague law violates separation of powers, due process, and equal protection

19  guarantees, because it impermissibly delegates basic policy matters to lower-level officials for

20  resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and

21  discriminatory application.

22  141.   Third, a vague law regulating speech operates to inhibit the exercise of the freedom

23  of speech guaranteed by the First Amendment.

24  142.   Additionally, a law regulating speech is overbroad, and therefore unconstitutional

25  on its face, if a substantial number of its applications are unconstitutional, judged in relation to the

26  law's plainly legitimate sweep.

27  143.   Read literally, California's definition of "land surveying," Cal. Bus. & Prof. Code

28  § 8726, and in particular the subparts cited by the Board in its citation to Plaintiffs, Cal. Bus. &

Prof. Code § 8726(a)(1), (7), and (9), criminalizes a vast amount of informal mapmaking and information conveying by anyone without a surveyor's license: Anyone who draws a picture of a property by retracing the alignment or elevation for a street or home (such as by copying a GIS map), draws a picture of a building on the earth (such as by copying a GIS map), retraces property lines (such as by copying a GIS map), determines the information to be shown in a drawing of property (such as choosing what information to copy from a GIS map), or offers to do any of those things, without a state license is a criminal.

144. The Board has chosen not to enforce California's definition of "land surveying" literally, as is demonstrated by the numerous local jurisdictions that instruct non-surveyors how to draw site plans depicting property lines and the location of fixed works, and the numerous local jurisdictions that instruct non-surveyors how to determine what information to put in such a site plan drawing, as well as the thousands of contractors and homeowners who regularly make such site plan drawing and submit them to local jurisdictions, and the local jurisdictions accepting such site plan drawings from non-surveyors.

145. The Board's choice not to enforce California's definition of "land surveying" literally does not save the definition from being unconstitutionally overbroad. But it does demonstrate that California's definition of "land surveying," if not read literally, is unconstitutionally vague.

146. Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9) do not provide fair warning to Plaintiffs that their use of preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes is illegal.

147. For example, Plaintiffs have used preexisting public GIS data and other information to create and disseminate non-authoritative site plans for many years, have had thousands of customers use their non-authoritative site plans for planning, infrastructure management, and general information purposes, and have had thousands of non-authoritative site plans submitted to California county and municipal building permit issuing departments. Until the Board's citation of

1   Plaintiffs, no one has ever believed Plaintiffs' services were illegal.

2        148.    Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9) does not adequately constrain the

3   Board's ability to prohibit Plaintiffs' use of preexisting public GIS data and other information to

4   create and disseminate non-authoritative site plans to their customers for planning, infrastructure

5   management, general information, and submission to California county and municipal building

6   permit issuing departments purposes on a subjective and ad hoc basis.

7        149.    For example, Plaintiffs have used preexisting public GIS data and other information

8   to create and disseminate non-authoritative site plans for many years, have had thousands of

9   customers use their non-authoritative site plans for planning, infrastructure management, and

10   general information purposes, and have had thousands of non-authoritative site plans submitted to

11   California county and municipal building permit issuing departments. Until the Board's citation of

12   Plaintiffs, no one has ever believed Plaintiffs' services were illegal. Indeed, California county and

13   municipal building permit issuing departments routinely instruct non-surveyors (including

14   contractors and homeowners with no surveyor training) how to draw non-authoritative site plans

15   and accept non-authoritative site plans prepared by non-surveyors (including contractors and

16   homeowners with no surveyor training), yet the Board has never threatened to prosecute those

17   county and municipal building permit issuing departments or other non-surveyors.

18        150.    Cal. Bus. & Prof. Code § 8726(a)(1), (7), and (9) operates to inhibit the exercise of

19   Plaintiffs' First Amendment rights because, as applied to Plaintiffs, it may prohibit, and does allow

20   the Board to claim it prohibits, the use of preexisting public GIS data and other information to

21   create and disseminate non-authoritative site plans to their customers for planning, infrastructure

22   management, general information, and submission to California county and municipal building

23   permit issuing departments purposes, even though the use, creation and dissemination of such

24   information is protected by the First Amendment.

25        151.    Application of the California Professional Land Surveyors' Act, Cal. Bus. & Prof.

26   Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and

27   8792(a) and (i), to Plaintiffs by Defendants, their agents and employees, acting under the color of

28   state law, denies Plaintiffs their rights to free speech, due process, and separation of powers, as

guaranteed by the First and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983.

152.    Unless the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i) are declared unconstitutionally overbroad and/or void for vagueness and Defendants are enjoined from enforcing those sections against Plaintiffs, Plaintiffs will suffer continuing and irreparable harm to their rights protected by First and Fourteenth Amendments.

**Third Cause of Action:**

**Substantive Due Process and Equal Protection**

**Declaratory and Injunctive Relief**

153.    Plaintiffs incorporate and re-allege paragraphs 1 through 117.

154.    The Fourteenth Amendment's Due Process and Equal Protection Clauses protect the right to earn a living in the occupation of a person's choice subject only to rational government regulation and the right to not be treated differently than similarly situated people without sufficient justification, including with regard to earning a living in the occupation of a person's choice.

155.    Plaintiffs use preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes.

156.    The Board claims that Plaintiffs are prohibited from using preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes because they are not licensed professional land surveyors.

157.    Plaintiffs' occupation is so different from the occupation of professional land surveyors that the government's interest in regulating professional surveyors—ensuring accurate authoritative location survey products—is not implicated.

158.    Forcing Plaintiffs into a regulatory framework meant to regulate professional

surveyors results in unjustified barriers to Plaintiffs practicing their own occupation in violation of Due Process.

159.    Because Ryan is not a licensed civil engineer, not a licensed land surveyor-in-training, and did not graduate from any post-secondary curriculum with an emphasis in land surveying, he must obtain at least six years of additional education and experience (gained under a licensed land surveyor) and pass four exams to become a licensed professional land surveyor.

160.    These years of education, experience, and exams are not rationally related to any legitimate government interest as applied to Plaintiffs' non-authoritative site plan drawings.

161.    These years of education, experience, and exams are overly burdensome and unrelated to Plaintiffs' non-authoritative site plan drawings.

162.    Requiring Ryan to obtain at least six years of additional education and experience (gained under a licensed land surveyor) and pass four exams to become a licensed professional land surveyor will require him to stop working at and running his own business.

163.    The NCEES recognizes that the practice of surveying, which must be accomplished by or under the responsible charge of a licensed professional surveyor, should include only activities related to determining or representing "authoritative" location.

164.    Plaintiffs do not engage in any activities related to authoritative location.

165.    The NCEES recognizes that activities related to non-authoritative uses of location data such as references for planning, infrastructure management, and general information do not implicate the justifications for practice of surveying licensing.

166.    Plaintiffs only engage in activities related to non-authoritative location.

167.    Plaintiffs do not claim to be licensed professional surveyors.

168.    Plaintiffs do not claim that their site plans are surveys, certified, or authoritative; indeed, they clearly state that their site plans are not surveys, are not certified, and are not a substitute for a survey.

169.    California does not prohibit other non-surveyors, including contractors and homeowners with no surveyor training, from creating non-authoritative site plans for planning, infrastructure management, general information, and submission to California county and

1    municipal building permit issuing departments purposes.

2        170.    Plaintiffs are similarly situated to these other non-surveyors, including contractors

3    and homeowners with no surveyor training, who create non-authoritative site plans for planning,

4    infrastructure management, general information, and submission to California county and

5    municipal building permit issuing departments purposes.

6        171.    There is no distinction between Plaintiffs and these other non-surveyors that is

7    rationally related to any legitimate government interest supporting the licensing of land surveyors.

8        172.    Application of the California Professional Land Surveyors' Act, Cal. Bus. & Prof.

9    Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and

10   8792(a) and (i), to Plaintiffs by Defendants, their agents and employees, acting under the color of

11   state law, arbitrarily, unreasonably, and discriminatorily prohibit Plaintiffs from pursuing their

12   chosen livelihood by forcing them to obtain a license that is irrelevant to their profession and

13   subjecting them to criminal penalties and fines, while other persons, similarly situated to Plaintiffs,

14   are not forced to obtain a license to engage in the same occupation or threatened by criminal

15   penalties and fines, thus threatening Plaintiffs' ability to earn a living in the occupation of their

16   choice and the existence, profitability, and potential growth of Plaintiffs' business.

17       173.    The arbitrary, unreasonable, and discriminatory diminution of Plaintiffs' economic

18   liberty by the imposition of these regulations deprives them of substantive due process and equal

19   protection as guaranteed by the Fourteenth Amendment to the United States Constitution and

20   protected by 42 U.S.C. § 1983.

21       174.    Unless the California Professional Land Surveyors' Act, Cal. Bus. & Prof. Code

22   §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a)

23   and (i) are declared unconstitutional as applied to Plaintiffs and Defendants are enjoined from

24   enforcing those sections against Plaintiffs, Plaintiffs will suffer continuing and irreparable harm to

25   their rights protected by First and Fourteenth Amendments.

26                                    **PRAYER FOR RELIEF**

27       As remedies for the constitutional violations just described, Plaintiffs respectfully request

28   the following relief:

A.    Entry of judgment declaring Cal. Bus. & Prof. Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i), unconstitutional as applied to Plaintiffs' use of preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes.

B.    Entry of a judgment declaring Cal. Bus. & Prof. Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i), unconstitutional on its face as overbroad and/or vague.

C.    Entry of a preliminary and a permanent injunction prohibiting Defendants from enforcing Cal. Bus. & Prof. Code §§ 8700 *et seq.*, and in particular Cal. Bus. & Prof. Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i), against Plaintiffs.

D.    An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

E.    Such further legal and equitable relief as the Court may deem just and proper.

Respectfully submitted this 29th day of September, 2022.

<table>
<tr><td>

**INSTITUTE FOR JUSTICE**
Paul V. Avelar* (AZ Bar no. 023078)
398 S. Mill Ave., Suite 301
Tempe, AZ 85281
Tel.: (480) 557-8300
Fax: (480) 557-8305
Email: pavelar@ij.org
*Counsel of Service*

Michael Greenberg* (DC Bar no. 1723725)
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
Email: mgreenberg@ij.org

*Application for admission
*pro hac vice* to be filed

</td><td>

/s/ S. Michael Kernan
S. Michael Kernan (CA Bar no. 181747)
R. Paul Katrinak (CA Bar no. 164057)
**THE KERNAN LAW FIRM, APC**
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
Tel: (310) 490-9777
Fax: (310) 861-0503
Email: MKernan@kernanlaw.net
           PKatrinak@kernanlaw.net

*Attorneys for Plaintiffs*

</td></tr>
</table>