**INSTITUTE FOR JUSTICE**
Paul V. Avelar* (AZ Bar no. 023078)
398 S. Mill Ave., Suite 301
Tempe, AZ  85281
Tel.: (480) 557-8300
Fax: (480) 557-8305
Email: pavelar@ij.org
*Counsel for Service*

Michael Greenberg* (DC Bar no. 1723725)
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
Email: mgreenberg@ij.org

*Admitted pro hac vice*

**THE KERNAN LAW FIRM, APC**
S. Michael Kernan (CA Bar no. 181747)
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
Tel: (310) 490-9777
Fax: (310) 861-0503
Email: MKernan@kernanlaw.net

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CROWNHOLM; and CROWN CAPITAL ADVENTURES, INC., d/b/a MYSITEPLAN.COM,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD B. MOORE, in his official capacity as Executive Officer of the California Board for Professional Engineers, Land Surveyors, and Geologists, et al.,<br><br>Defendants. | No.  2:22-CV-01720-DAD-CKD<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ..................................................................................... iv

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

I.      Ryan learns how to draw site plans from local California building departments by using publicly available information ................................. 2

II.     Ryan creates MySitePlan.com. ...................................................................... 3

III.    The Board cites Plaintiffs for violating California's surveyor-licensing law by drawing pictures of property. ................................................................ 4

IV.     Requiring a land surveyor license imposes a years-long burden that is only distantly related to the work that Plaintiffs do. ...................................... 6

V.      Experts recognize that surveyor licensing should only apply to authoritative location determination, which Plaintiffs do not do. ................ 6

VI.     The Board's enforcement threatens Plaintiffs' site plan drawings and business ................ 7

LEGAL STANDARD ................................................................................................ 8

ARGUMENT ............................................................................................................. 8

I.      Plaintiffs are likely to succeed on the merits of their constitutional claims ..................... 9

        A.      The Board's application of California's surveyor-licensing law to Plaintiffs infringes on Plaintiffs' ability to use, create, and disseminate information and likely fails any level of First Amendment scrutiny. ........................................................................... 9

                1.      Plaintiffs' drawings are speech protected by the First Amendment. ................... 10

                2.      The Board's application of California's practice of surveying law to Plaintiffs restricts Plaintiffs' speech because of its content. ................................ 12

                3.      The Board will be unable to carry its burden under any level of First Amendment scrutiny. .............................................................. 13

        B.      California's surveyor-licensing law is likely unconstitutionally overbroad, unconstitutionally vague, or both. ............................................... 15

                1.      California's land surveying definition is unconstitutionally overbroad. .............. 16

                2.      California's land surveying definition is unconstitutionally vague. ................... 20

II.      Plaintiffs will suffer irreparable harm absent a preliminary injunction against enforcement of the surveyor-licensing law. .......................................................... 23

III.     The balance of equities and the public interest favor a preliminary injunction. ............... 24

IV.      Rule 65(c)'s bond requirement should be waived. ............................................. 25

CONCLUSION ................................................................................................................. 25

CERTIFICATE OF SERVICE ........................................................................................ 27

APPENDIX ...................................................................................................................... 28

        Appendix A. Cal. Bus. & Prof. Code § 8726 .................................................... 29

        Appendix B. *Elfelt v. Bd. for Prof'l Eng'rs, Land Surveyors, and Geologists*
        No. 34-2015-80002130 ............................................................................. 33

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*All. for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011)..................................................................... 8

*Am. Beverage Ass'n v. City & Cnty. Of San Francisco,*
  916 F.3d 749 (9th Cir. 2019)....................................................................... 24

*Ashcroft v. Free Speech Coalition.,*
  535 U.S. 234 (2002) .................................................................................... 19

*Berger v. City of Seattle,*
  569 F.3d 1029 (9th Cir. 2009)..................................................................... 19

*Billups v. City of Charleston,*
  961 F.3d 673 (4th Cir. 2020)................................................................. 11, 13

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.,*
  482 U.S. 569 (1987) .................................................................................... 18

*Brokamp v. District of Columbia,*
  No. CV 20-3574 (TJK), 2022 WL 681205 (D.D.C. Mar. 7, 2022) ........................ 11

*Cal. Tchrs. Ass'n v. State Bd. of Educ.,*
  271 F.3d 1141 (9th Cir. 2001)..................................................................... 21

*City of Houston v. Hill,*
  482 U.S. 451 (1987) ............................................................................... 19, 20

*Cohen v. California,*
  403 U.S. 15 (1971) ...................................................................................... 11

*Cohen v. San Bernardino Valley Coll.,*
  92 F.3d 968 (9th Cir. 1996)..................................................................... 21, 22

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
  657 F.3d 936 (9th Cir. 2011)................................................................... 17, 22

*Doe v. Harris,*
  772 F.3d 563 (9th Cir. 2014)......................................................... 8, 13, 14, 24

*Edwards v. District of Columbia,*
  755 F.3d 996 (D.C. Cir. 2014) .................................................................... 13

*Ebel v. City of Corona,*
  698 F.2d 390 (9th Cir. 1983)....................................................................... 24

*Elfelt v. Bd. for Prof'l Eng'rs, Land Surveyors, and Geologists*
    No. 34-2015-80002130 (Sup. Ct. Ca. Sacramento Cty., Aug. 19, 2016)...................................... 16

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998)........................................................................................ 20, 21

*Full Circle of Living & Dying v. Sanchez*,
    No. 2:20-CV-01306 KJM KJN, 2020 WL 7714200 (E.D. Cal. Dec. 29, 2020)............. 1, 2, 11

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006) ............................................................................................................ 8

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ......................................................................................................... 11, 12

*In re Nat'l Sec. Letter*,
    33 F.4th 1058 (9th Cir. 2022)............................................................................................. 13

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018)....................................................................................... 14, 15

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009)............................................................................................ 25

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009)............................................................................................ 23

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ............................................................................................... 13, 14, 15

*McCutcheon v. FEC*,
    572 U.S. 185 (2014) ........................................................................................................... 13

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012)............................................................................................... 24

*Members of City Council v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) ........................................................................................................... 19

*Nat'l Inst. of Fam. & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ............................................................................................. 1, 10, 11

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
    961 F.3d 1062 (9th Cir. 2020).................................................................................... *passim*

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ........................................................................................................... 13

*Reno v. ACLU*,
    521 U.S. 844 (1997) ........................................................................................................... 18

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

*Sec'y of State v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) ................................................................................................ 19, 20

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ........................................................................................ 1, 10, 19

*United States v. Davis*,
    139 S. Ct. 2319 (2019) ........................................................................................ 20, 21

*United States v. Hansen*,
    25 F.4th 1103 (9th Cir. 2022) .................................................................................... 16

*United States v. Stevens*,
    559 U.S. 460 (2010) .............................................................................. 16, 18, 19, 23

*United States v. Williams*,
    553 U.S. 285 (2008) .................................................................................................... 17

*Upsolve, Inc. v. James*,
    No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y. May 24, 2022) ............................ 11, 12

*Virginia v. Hicks*,
    539 U.S. 113 (2003) .................................................................................................... 16

*Vizaline, L.L.C. v. Tracy*,
    949 F.3d 927 (5th Cir. 2020) ............................................................................... 10, 11

*Young v. Am. Mini Theaters, Inc.*,
    427 U.S. 50 (1976) ...................................................................................................... 23


**RULES**

Fed. R. Civ. P. 65(c) ...................................................................................................... 9, 25


**CODES & STATUTES**

Cal. Bus. & Prof. Code § 6731 ...................................................................................... 17

Cal. Bus. & Prof. Code § 8726 ............................................................................... *passim*

Cal. Bus. & Prof. Code § 8741 ........................................................................................ 6

Cal. Bus. & Prof. Code § 8742 ........................................................................................ 6

Cal. Bus. & Prof. Code § 8743 ........................................................................................ 6

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Cal. Bus. & Prof. Code § 8792 ................................................................ 5, 16, 22

Cal. Code Regs. tit. 16, § 404 ...................................................................... 7, 18

Cal. Code Regs. tit. 16 § 425 ............................................................................ 6


**OTHER AUTHORITIES**

2021 Cal Stat. ch. 106 (effective Jan. 1, 2022) .................................................. 5

Bruce A. Joffe,
  *Surveyors and GIS Professionals Reach Accord,*
  U.S. Geological Survey Open-File Report 02-370, 29,
  https://pubs.usgs.gov/of/2002/of02-370/dmt_02.pdf ................................ 6, 18

California Board for Professional Engineers, Land Surveyors, and Geologists,
  Flowchart-Do I qualify to apply for the Professional Land Surveyor License?,
  https://www.bpelsg.ca.gov/applicants/flowchart_for_pls.pdf ............................ 6

California Professional Land Surveyor Application,
  https://www.bpelsg.ca.gov/applicants/lsappintro.shtml .................................... 6

Merriam-Webster,
  *Locate,* https://www.merriam-webster.com/dictionary/locate ......................... 17

NCEES Model Rules (Sept. 2021),
  https://ncees.org/wp-content/uploads/Model_Rules_2021_web-2.pdf ......... *passim*

National States Geographic Information Council,
  *GIS & Land Surveyors Requirements for Licensing,*
  https://www.nsgic.org/licensing ...................................................................... 7

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**INTRODUCTION**

The "creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). "An individual's right to speak is implicated when information he or she possesses is subjected to restraints on the way in which the information might be used or disseminated." *Id*. at 568 (internal quotation marks omitted). This includes when the use, creation, and dissemination of information is for pay. *Id*. at 569. Occupational licensing laws, including California's surveyor-licensing law at issue here, are subject to this same First Amendment analysis because "the First Amendment deprives the states of 'unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement.'" *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020) (quoting *Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2375 (2018) [*NIFLA*]); *see also Full Circle of Living & Dying v. Sanchez*, No. 2:20-CV-01306 KJM KJN, 2020 WL 7714200 (E.D. Cal. Dec. 28, 2020) (granting preliminary injunction against California Cemetery and Funeral Bureau's enforcement of funeral director licensing law to speakers).

Defendants, the members and Executive Officer of the California Board for Professional Engineers, Land Surveyors, and Geologists, are using California's overbroad, vague, and out-of-date statutes governing "land surveying" to restrain Plaintiffs' use, creation, and dissemination of information. The Board cited Plaintiffs, based only on a review of their website, because the Board says Plaintiffs may not create drawings "which depict the location of property lines, fixed works, and the geographical relationship thereto" without first obtaining a land surveying license.

Plaintiffs seek this preliminary injunction to preserve their rights and the status quo during the pendency of this litigation. The Board's application of California's surveyor-licensing law to Plaintiffs infringes on their First Amendment protected right to use, create and disseminate information. Moreover, the surveyor-licensing law itself is hopelessly vague and overbroad.

Plaintiffs will suffer irreparable harm absent an injunction and the balance of equities and the public interest favor the injunction. Accordingly, this court should grant Plaintiffs' motion. *See Full Circle*, 2020 WL 7714200, at *5-7 (granting preliminary injunction against enforcement of occupational license where plaintiffs were likely to succeed on their free speech claim, would suffer irreparable harm, and balance of equities and the public interest favored injunction).

## STATEMENT OF FACTS

**I.     Ryan learns how to draw site plans from local California building departments by using publicly available information.**

Plaintiff Ryan Crownholm started his first business in California by using his own pickup truck to offer rubbish removal and hauling services. Supp. Decl. of Ryan Crownholm ("Crownholm Decl.") ¶ 11. To take on larger projects, Ryan obtained both a demolition contractor license and a "general engineering" contractor license. *Id.* ¶¶ 12-13, 15. Ryan's contracting projects often required a building permit from a local government which often required (and still do require) submission of a site plan drawing to apply for a permit. *Id.* ¶ 17.

The site plan drawings Ryan needed for permits were not surveys. They only had to show the basic layout of a property—a depiction of the property's physical features and their location relative to property lines—and an explanation of the changes proposed to be made to the property. *Id.* ¶¶ 18-19. Site plans are not an authoritative determination of where any lot lines or features are located. *Id.* ¶ 53. Local government building departments regularly accept site plans drawn by people who are not licensed as surveyors, including homeowners and contractors themselves, because they do not need surveys for their purposes. *Id.* ¶¶ 28-29. Indeed, local governments often provide detailed instructions and exemplars for non-surveyors to use in preparing their own site plans. *Id.* ¶¶ 25-26 & Exs. A, B. For example, Contra Costa County tells unlicensed people how to draw a site plan, what information to provide in a site plan, and provides an exemplar for unlicensed people to use. Crownholm Decl. Ex. A. And the City of San Gabriel Community Development

Department advises homeowners to prepare a site plan by using GIS maps maintained by the Los Angeles County Assessor to determine the "property boundaries," "dimensions" and "size" of their lot, and then adding the locations and measurements of "all structures and other physical features" of the site. Crownholm Decl. Ex. B. Other local departments maintain similar guidance. *Id*. ¶ 26.

Ryan learned how to draw site plans from these local government departments. As a contractor, he spent hours drawing site plans to obtain demolition permits. *Id*. ¶ 30. He started by hand-tracing data and images from on-line Geographic Information Systems ("GIS") provided by local governments or even from Google Maps, as staffers in these departments taught him. *Id*. ¶¶ 32-33. Later, Ryan learned to create electronic site plan drawings in a Computer-aided Design (CAD) program based on this same GIS data, allowing him to draft a site plan—including rough measurements—without ever visiting a property. *Id*. ¶¶ 34-35. Essentially, Ryan learned to take preexisting maps and aerial or satellite photography and copy relevant elements into a CAD program to create a new drawing based on the preexisting information.

Local building departments always accepted these site plan drawings. *Id*. ¶ 38. In fact, they appreciated Ryan's electronic drawings because they were easier to use and more informative than the typical hand-drawn plans submitted for such permits. *Id*. ¶ 39. Other contractors began asking Ryan to create site plan drawings for their projects. *Id*. ¶ 40.

## II.    Ryan creates MySitePlan.com.

This experience led to Ryan founding MySitePlan.com[1] in 2013. *Id*. ¶ 42. MySitePlan.com creates and sells site plan drawings in English-speaking jurisdictions with publicly available GIS data, including Canada, Australia, and nearly all U.S. states. *Id*. ¶ 49. It contracts with non-licensed individuals to prepare site plan drawings based on publicly available satellite imagery and GIS data,

---

[1] MySitePlan.com is the d/b/a name of Ryan's wholly-owned company, Plaintiff Crown Capital Adventures, Inc. Crownholm Decl. ¶¶ 4-6.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

just as Ryan learned from California building departments. *Id*. ¶¶ 32-34, 50. Many of MySitePlan.com's customers use the site plan drawings for submission to local government departments when a legal survey is not required. *Id*. ¶ 62. Customers also use Plaintiffs' site plan drawings for other general planning or informational uses: Farmers' markets use them to show vendors where to set up shop; wedding venues use them to create layouts for tables, dance floors, etc.; apartment complexes use them to show residents where on-site buildings, parking, and amenities are found; hotels use them to guide guests from the lobby to their room; etc. *Id*. ¶ 63.

Neither Ryan nor MySitePlan.com have ever claimed to do surveys or claimed to be a surveyor. *Id*. ¶¶ 55-56. MySitePlan.com is headed by a disclaimer reading "THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR REPLACE ONE." *Id*. ¶ 43. Another disclaimer warns users: "**Before ordering**: Please verify with your building department that they **DO NOT** require a certified site plan prepared by a surveyor . . . ." *Id*. ¶ 44. And MySitePlan.com further explains the difference between its site plan drawings versus drawings done by licensed professionals. *Id*. ¶ 45. Every drawing prepared by MySitePlan.com includes the company's name, but none carry a signature or seal; none of the drawings are certified. *Id*. ¶¶ 51-52.

MySitePlan.com has created more than 42,000 site plan drawings in its nine years of operation. *Id*. ¶ 48. No building department has ever complained to Ryan about MySitePlan.com's site plan drawings or otherwise indicated they had been misled into thinking that the company's drawings are surveys. *Id*. ¶ 54.

**III.  The Board cites Plaintiffs for violating California's surveyor-licensing law by drawing pictures of property.**

While building departments and MySitePlan.com's clients understand that Plaintiffs' site plan drawings are not surveys, the Board cited Plaintiffs for being engaged in the practice of surveying without a license. On December 28, 2021, Richard B. Moore, a licensed land surveyor and the Executive Officer for the Board, issued a Citation Order to Plaintiffs. *Id*. ¶ 65 & Ex. D. The

Citation Order directed Plaintiffs to pay a fine of $1,000 and to "cease and desist from violating Business & Professions Code section(s) 8792(a) and (i)." *Id*. ¶¶ 67-68 & Ex. D. Cal. Bus. & Prof. Code § 8792(a) and (i), in turn, make it a misdemeanor to "practice[], or offer[] to practice, land surveying in [California]" without a license from the Board.

The Citation Order asserts that Plaintiffs' site plan drawings are illegal without a license because "[p]reparing site plans which depict the location of property lines, fixed works, and the geographical relationship thereto falls within the definition of land surveying[.]" *Id*. ¶ 70 & Ex. D. *See* Cal. Bus. & Prof. Code § 8726(a) (defining practice of "land surveying").[2] To be clear, the Board does not claim that Plaintiffs hold themselves out as licensed surveyors. *Id*. ¶ 72. Neither does the Board claim that Plaintiffs' site plan drawings *authoritatively* determine the location of property lines, fixed works, or the geographical relationship thereto, or purport to do the same. *Id*. ¶ 74. Instead, the Board imposes a licensing requirement merely for drawing and disseminating the basic site plans that Plaintiffs have for nearly a decade, that hundreds or thousands of other non-surveyors—including homeowners and contractors—routinely draw and submit to local building departments throughout California, that those local building departments routinely accept, and that are used for a variety of general informational and planning—not authoritative—purposes. *Id*. ¶¶ 27-29, 48, 53, 61-63, 74.

On September 21, 2022, Ryan signed a notice agreeing not to appeal the Citation Order and paid a $1,000 fine. *Id*. ¶ 78.

---

[2] Shortly after the Citation Order, technical corrections to Cal. Bus. & Prof. Code § 8726 became effective. 2021 Cal Stat. ch. 106 (effective Jan. 1, 2022). These did not substantively change § 8726, but did change number and lettering conventions. With regard to provisions cited by the Board, former subsection (a) is now (a)(1), former subsection (g) is now (a)(7), and former subsection (i) is now (a)(9). This motion and memorandum in support cites the current statute.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**IV. Requiring a land surveyor license imposes a years-long burden that is only distantly related to the work that Plaintiffs do.**

The prerequisites for obtaining a California surveying license are onerous. Ryan would need to stop working at his own business,[3] obtain at least six years of additional education and experience (gained under a licensed land surveyor),[4] pass four exams,[5] and earn references from four existing licensees.[6] Crownholm Decl. ¶ 86. He would also have to first spend time as a certified land surveyor-in-training because he is not already licensed as a civil engineer.[7]

**V. Experts recognize that surveyor licensing should only apply to authoritative location determination, which Plaintiffs do not do.**

Even twenty years ago, experts recognized that "literal[ly] interpreting" many "practice of surveying" definitions would render much spatial and geographical information—including GIS— illegal in the hands of anyone other than licensed surveyors. Bruce A. Joffe, *Surveyors and GIS Professionals Reach Accord,* U.S. Geological Survey Open-File Report 02-370, 29, https://pubs.usgs.gov/of/2002/of02-370/dmt_02.pdf. Accordingly, beginning in 2006, the National

---

[3] Cal. Bus. & Prof. Code § 8726(a)(10) ("Manag[ing] or conduct[ing] as manager, proprietor, or agent, any place of business from which land surveying work is solicited, performed, or practiced" is land surveying requiring a license).

[4] Generally, to obtain a surveying license, a person must:
- graduate from a four-year post-secondary curriculum "with an emphasis in land surveying approved by the board or accredited by a national or regional accrediting agency" and have "two years of actual broad based progressive experience in land surveying, including one year of responsible field training and one year of responsible office training satisfactory to the board,"; or
- have "actual broad based progressive experience in land surveying for at least six years, including one year of responsible field training and one year of responsible office training satisfactory to the board," or
- already be licensed "as a civil engineer with two years of actual broad based progressive experience in land surveying satisfactory to the board."

Cal. Bus. & Prof. Code § 8742(a); Cal. Code Regs. tit. 16 § 425; California Board for Professional Engineers, Land Surveyors, and Geologists, Flowchart-Do I qualify to apply for the Professional Land Surveyor License?, https://www.bpelsg.ca.gov/applicants/flowchart_for_pls.pdf.

[5] These four examinations are: (1) National Council of Examiners For Engineering And Surveying (NCEES) Fundamentals of Surveying (FS) exam (unless approved for a FS waiver); (2) NCEES Principles and Practice of Surveying (PS) exam; (3) California state-specific Professional Land Surveyor exam; and (4) California Professional Land Surveyors State Laws and Rules exam. California Professional Land Surveyor Application, https://www.bpelsg.ca.gov/applicants/lsappintro.shtml.

[6] Cal. Bus. & Prof. Code § 8743.

[7] Cal. Bus. & Prof. Code § 8741.

Council of Examiners for Engineering and Surveying (NCEES), whose members are the engineering and surveying licensing boards from all 50 states, the District of Columbia, and U.S. Territories, promulgated Model Rules to distinguish activities and uses of spatial data that should require a license from those that should not. NCEES Model Rule § 210.25 (Sept. 2021), https://ncees.org/wp-content/uploads/Model_Rules_2021_web-2.pdf; *see also* National States Geographic Information Council, *GIS & Land Surveyors Requirements for Licensing*, https://www.nsgic.org/licensing (recounting history). The distinction drawn by the NCEES Model Rules is a simple one: Surveyor licensing requirements should extend only to activities related to "authoritative location," but not to non-authoritative uses of location data such as "reference[s] for planning, infrastructure management, and general information." NCEES Model Rule 210.25.

California has never amended its surveyor-licensing law to reflect the Model Rules' commonsense distinction and the Board has never adjusted its own rules or enforcement practices to reflect it, either. *Cf.* Cal. Code Regs. tit. 16, § 404(w)-(x) (adopting statutory definitions of "land surveying" and "land surveyor" without further clarification). To the contrary, as illustrated by the enforcement action that precipitated this case, the Board enforces California's vague, broad, and outdated statutes, rules, and regulations governing "land surveying" to their utmost limits; the Board prohibits any drawings "which depict the location of property lines, fixed works, and the geographical relationship thereto." Crownholm Decl. ¶¶ 70, 75 & Ex. D. Thus, in contrast to NCEES Model Rules, California's definition of land surveying, read literally, criminalizes a vast amount of informal, non-authoritative, mapmaking and information conveying by anyone without a surveyor's license, including Plaintiffs' drawings. *Id*. ¶64.

## VI.    The Board's enforcement threatens Plaintiffs' site plan drawings and business.

Plaintiffs started their business in California and spent years cultivating a base of repeat California customers satisfied with MySitePlan.com's drawings. *Id*. ¶ 82. Because of those years

of hard work, California currently accounts for about sixteen percent of MySitePlan.com's existing total business. *Id*. ¶ 81. The Board's enforcement of California's surveyor-licensing laws against Plaintiffs not only threatens their First Amendment right to use, create, and disseminate information; it threatens to wipe out sixteen percent of their business and their repeat California customer base. *Id*. ¶¶ 83-84. It has already forced them to turn away new customers. *Id*. ¶ 85.

## LEGAL STANDARD

The "well established" standard for issuing a preliminary injunction contains four parts: (1) likelihood of success on the merits; (2) likelihood of irreparable harm absent preliminary relief; (3) whether the balance of equities favors the movant; and (4) whether the public interest favors relief. *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014). The Ninth Circuit also recognizes that a court may issue a preliminary injunction when a plaintiff raises "'serious questions going to the merits,' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Thus, if plaintiffs make "a colorable claim that [their] First Amendment rights have been infringed, or are threatened with infringement," "the burden shifts to the government to justify the restriction." *Doe*, 773 F.3d at 570.

## ARGUMENT

A preliminary injunction is warranted because all four factors weigh in Plaintiffs' favor. As set forth in Part I, Plaintiffs are likely to succeed on the merits of their constitutional claims for two reasons. First, as applied by the Board, the surveyor-licensing law infringes on Plaintiffs' First Amendment-protected use, creation, and dissemination of non-authoritative site plan drawings. Second and moreover, California's outdated surveyor-licensing law is impermissibly overbroad and/or impermissibly vague on its face. As set forth in Part II, the Board's enforcement of the law

threatens irreparable harm to Plaintiffs' First Amendment rights and the business Ryan has spent nearly a decade carefully cultivating. As set forth in Part III, the balance of the equities and the public interest also favor entry of a preliminary injunction. Finally, in Part IV, Plaintiffs request that Rule 65(c)'s bond requirement be waived or set at the nominal amount of one dollar.

## I.  Plaintiffs are likely to succeed on the merits of their constitutional claims.

Plaintiffs make two constitutional claims relevant to this motion for preliminary injunction.[8] First, the Board's application of California's surveyor-licensing law to Plaintiffs infringes on Plaintiffs' ability to use, create, and disseminate information and fails any level of First Amendment scrutiny. Second and moreover, California's outdated surveyor-licensing law is either impermissibly overbroad or impermissibly vague, or both, because it either (1) applies to non-authoritative drawings that merely "depict the location of property lines, fixed works, and the geographical relationship thereto," which means that a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep, or (2) does not apply to non-authoritative drawings that merely "depict the location of property lines, fixed works, and the geographical relationship thereto" but provides no indication how to distinguish regulated drawings from un-regulated drawings. Under either theory, governing precedent demonstrates Plaintiffs are likely to succeed on the merits.

### A.  The Board's application of California's surveyor-licensing law to Plaintiffs infringes on Plaintiffs' ability to use, create, and disseminate information and likely fails any level of First Amendment scrutiny.

Plaintiffs are likely to succeed on their as-applied First Amendment claim. First, the Board is regulating speech protected by the First Amendment. Second, the Board's enforcement works a content-based regulation of Plaintiffs' speech. Third, the Board will be unlikely to meet its burden

---

[8] Plaintiffs' Complaint states a third, in-the-alternative claim that is not a basis for this motion and that the Court ultimately need not address if it grants relief to Plaintiffs on their other claims.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

to justify its speech restriction under any level of First Amendment scrutiny.

### 1. Plaintiffs' drawings are speech protected by the First Amendment.

The Board regulates Plaintiffs because "[p]reparing site plans which depict the location of property lines, fixed works, and the geographical relationship thereto" constitutes the practice of surveying. Crownholm Decl. ¶ 70 & Ex. D. According to the Board, Plaintiffs may not create such site plan drawings without a land surveyor license. *Id.* ¶¶ 70, 75-80 & Ex. D.

But Plaintiffs' site plan drawings are speech protected by the First Amendment. The use, creation, and dissemination of information, including for pay, is "speech within the meaning of the First Amendment." *Sorrell*, 564 U.S. at 568-70. Plaintiffs take existing, publicly available information—satellite imagery and GIS data—and use that to generate new information: a drawing depicting the basic layout of a property and, if necessary, a simple explanation of the changes to be made to it. Crownholm Decl. ¶ 19. Plaintiffs then disseminate that new information to their customers. *Id.* ¶¶ 62-63.

That Plaintiffs are being regulated under a licensing law does not change this First Amendment analysis. The Supreme Court made clear in *NIFLA* that occupational licensing regimes, like California's surveyor-licensing law, are subject to First Amendment scrutiny—just like any other speech restriction—when they regulate speech. 138 S. Ct. at 2374. In so ruling, the Court abrogated prior Ninth Circuit decisions that exempted occupational licensing laws from First Amendment scrutiny, *see id.* at 2371, 2375, as the Ninth Circuit has since recognized, *Pac. Coast Horseshoeing*, 961 F.3d at 1068-69, because "the First Amendment deprives the states of 'unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement,'" *id.* at 1069 (quoting *NIFLA*, 138 S. Ct. at 2375). Similarly, the Fifth Circuit has recognized that surveyor-licensing laws "are not wholly exempt from First Amendment scrutiny simply because they are part of an occupational-licensing regime." *Vizaline, L.L.C. v. Tracy*, 949

F.3d 927, 934 (5th Cir. 2020). And this court has applied the First Amendment to California's funeral director licensing laws when they restrict speech. *Full Circle*, 2020 WL 7714200, at *5-7.[9]

Given *NIFLA*, the key question in this case is whether, in this particular circumstance, the Board is regulating Plaintiffs' speech or conduct, and here, the Board is regulating "speech as speech." 138 S. Ct. at 2374; *see Vizaline*, 949 F.3d at 931 ("the relevant question is whether, as applied to" the plaintiff, the surveyor-licensing laws "regulate only speech, restrict speech only incidentally to their regulation of non-expressive professional conduct, or regulate only non-expressive conduct"). States may not infringe on speech under the "guise" of prohibiting conduct. *NIFLA*, 138 S. Ct. at 2373 (internal marks omitted). "While drawing the line between speech and conduct can be difficult, [the Supreme] Court's precedents have long drawn it, and the line is long familiar to the bar." *Id.* (cleaned up). The controlling test is *not* whether the challenged statute "*generally* functions as a regulation of conduct." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010). Instead, courts are to determine why the challenged statute was "directed at" the *particular* person in that *particular* case. *Id.* at 28. Where "the conduct triggering" application of the statute to the plaintiff "consists of communicating a message," the statute is restricting speech, not conduct, and is reviewed accordingly. *Id.*; *see also id.* (further noting that the generally-applicable regulation of conduct barring breaches of the peace at issue in *Cohen v. California*, 403 U.S. 15 (1971), was subject to ordinary First Amendment review because it "was directed at Cohen because of what his speech communicated—he violated the breach of the peace statute because of the offensive content of his particular message"), *Pac. Coast Horseshoeing*, 961 F.3d at 1069

---

[9] *See also Billups v. City of Charleston*, 961 F.3d 673, 682-90 (4th Cir. 2020) (holding licensing requirement for tour guides was an invalid restriction on speech); *Upsolve, Inc. v. James*, No. 22-cv-627 (PAC), 2022 WL 1639554, at *12-14 (S.D.N.Y. May 24, 2022) (preliminarily enjoining enforcement of licensing requirement for lawyers as applied to certain spoken or written legal advice); *Brokamp v. District of Columbia*, No. CV 20-3574 (TJK), 2022 WL 681205, at *1 (D.D.C. Mar. 7, 2022) (denying motion to dismiss in First Amendment challenge to licensure requirement for talk therapy counselors).

(citing *Holder* and holding that challenged law "controls more than contractual relations. It also regulates what kind of educational programs different institutions can offer to different students."); *Upsolve, Inc. v. James*, No. 22-cv-627 (PAC), 2022 WL 1639554, at *11 (S.D.N.Y. May 24, 2022) (in an as-applied challenge, under *Holder*, "if a 'generally applicable law' is 'directed' at a plaintiff 'because of what his speech communicated'—that is, the communication violates the statute 'because of the offensive content of his particular message,' then that law directly burdens plaintiff's speech.").

The Board's Citation Order demonstrates that Plaintiffs are regulated because of the content of their speech. The Board cited Plaintiffs because they draw "site plans which depict the location of property lines, fixed works, and the geographical relationship thereto." Crownholm Decl. Ex. D. Thus, it is the content of Plaintiffs' drawings that trigger the Board's regulation. That Plaintiffs' "[c]ommunication of factual information" in picture form triggers regulation demonstrates that, in this as-applied case, the regulation is of speech and not conduct. *Pac. Coast Horseshoeing*, 961 F.3d at 1071; *see also Upsolve*, 2022 WL 1639554, at *12 ("On its face, New York's UPL rules 'may be described as directed at conduct' of acting as a lawyer, 'but as applied to plaintiffs the conduct triggering coverage under the statute consists of communicating a message.'").

### 2.    The Board's application of California's practice of surveying law to Plaintiffs restricts Plaintiffs' speech because of its content.

The Board's enforcement is a content-based restriction that should be subject to the highest level of constitutional scrutiny. The Board ordered Plaintiffs to stop making drawings "which depict the location of property lines, fixed works, and the geographical relationship thereto" unless Ryan obtains a surveyor license from the Board. Crownholm Decl. Ex. D. If Plaintiffs instead created and disseminated drawings depicting virtually anything besides "property lines, fixed works, and the geographical relationship thereto," the Board would not have applied the surveyor-licensing law to restrict the drawings. *See also* Cal. Bus. & Prof. Code § 8726(a) (setting out subjects that

constitute land surveying). In other words, in this instance, the Board's restriction of Plaintiffs' speech is triggered by "the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also id.* at 169 ("[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter."). Because the regulation turns on the content of Plaintiffs' speech it is a content-based regulation demanding heightened First Amendment scrutiny. *Pac. Coast Horseshoeing*, 961 F.3d at 1070. Indeed, the regulation here is subject to strict scrutiny. *In re Nat'l Sec. Letter*, 33 F.4th 1058, 1071-72 (9th Cir. 2022) (a "regulation or law that restricts speech based on its topic, idea, message, or content is 'content based' on its face, and is accordingly subject to strict scrutiny").

### 3. The Board will be unable to carry its burden under any level of First Amendment scrutiny.

It is unlikely that the Board will be able to carry its First Amendment burden to justify its regulation of speech. Under any level of First Amendment scrutiny, the government bears an affirmative "burden" to "justify the restriction" on Plaintiffs' speech. *Doe*, 773 F.3d at 570. Content-based restrictions like the one challenged here are "presumptively unconstitutional" and will only survive if the government can prove the regulation passes strict scrutiny. *Reed*, 576 U.S. at 163. The Board therefore bears the burden of "prov[ing] that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Id.* at 171 (cleaned up). But even if the court assumes that California's surveyor-licensing law is a content-neutral restriction on Plaintiffs' speech, the Board still must survive intermediate scrutiny. *See McCutcheon v. FEC*, 572 U.S. 185, 199 (2014) (declining to decide whether strict or intermediate scrutiny applied because speech restriction failed even under more lenient test); *Billups*, 961 F.3d at 685 (similar); *Edwards v. District of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (similar). To survive intermediate scrutiny, the Board must prove that its restriction on Plaintiffs' speech is "narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). The

regulation must "directly advance the asserted interest[] and must not be 'more extensive than is necessary to serve that interest.'" *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018). "California's burden under this test is 'heavy.'" *Id*. Under either test, the Board likely cannot meet its heavy burden here. *Doe*, 773 F.3d at 570 (government has burden to justify speech restrictions at preliminary injunction stage).

First, the Board has no significant or compelling interest in censoring Plaintiffs' drawings. Whatever interest exists in requiring a license for people who authoritatively determine property lines and locations—that is, people who conduct surveys—there is no such interest in requiring a license for non-authoritative, informational drawings. The NCEES Model Rules recognize the necessary distinction between determining "authoritative" location and non-authoritative uses of location information. NCEES Model Rule § 210.25, https://ncees.org/wp-content/uploads/Model_Rules_2021_web-2.pdf. California local government building departments also recognize the distinction because they teach non-surveyors how to do site plans. Crownholm Decl. ¶¶ 25-26, 32. These same building departments accept site plan drawings from non-surveyors. *Id*. ¶¶ 28-29, 31. All that Plaintiffs do is use existing, publicly available information (GIS data and satellite or aerial photography) to create and disseminate new information in the form of a basic site plan. *Id*. ¶¶ 50, 53, 60-61. Plaintiffs' customers, as well as local California building departments, know Plaintiffs' drawings are not a survey or authoritative and use them for general planning and informational purposes. *Id*. ¶¶ 54, 62-63. Accordingly, whatever interest the Board has in regulating people who do surveys, that interest does not apply to Plaintiffs.

The Board is also unlikely to be able to show narrow tailoring for many of the same reasons. The Board must show "that it seriously undertook to address" whatever problem it claims here "with less intrusive tools readily available to it." *McCullen*, 573 U.S. at 494; *see also id.* at 496 ("Given the vital First Amendment interests at stake, it is not enough for [the state] simply to say

that other approaches have not worked."). But again, there is a recognized distinction between determining "authoritative" location and non-authoritative uses of location information. *See* NCEES Model Rule § 210.25; *see also* Crownholm Decl. ¶ 29 & Exs. A, B. Moreover, obtaining the license the Board demands—which requires many years of education, experience, and exams, *see* pp. 6-7, *supra*—just to create non-authoritative drawings "which depict the location of property lines, fixed works, and the geographical relationship thereto," Crownholm Decl. Ex. D— "impose[s] serious burdens on [Plaintiffs'] speech," *McCullen*, 573 U.S. at 487. Those serious burdens—which relate to the ability to determine authoritative location—do not "directly advance" any interest in regulating Plaintiffs' non-authoritative, non-survey site plan drawings. *Italian Colors Rest.*, 878 F.3d at 1176. In any event, these heavy burdens are "more extensive than is necessary to serve [whatever] interest" the Board has in regulating Plaintiffs' non-authoritative drawings. *Id*.

\*   \*   \*

Plaintiffs are engaged in speech: Plaintiffs use, create and disseminate information about property in the form of site plan drawings. The Board cited Plaintiffs because of the content of that speech: The Board cited Plaintiffs because their site plan drawings "depict the location of property lines, fixed works, and the geographical relationship thereto." The Board will be unable to meet its evidentiary burden to justify its speech restriction: The NCEES itself, as well as local California government building departments, recognize the critical distinction between "authoritative" location—which is subject to licensure—and non-authoritative site plans—which do not require a license. Plaintiffs are, therefore, likely to succeed on the merits of their as-applied free speech claim.

**B.    California's surveyor-licensing law is likely unconstitutionally overbroad, unconstitutionally vague, or both.**

Plaintiffs are also likely to succeed on their claim that California's surveyor-licensing law is unconstitutionally overbroad, vague, or both. It is, of course, clear that "land surveying" requires

a license in California. Cal. Bus. & Prof. Code § 8792(a), (i). But California's outdated definition of "land surveying" Cal. Bus. & Prof. Code § 8726(a), read literally, applies to a host of informal, non-authoritative drawings of property, a scope of regulation that goes beyond any legitimate application to authoritative location determinations. But if the Board now takes the position—contrary to its enforcement against Plaintiffs—that "land surveying" does not include non-authoritative drawings, the plain text of the definition provides no indication how to distinguish regulated drawings from non-regulated drawings. That leaves Plaintiffs without reasonable notice of whether their site plans are "land surveying" and invites arbitrary enforcement by the Board. These deficiencies render California's definition of land surveying, and therefore the requirement that Plaintiffs obtain a land surveying license to make their site plans, unenforceable.[10]

## 1.    California's land surveying definition is unconstitutionally overbroad.

"In the First Amendment context," a statute will be "invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010). This analysis contains three steps. Step one is to construe the statutory text; step two is to determine the statute's "plainly legitimate sweep," if any; and the final step is to gauge the amount of speech impacted relative to any legitimate sweep. *United States v. Hansen*, 25 F.4th 1103, 1107-11 (9th Cir. 2022). Courts are to be "especially" concerned about overbreadth when, as here, the statute "imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003), *see* Cal. Bus. & Prof. Code § 8792(a), (i). California's definition of "land surveying" fails the overbreadth test.

The "first step" in determining "whether a statute reaches too far" is to construe its text to

---

[10] *See also Elfelt v. Bd. for Professional Engineers, Land Surveyors, and Geologists*, No. 34-2015-80002130 (Sup. Ct. Ca. Sacramento Cty., Aug. 19, 2016) (attached as Appendix B) (finding that providing "'approximate' property corner coordinates and a map" was not surveying and that the Board's argument meant that "online services such as Zillow and Google Earth or Google Maps" would also be regulated.)

"know[] what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). "The party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least 'describe the instances of arguable overbreadth of the contested law.'" *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc). Here, that overbreadth is demonstrated by the Board's own citation. It claimed that drawings "which depict the location of property lines, fixed works[11], and the geographical relationship thereto" violate Cal. Bus. & Prof. Code § 8726(a)(1) and (7). Crownholm Decl. Ex. D. And because (a)(7) requires a license to determine information to be shown on a map in connection with (a)(1) through (a)(6), all those subsections are relevant to this inquiry. And, of course, the Board claimed that offering to do any such drawings violates (a)(9). *Id.*[12]

Thus, according to the Board, the plain text of Cal. Bus. & Prof. Code § 8726(a) encompasses basically all mapmaking, whether informal or authoritative. For example, § 8726(a)(1) requires a license to "locate . . . the alignment or elevation" of a fixed work, while § 8726(a)(3) requires a license to "locate . . . any property line or boundary of any parcel of land." To "locate," according to Merriam-Webster, means merely "to determine or *indicate* the place, site or limits of." *Locate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/locate (emphasis added) (last accessed Sept. 16, 2022). Under California law, then, anyone who indicates the "alignment or elevation" of a building or road or indicates the location of a property line is practicing land surveying. Cal. Bus. & Prof. Code § 8726 (a)(1), (3). On its face, the restriction applies equally to a surveyor authoritatively determining property lines for legal instruments like a deed and to someone who draws a simple map on a cocktail napkin for a lost tourist.

---

[11] "Fixed works" include, among other things, all "municipal improvements" and "buildings." Cal. Bus. & Prof. Code § 6731.

[12] The full text of California's definition of "land surveying", Cal. Bus. & Prof. Code § 8726(a), is attached in full as Appendix A.

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The statute's restriction on "retracing" the alignment of fixed works (like buildings) or the location of property lines goes even further. *See id.* The plain meaning of these provisions would require a land surveyor license to literally copy lines from an existing GIS map, whether by placing tissue paper over a map and hand-drawing over it (as Ryan used to do, Crownholm Decl. ¶ 32) or copying a GIS map into a computer drawing program (as Plaintiffs do now, *id.* ¶¶ 34-35), or anything in between. Worse, subsection (a)(7) makes a criminal of anyone who would merely "[d]etermine[] the information shown or to be shown on any map or document," so long as that map or document ultimately depicted the alignment of a building or other fixed work or the location of a property line. These provisions are likewise not limited to authoritative maps or surveys; rather, they apply equally to informal depictions.

Moreover, there is no "readily susceptible" narrowing construction of the statutory language. Here, "the words of the [statute] simply leave no room" for any narrower interpretation the Board might offer. *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987); *Stevens*, 559 U.S. at 480 ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). Indeed, it has been long recognized that "literal[ly] interpreting" many "practice of surveying" definitions meant that surveyor licensing would be required for all manner of map drawings. Joffe, *Surveyors and GIS Professionals Reach Accord, supra*. That is the reason why the NCEES itself took steps to create a narrowing construction in Model Rule 210.25. But California has not adopted those model rules. Cal. Code Regs. tit. 16, § 404(w)-(x). Accordingly, the court cannot impose a narrowing construction here. *Reno v. ACLU*, 521 U.S. 844, 884 (1997) (Courts may only "impose a limiting construction on a statute . . . if it is 'readily susceptible' to such a construction.").

Step two is to determine the statute's "plainly legitimate sweep," if any. The legitimate sweep of surveyor-licensing laws is the regulation of authoritative location determination. But as

NCEES Model Rule 210.25 demonstrates, the state's interest ends there.

Step three is to determine whether the statute, properly construed, prohibits substantially more speech than is necessary to accomplish its legitimate sweep. *Stevens*, 559 U.S. at 473. In other words, are "the means chosen to accomplish the State's objectives [] too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech"? *See Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 967-68 (1984); *see also Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 n.19 (1984) ("where the statute unquestionably attaches sanctions to protected conduct, the likelihood that the statute will deter that conduct is ordinarily sufficiently great to justify an overbreadth attack."). In *Ashcroft v. Free Speech Coalition.*, 535 U.S. 234, 247-48 (2002), the Supreme Court held a statute designed to prohibit depictions of child pornography overbroad because, by its text, the statute also swept in protected speech including movie adaptions of Romeo and Juliet and the film "American Beauty." Likewise, in *Stevens*, the Court held a statute designed to prohibit video depictions of (illegal) animal cruelty was overbroad because its text also criminalized nearly all depictions of (legal) hunting. 559 U.S. at 474-76.

As this case demonstrates, the statutory text, which the Board enforced against Plaintiffs, is "susceptible of regular application to protected expression." *City of Houston v. Hill*, 482 U.S. 451, 467 (1987). As detailed above, the statute's text criminalizes an alarming amount of "creation and dissemination of information" about property, which is speech protected by the First Amendment. *Sorrell*, 564 U.S. at 570. Whatever interest California has in regulating people who *authoritatively* determine the locations of fixed works, property lines, and the like, the licensing law's plain text "does not merely regulate expressive activity . . . that might create [the alleged] problems." *Berger v. City of Seattle*, 569 F.3d 1029, 1056 (9th Cir. 2009) (en banc). It also requires a license for the creation and dissemination of virtually all *non-authoritative* maps—protected speech that is "passive and unthreatening" and "entirely benign." *Id*. California's law sweeps broader than the

NCEES Model Rules call for. It would prohibit contractor- and homeowner-generated site plan maps that local California building departments regularly accept and teach non-surveyors how to do. It would prohibit the purely informational use of drawings which show, for example, the grounds of a hotel or apartment complex to guests or prospective renters, the layout of vendors at a farmers market, and so on. The state has no interest in regulating these far-more-common examples of informal, non-authoritative maps.

In short, California has chosen regulatory means that are far "too imprecise." *Joseph H. Munson Co.*, 467 U.S. at 968. Because the licensing law is "susceptible of regular application to protected expression," *City of Houston*, 482 U.S. at 467, it is facially overbroad and therefore invalid. Of course, the Board may contend that it does not interpret its regulatory authority literally to extend to virtually all informal maps. It may point out that, in practice, it does not issue citations or seek to make a misdemeanant of virtually everyone in California who creates informal maps. If so, that contention would only lead to the conclusion that, aside from being unconstitutionally overbroad, California's definition of land surveying is also unconstitutionally vague, as there is no intelligible textual basis for discerning why *Plaintiffs'* non-authoritative drawings are prohibited but identical drawings created by non-surveyors are not.

### 2. California's land surveying definition is unconstitutionally vague.

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). "Statutes that are insufficiently clear are void for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998); *accord Davis*, 139 S. Ct. at 2323. Regulations must be clear enough "to allow persons of 'ordinary intelligence a reasonable

opportunity to know what is prohibited.'" *Foti*, 146 F.3d at 638. When faced with a vague law, "the role of courts under our Constitution is . . . to treat the law as a nullity." *Davis*, 139 S. Ct. at 2323. Rooting out vague laws is especially critical "[w]hen First Amendment freedoms are at stake." *Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). Therefore, in First Amendment cases, "courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Id*. The Board's enforcement against Plaintiffs demonstrates that California's land surveying definition presents all three of the evils of a vague law.

*First*, the land surveying definition did not give Plaintiffs fair notice that their site plan drawings were illegal. MySitePlan.com has been in business since 2013 and has done thousands of drawings in California. Crownholm Decl. ¶ 48. Indeed, Ryan did identical drawings years before ever starting MySitePlan.com. *Id*. ¶¶ 30-35, 42. He was taught how to do these site plan drawings by local California government building departments, who also teach the public how to do identical drawings. *Id*. ¶¶ 25-26, 32-33. And those building departments have repeatedly accepted Plaintiffs' drawings—both Ryan's and MySitePlan.com's—without objection. *Id*. ¶¶ 28-29, 38-39, 54. Until the Board's Citation Order, no one thought Plaintiffs' drawings were illegal in California, *id*. ¶¶ 41, 54, even though nothing in the substance of the "land surveying" definition changed during this time. Rather than providing Plaintiffs fair notice that their speech was prohibited, the Board waited years to use a statute of enormous breadth in a "legalistic ambush." *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 972 (9th Cir. 1996).

*Second*, the Board's selective enforcement against Plaintiffs underscores the surveyor-licensing law's vagueness. As shown above, the breadth of the land surveying definition virtually guarantees vague and inexplicable enforcement practices because the statute's plain text criminalizes acts as simple as re-tracing existing maps and creating drawings which merely show

buildings and property lines. Part I.B.1, *supra*. But no one—not contractors and homeowners, who create drawings substantially similar to those Plaintiffs create; not local government building departments, who instruct non-surveyors on how to create drawings substantially similar to those Plaintiffs create and regularly accept non-surveyor site plans; not the NCEES, which wrote Model Rules to preclude enforcement such as this; and not even the Board itself, which has apparently not sanctioned local government building departments, contractors, or homeowners—seems to think the statute should go that far. Instead, the Board seems to have decided "on an entirely ad hoc basis" to apply the statute's "nebulous outer reaches to punish" speech Plaintiffs had been disseminating "for many years." *See Cohen*, 92 F.3d at 972 (finding college's disciplinary policy unconstitutionally vague in part because it was used to punish professor's "longstanding teaching style," without notice, after such style had long "been considered pedagogically sound."). Indeed, by the Board's own admission, its enforcement here is based entirely on Plaintiffs' website. Crownholm Decl. ¶ 70 & Ex. D. But there is no textual basis for distinguishing between Plaintiffs' site plan drawings and the hundreds or thousands of drawings done by other non-surveyors.

*Third*, the vague text and arbitrary application of California's surveying definition will chill First Amendment rights. *See Grayned*, 408 U.S. at 109 (explaining that "uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone") (cleaned up). As discussed in Part I.A., Plaintiffs' use, creation, and dissemination of information in the form of site plan drawings is protected by the First Amendment. The Board's Citation not only "chills" Plaintiffs' exercise of their right, it outright prohibits it under penalty of criminal law. Cal. Bus. & Prof. Code § 8792(a), (i). Moreover, even if the Board claims that only Plaintiffs' non-authoritative drawings are prohibited while substantially similar drawings created by other people not licensed as surveyors are not, the open-endedness of the statutory text gives the public no indication of where the line between "legal" and "illegal" is located. *See Comite de Jornaleros*, 657 F.3d at 947 ("proposed

distinguishing feature" was "wholly absent from the face of the" statute). Rather than put blind faith in hopes that the Board will "use [the statute] responsibly," *Stevens*, 559 U.S. at 480, non-surveyors like homeowners and contractors may stop creating site plan drawings altogether after learning of the Board's application of the licensing law to Plaintiffs. *Cf. Young v. Am. Mini Theaters, Inc.*, 427 U.S. 50, 60 (1976) (a statute is impermissibly vague if its "deterrent effect on legitimate expression is . . . both real and substantial" (cleaned up)).

*          *          *

Plaintiffs are not only likely to succeed on their as-applied First Amendment claim, they are also likely to succeed on their "facial" challenges—overbreadth, vagueness, or both—to California's "land surveyor" definition. On its face, the definition (1) sweeps in a host of map drawings that even the NCEES says should not implicate surveyor licensing, (2) gives no indication to Plaintiffs what drawings are legal or illegal, and (3) invites subjective, arbitrary, and discriminatory enforcement by the Board. And because the other preliminary injunction factors likewise weigh in Plaintiffs' favor as discussed below, a preliminary injunction is warranted.

## II. Plaintiffs will suffer irreparable harm absent a preliminary injunction against enforcement of the surveyor-licensing law.

"[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Klein v. City of San Clemente*, 584 F.3d 1196, 1207-08 (9th Cir. 2009). The Board has already cited Plaintiffs, imposed fines, and directed them to stop speaking or obtain a surveyor license. Crownholm Decl. ¶¶ 67-68 & Ex. D. The Board's enforcement of California's surveyor-licensing law requires Plaintiffs to stop drawing site plans for customers unless Ryan undertakes the arduous steps of obtaining a surveying license. Indeed, Plaintiffs have already been forced to turn away potential new customers because of the Baord's enforcement. *Id.* ¶ 85. Without preliminary injunctive relief, Plaintiffs will be forced to forgo their

First Amendment rights for the (likely) years required to fully litigate their claims. Because they are likely to prevail on their First Amendment claims, preliminary relief is warranted. *See also Doe*, 772 F.3d at 583 ("[A] colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief.") (internal quotation marks omitted).

That Plaintiffs sell their speech only exacerbates their irreparable injury because the Board's enforcement also threatens their livelihood. A restriction on the freedom of speech is "more serious" when the speech restriction would cause a plaintiff to "lose her income." *Ebel v. City of Corona*, 698 F.2d 390, 393 (9th Cir. 1983) (directing district court to issue preliminary injunction). California site plan drawings constitute about sixteen percent of Plaintiffs' existing business. Crownholm Decl. ¶ 81. Because the Board has already told Plaintiffs to stop their business in California, preliminary relief against the Board is necessary to prevent the loss of a sizeable part of Plaintiffs' business during litigation and the threat of permanently losing a satisfied customer base Plaintiffs spent years and money carefully cultivating. *Id.* ¶¶ 82-85. Accordingly, Plaintiffs will suffer irreparable harm absent a preliminary injunction.

## III.    The balance of equities and the public interest favor a preliminary injunction.

The remaining preliminary injunction factors—the balance of the equities and the public interest—each also favors Plaintiffs. Most simply, "the fact that Plaintiffs have raised serious First Amendment concerns compels a finding that . . . the balance of hardships tips sharply in their favor." *Am. Beverage Ass'n v. City & Cnty. Of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) (cleaned up). The Board will not be harmed by an injunction; it has no interest in enforcing an unconstitutional law. *Id.* Similarly, the public has no interest in suppressing protected speech; rather, there is a "significant public interest in upholding First Amendment principles." *Id.* (quoting *Doe*, 772 F.3d at 583). "Prevent[ing] the violation of a party's constitutional rights" is "always in the public interest." *Id.* (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir.

2012)). Moreover, that MySitePlan.com has done non-authoritative site-plan drawings in California for nearly a decade—and Ryan has done them for years more—without complaint demonstrates that there is no threat to the public. Crownholm Decl. ¶¶ 48, 54. And NCEES, which claims its model rules are meant to "safeguard the health, safety, and welfare of the public by ensuring the proper performance of the duties of the board," NCEES Model Rule 210.10, recognizes that licensure should not be required for non-authoritative drawings, *id*. at 210.25. Indeed, if there were a threat from Plaintiffs' site plan drawings, then building departments throughout California would not have (1) taught Ryan how to do them, (2) accepted thousands of site plan drawings from Plaintiffs for years, (3) taught the general public how to do site plan drawings, or (4) regularly accepted site plan drawings from non-surveyor homeowners and contractors. Crownholm Decl. ¶¶ 25-26, 28-29, 32-33, 38-39.

## IV.  Rule 65(c)'s bond requirement should be waived.

For the foregoing reasons, this Court should grant Plaintiffs' motion for a preliminary injunction. While Fed. R. Civ. P. 65(c) allows the imposition of a bond in an amount sufficient to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained," this Court may waive the bond where "there is no realistic likelihood of harm to the defendant[s] from enjoining [their] conduct," *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009). The Board faces no threat of financial harm if it is enjoined from restricting Plaintiffs' speech during this litigation. Plaintiffs therefore request that this Court waive the bond requirement or, in the alternative, set the bond requirement in the nominal amount of one dollar.

## CONCLUSION

For all these reasons, Plaintiffs respectfully ask the Court to enter a preliminary injunction for the pendency of this case.

1    Respectfully submitted this 18th day of October, 2022.

2

3                                                          /s/ Paul V. Avelar
      **THE KERNAN LAW FIRM, APC**            Paul V. Avelar* (AZ Bar no. 023078)
4     S. Michael Kernan (CA Bar no. 181747)   **INSTITUTE FOR JUSTICE**
      9663 Santa Monica Blvd., Suite 450       398 S. Mill Ave., Suite 301
5     Beverly Hills, California 90210          Tempe, AZ 85281
      Tel: (310) 490-9777                      Tel.: (480) 557-8300
6     Fax: (310) 861-0503                      Fax: (480) 557-8305
      Email: MKernan@kernanlaw.net             Email: pavelar@ij.org
7                                              *Counsel for Service*

8
                                              Michael Greenberg* (DC Bar no. 1723725)
9                                             **INSTITUTE FOR JUSTICE**
                                              901 N. Glebe Rd., Suite 900
10                                            Arlington, VA 22203
                                              Tel.: (703) 682-9320
11                                            Fax: (703) 682-9321
                                              Email: mgreenberg@ij.org
12

13                                            *Admitted *pro hac vice*

14                              *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of October, 2022, I caused the forgoing document to be filed with the Court's CM/ECF system and served on the counsel of record for Defendants by the Court's CM/ECF system.

/s/ Paul V. Avelar
Paul V. Avelar
*Attorney for Plaintiffs*

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

# APPENDIX

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# APPENDIX A

Cal. Bus. & Prof. Code § 8726

West's Annotated California Codes
    Business and Professions Code (Refs & Annos)
        Division 3. Professions and Vocations Generally (Refs & Annos)
            Chapter 15. Land Surveyors (Refs & Annos)
                Article 3. Application of the Chapter (Refs & Annos)

West's Ann.Cal.Bus. & Prof.Code § 8726

§ 8726. Practice of land surveying; exemption from licensure
requirement; review, approval, or examination of documents

Effective: January 1, 2022
Currentness

(a) A person, including any person employed by the state or by a city, county, or city and county within the state, practices land surveying within the meaning of this chapter who, either in a public or private capacity, does or offers to do any one or more of the following:

(1) Locates, relocates, establishes, reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within the practice of civil engineering, as described in Section 6731.

(2) Determines the configuration or contour of the earth's surface, or the position of fixed objects above, on, or below the surface of the earth by applying the principles of mathematics or photogrammetry.

(3) Locates, relocates, establishes, reestablishes, or retraces any property line or boundary of any parcel of land, right-of-way, easement, or alignment of those lines or boundaries.

(4) Makes any survey for the subdivision or resubdivision of any tract of land. For the purposes of this subdivision, the term "subdivision" or "resubdivision" shall be defined to include, but not be limited to, the definition in the Subdivision Map Act (Division 2 (commencing with Section 66410) of Title 7 of the Government Code) or the Subdivided Lands Law (Chapter 1 (commencing with Section 11000) of Part 2 of Division 4 of this code).

Case 2:22-cv-01720-DAD-CKD   Document 12-1   Filed 10/18/22   Page 38 of 50

(5) By the use of the principles of land surveying determines the position for any monument or reference point that marks a property line, boundary, or corner, or sets, resets, or replaces any monument or reference point.

(6) Geodetic surveying or cadastral surveying. As used in this chapter:

(A) Geodetic surveying means performing surveys, in which account is taken of the figure and size of the earth to determine or predetermine the horizontal or vertical positions of fixed objects thereon or related thereto, geodetic control points, monuments, or stations for use in the practice of land surveying or for stating the position of fixed objects, geodetic control points, monuments, or stations by California Coordinate System coordinates.

(B) Cadastral surveying means performing a survey that creates, marks, defines, retraces, or reestablishes the boundaries and subdivisions of the public land survey system of the United States.

(7) Determines the information shown or to be shown on any map or document prepared or furnished in connection with any one or more of the functions described in paragraphs (1) to (6), inclusive.

(8) Indicates, in any capacity or in any manner, by the use of the title "land surveyor" or by any other title or by any other representation that they practice or offer to practice land surveying in any of its branches.

(9) Procures or offers to procure land surveying work for themselves or others.

(10) Manages, or conducts as manager, proprietor, or agent, any place of business from which land surveying work is solicited, performed, or practiced.

(11) Coordinates the work of professional, technical, or special consultants in connection with the activities authorized by this chapter.

Case 2:22-cv-01720-DAD-CKD   Document 12-1   Filed 10/18/22   Page 39 of 50

(12) Determines the information shown or to be shown within the description of any deed, trust deed, or other title document prepared for the purpose of describing the limit of real property in connection with any one or more of the functions described in paragraphs (1) to (6), inclusive.

(13) Creates, prepares, or modifies electronic or computerized data in the performance of the activities described in paragraphs (1), (2), (3), (4), (5), (6), (11), and (12).

(14) Renders a statement regarding the accuracy of maps or measured survey data.

(b) Any department or agency of the state or any city, county, or city and county that has an unregistered person in responsible charge of land surveying work on January 1, 1986, shall be exempt from the requirement that the person be licensed as a land surveyor until the person currently in responsible charge is replaced.

(c) The review, approval, or examination by a governmental entity of documents prepared or performed pursuant to this section shall be done by, or under the direct supervision of, a person authorized to practice land surveying.

**Credits**
(Added by Stats.1939, c. 41, p. 432, § 1. Amended by Stats.1941, c. 834, p. 2402, § 1.5; Stats.1961, c. 2225, p. 4579, § 1; Stats.1983, c. 625, § 4; Stats.1983, c. 760, § 4; Stats.1985, c. 670, § 1; Stats.1987, c. 805, § 3; Stats.1988, c. 817, § 1; Stats.1990, c. 1226 (A.B.3395), § 2; Stats.1991, c. 350 (A.B.427), § 1; Stats.1995, c. 579 (A.B.1566), § 2, eff. Oct. 4, 1995, operative Jan. 1, 1996; Stats.2006, c. 760 (S.B.1849), § 6; Stats.2021, c. 106 (S.B.414), § 1, eff. Jan. 1, 2022.)

Notes of Decisions (7)

West's Ann. Cal. Bus. & Prof. Code § 8726, CA BUS & PROF § 8726
Current with urgency legislation through Ch. 997 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

1
2
3
4
5
6
7
8
9
10
11
12

# APPENDIX B

*Elfelt v. Bd. for Prof'l Eng'rs, Land Surveyors, and Geologists*
No. 34-2015-80002130

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SACRAMENTO

| | |
|---|---|
| **JOSEPH ELFELT**<br><br>v.<br><br>**BOARD FOR PROFESSIONAL ENGINEERS, LAND SURVEYORS, AND GEOLOGISTS** | Case Number:  34-2015-80002130<br><br>**RULING ON SUBMITTED MATTER**<br><br><br>Date:    August 19, 2016<br>Time:    9:00 a.m.<br>Dept.:   29<br>Judge:  Timothy M. Frawley |

**Proceeding:**         Petition for Writ of Mandate

**Tentative Ruling:**   Granted

———————

The Executive Officer of the Board for Professional Engineers, Land Surveyors, and Geologists (Board) issued Petitioner Joseph Elfelt a citation for practicing land surveying without a license.  The citation included a $5,000 fine and an order that Petitioner cease offering and/or practicing land surveying in California.  Petitioner appealed the citation, but the Board upheld the citation.  By his First Amended Petition for Writ of Administrative Mandate, Petitioner challenges the Board's decision.  The court shall grant the petition.

<u>Background Facts and Procedure</u>

Petitioner operates an internet-based business from his home in the State of Washington.  Petitioner's business, Property Line Maps, uses software that he developed to analyze property information (that is supplied by the customer or obtained online) and provide clients with "approximate" property corner coordinates and a map showing the property's boundaries according to the approximate coordinates produced.

Petitioner does not visit his client's land; he does all his work in his home office in Washington State.

Petitioner markets his business through a website at http://www.PropertyLineMaps.com. At all relevant times, the website included the following statements:

> Our goal is to help you find property lines and find property corners by producing the *most accurate GPS coordinates possible without hiring a surveyor.* We do this by taking the information you supply and combining it with any online research we might do. That data is then processed by our own unique *first-of-its-kind proprietary software*.

> Our goal is to produce coordinates that are *within 30 feet of accurate* on average. (Italics original.)

A link to "FAQ" on the website included the following questions and answers:

> Q: *I have a property line dispute with my neighbor. Can your service help me?*
> A: Maybe. Take a look at the example online maps on the homepage. On average the property lines on those example maps and the GPS coordinates that we produce should be within 30 feet of accurate. No, the data we produce is not survey-grade, however for many purposes it is close enough. But if you need to know exactly where your property corners and lines are, then you need to contact a surveyor. The online map links we produce are not surveys.

> Q: *How can the coordinates your service produces be any good given that the cost is so modest?*
> A: Our service produces the most accurate coordinates possible without hiring a surveyor and does so at an extremely affordable price for the simple reason that the software we developed uses a unique approach to do most of the work. Our very first client was so impressed with the quality of our product and the value he received that he donated an additional $60 to support Gmap4. (The Gmap4 software we developed is a free enhanced Google map viewer that displays the online map links we produce. Gmap4 homepage)

> Q: *When you say the land corner coordinates that your service produces are "approximate," what does that mean?*

Page 2 of 9

A: Our goal is to produce coordinates that are within 30 feet of accurate on average.

Q: *My property has never been surveyed. Can I use the coordinates you provide to mark my property corners on the ground?*
A: No. There are two reasons for this. First, the coordinates we provide are only approximate. Second, it might be a violation of state law for anyone, even the property owner, to mark their property corners on the ground unless they are a licensed surveyor. If your goal is to get your property corners accurately marked on the ground then you must hire a surveyor.

Q: *Can I use your coordinates to determine if my neighbor's building or my neighbor's road is on my land?*
A: No. The only way to know for certain whether anything like a building or road is on the wrong side of the property line is to know the exact location of the property line. The only way to know the exact location is to hire a surveyor. (Italics original.)

A link to "About" contained the following statement about the property line mapping service that Petitioner provides:

The property information that you supply plus our own online research is used by our software to produce the corner coordinates. The Online research we do will vary depending on the circumstances. This research may include accessing databases or GIS systems maintained by the federal Bureau of Land Management, state government and/or county government. No one piece of information is used alone to determine your coordinates. Instead, our proprietary software advances state-of-the-art by letting us process all this information, make any needed adjustments and supply you with *property coordinates that are as accurate as possible without hiring a land surveyor.*

But please keep one thing in mind. Joseph is not a land surveyor and the coordinates that you purchase from us and the maps displayed by those coordinates do not constitute a land survey. If what you really need is a survey then our service cannot help you and your only option is to pay the money and hire a licensed surveyor. (Italics original.)

The online maps that Petitioner produces state "Not a survey," and include a link titled "About this map." Clicking the "About this map" link displays text that states, in relevant part:

> **Our goal is to produce coordinates for property corners that are within 30 feet of accurate on average.**
>
> However, the map is not a survey.
>
> The coordinates you see when you click (or touch) a corner are only intended to be close to the property corners and are not intended to authoritatively locate the property corners or lines.
>
> If you need to locate or mark your property corners and lines accurately on the ground please contact a licensed surveyor. (Bold original.)

Petitioner has never been licensed in any capacity by the Board.

In 2014, following a complaint by a land-surveyor-in-training, the Board's Executive Officer issued a citation to Petitioner for practicing land surveying without a license, in violation of Business and Professions Code section 8792. The citation states that Petitioner is violating sections 8792(a) and 8726(c) and (n) by offering clients "approximate" ground coordinates by which they can retrace their own boundaries and by stating a level of accuracy regarding property corner information. The citation also charges Petitioner with violating section 8792(i) by managing a business from which land surveying services are offered and/or performed.

The citation levied a $5,000 administrative fine and ordered Petitioner to cease offering and practicing land surveying activities in California. The citation notified Petitioner that he had a right to appeal the citation by requesting an administrative hearing. The notice states that, unless appealed, the citation shall become a final order of the Board.

Petitioner appealed and an administrative hearing was scheduled for January 22, 2015, before ALJ Wong. At the hearing, Lynn Kovach, a licensed land surveyor, testified as an expert witness for the complainant. She opined that Petitioner, by offering to provide coordinates for property corners "within 30 feet of accurate," is practicing land surveying without a license because he is providing information that can be used to establish or reestablish the positions of property corners and rendering statements regarding the accuracy of maps or measured survey data. Ms. Kovach distinguished services such

as Google Maps that provide approximate locations of property, but that make no claim to accuracy. Petitioner testified on his own behalf.

At the conclusion of the hearing, ALJ Wong found the testimony of Ms. Kovach more persuasive and issued a proposed decision upholding the citation. On April 16, 2015, the Board adopted the proposed decision as its Decision.

On July 16, 2015, Petitioner filed his First Amended Verified Petition for Writ of Administrative Mandate challenging the Board's decision. Petitioner alleges that the Board abused its discretion in finding that he violated the Business and Professions Code by practicing land surveying without a license.

Petitioner also alleges that the Board's regulations improperly delegated final decision-making authority to the Board's Executive Officer. Petitioner argues that because there is no statute expressly authorizing the Board to delegate final decision-making authority to its Executive Officer, the regulations are void, and therefore the Executive Officer lacked authority to issue the citation against him.

Finally, Petitioner alleges that he was denied a fair hearing because the Board members were biased against him.

### Standard of Review

A court's review of an adjudicatory decision is subject to two possible standards of review, depending upon the nature of the right involved. If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. If the administrative decision does not substantially affect a fundamental vested right, the court's review is limited to determining whether the administrative findings are supported by substantial evidence.

In this case, the parties disagree whether the Board's decision substantially affects a fundamental vested right. The Board argues that because Petitioner is faced only with a fine, no fundamental vested right is implicated. Petitioner argues that the Board's decision not only imposed a fine, but also included an order of abatement, prohibiting Petitioner from doing business in California.

The court agrees with Petitioner that the independent judgment test should apply. Prior to the Board's decision, Petitioner could offer his business services within the State of California. The Board's decision orders him to "cease and desist" from offering and/or

practicing land surveying in California.  Thus, the Board's order substantially affected his right to operate his business in California.

Petitioner's authority to operate his business in California is a fundamental right because of its economic impact and the importance to Petitioner in his life situation. (See *Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313; *Berlinghieri v. DMV* (1983) 33 Cal.3d 392, 395-98; see also *Frink v. Prod* (1982) 31 Cal.3d 166, 177.) Thus, the Board's decision substantially affected a fundamental vested right.[1]

In any event, because the evidence is undisputed, the issue before this court is a question of law, and the court must apply its independent judgment in deciding whether the Board erred.  (See *Stermer v. Board of Dental Examiners* (2002) 95 Cal.App.4th 128, 132.)

Discussion

The court agrees with Petitioner that the Board abused its discretion in finding that he unlawfully engaged in the practice of land surveying without a license.

Business and Professions Code section 8726 defines the practice of "land surveying."  It provides, in relevant part:

> A person, including any person employed by the state or by a city, county, or city and county within the state, practices land surveying within the meaning of this chapter who, either in a public or private capacity, does or offers to do any one or more of the following:
>
> (c)   Locates, relocates, establishes, reestablishes, or retraces any property line or boundary of any parcel of land, right-of-way, easement, or alignment of those lines or boundaries.
>
> . . .
>
> (n)  Renders a statement regarding the accuracy of maps or measured survey data. . . .

In its decision, the Board found that Petitioner violated subdivision (c) by "offering to provide approximate ground coordinates from which clients can trace their own boundaries," and violated subdivision (n) by "stating the level of accuracy of the property

---

[1] Even if the substantial evidence test applied, the court would reach the same conclusions.  There is not substantial evidence in the record to support the Board's findings.

Page 6 of 9

corner information he provides as 'being within 30 feet on average.'"  (Decision, p.14.)
Both findings are based on a mischaracterization of the evidence in the record.

The Board's decision construes the information on Petitioner's website as "statements
of accuracy" for the property corner coordinates that he provides, which may be used by
clients to "retrace their own boundaries."  The Board therefore concludes that Petitioner
is "establishing or reestablishing" the positions of the property lines.  There are several
problems with this finding.

First, Petitioner does not claim to provide accurate property corners or lines.
Petitioner's website clearly states that he only provides "approximate" coordinates and
that the coordinates he provides are not "survey-grade" and cannot be used to mark the
exact location of property lines on the ground.  Although not mentioned in the decision,
the FAQs include the following question and answer directly addressing this issue:

> Q: *My property has never been surveyed.  Can I use the coordinates you
> provide to mark my property corners on the ground?*
> A: No.  There are two reasons for this.  First, the coordinates we provide
> are only approximate.  Second, it might be a violation of state law for
> anyone, even the property owner, to mark their property corners on the
> ground unless they are a licensed surveyor. If your goal is to get your
> property corners accurately marked on the ground then you must hire a
> surveyor.

The website states that it is Petitioner's "*goal*" to "produce coordinates that are within 30
feet of accurate *on average*," but Petitioner does not represent to his clients that he will
meet this goal.  He does not represent that the particular coordinates he provides to a
client will be "within 30 feet of accurate" or meet any other standard of accuracy.  His
website repeatedly states that Petitioner is not a "surveyor" and that the information he
produces is not a "survey."  The website warns clients that "if [they] need to locate or
mark [their] property corners and lines accurately on the ground," then they need to
"contact a licensed surveyor."  "The only way to know the exact location is to hire a
surveyor."

The Board dismisses all of these statements as "prefatory language" that does not
negate his "statements of accuracy."  However, words have meaning.  By ignoring
Petitioner's disclaimers, the Board is twisting Petitioner's statements into something
they are not:  a representation that he will provide "accurate" coordinates.  Petitioner
makes no such claim and is very careful to inform clients that the coordinates he

provides are "approximate" and cannot be used to mark property corners and lines accurately on the ground.

In addition, section 8726(c) unambiguously applies only to the person who "does or offers to do" the activities listed in the subsection. Merely providing "approximate" ground coordinates, with a "goal" of being accurate within 30 feet "on average," is not locating or establishing any property line or boundary within the meaning of section 8726(c). Petitioner cannot be found guilty of a misdemeanor for violating Business and Professions Code section 8792(a) based on speculation that his clients might misuse the information at some time in the future.

For the same reason, Petitioner is not guilty of rendering statements regarding the "accuracy of maps or measured survey data" within the meaning of section 8726(n). Even if the term "map" is broadly defined to include any drawing depicting physical earth features,[2] as Ms. Kovach defined it, Petitioner is not "rendering statements regarding the accuracy" of his maps.

This language is aimed at persons who create maps purporting to accurately define or establish property corners or boundaries. The Board is turning the statute on its head, trying to hold Petitioner guilty of practicing land surveying without authorization because he created a map and disclaimed any attempt to accurately and authoritatively locate property corners or lines.

Petitioner's stated "goal" of producing coordinates that are "within 30 feet of accurate on average" does not change the character of his maps -- which merely show "approximate" property coordinates, or his representations about their "accuracy" (lack of accuracy) "on average." Petitioner expressly advised his clients that his maps do not accurately depict property corners and lines, and that if clients need such information, they must contact a licensed surveyor. Under the circumstances, it was an abuse of discretion for the Board to use these statements against him, and find Petitioner guilty because he made clear on his website that his maps are not – and are not intended to be – accurate survey maps.

---

[2] If the court were to adopt this definition, it is difficult for the court to see how online services such as Zillow and Google Earth or Google Maps, which also provide approximate property locations, would not also be subject to section 8726. The court does not agree that these services are distinguishable because they "make no claim to accuracy whatsoever." Indeed, if the only difference between Petitioner and Google is Petitioner's claims to accuracy, then Petitioner could cure the ostensible problems with his business merely by deleting the statements regarding the accuracy/inaccuracy of his information. The Board's decision goes much further, prohibiting Petitioner from offering his services in California, regardless of his advertising claims.

Petitioner's clients may question whether obtaining approximate property corner coordinates is worth the price Petitioner charges, but this has no bearing on whether Petitioner's activities constitute "land surveying" within the meaning of the statutory scheme.

The court concludes that the Board's decision must be set aside because the evidence does not support the finding that Petitioner is practicing land surveying without a license.  This renders it unnecessary for the court to consider Petitioner's claims that the decision must be set aside because the Board's Executive Officer lacked authority to issue the citation, or because the Board was biased against Petitioner.

<u>Disposition</u>

The petition is granted.  The court shall issue a writ of mandate commanding the Board to set aside its decision affirming the citation and issue a new decision granting Petitioner's appeal and dismissing the citation.  The court shall prepare a formal judgment and writ consistent with this ruling.

Petitioner shall be entitled to recover his costs upon appropriate application.

Dated: August 29, 2016

Hon. Timothy M. Frawley
California Superior Court Judge
County of Sacramento

## CERTIFICATE OF SERVICE BY E-MAILING
(C.C.P. Sec. 1013a(4))

I, the Clerk of the Superior Court of California, County of Sacramento, certify that I am not a party to this cause, and on the date shown below I served the foregoing RULING ON SUBMITTED MATTER by depositing true copies thereof, enclosed in separate, sealed envelopes with the postage fully prepaid, in the United States Mail at Sacramento, California, each of which envelopes was addressed to:

JOHN W. KILLEEN
STANTON LEE
Deputy Attomey General
1300 I Street, Suite 125
Sacramento, CA 94244-2550

Joseph Elfelt
20707 NE 120th Street
Redmond, WA 98053

I, the undersigned deputy clerk, declare under penalty of perjury that the foregoing is true and correct.

Dated: August 29, 2016

Superior Court of California, County of Sacramento

By:      F. Temmerman
         Deputy Clerk, Dept.29

43