**INSTITUTE FOR JUSTICE**
Paul V. Avelar* (AZ Bar no. 023078)
398 S. Mill Ave., Suite 301
Tempe, AZ  85281
Tel.: (480) 557-8300
Fax: (480) 557-8305
Email: pavelar@ij.org
*Counsel for Service*

Michael Greenberg* (DC Bar no. 1723725)
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
Email: mgreenberg@ij.org

*Admitted pro hac vice

**THE KERNAN LAW FIRM, APC**
S. Michael Kernan (CA Bar no. 181747)
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
Tel: (310) 490-9777
Fax: (310) 861-0503
Email: MKernan@kernanlaw.net

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CROWNHOLM; and CROWN CAPITAL ADVENTURES, INC., d/b/a MYSITEPLAN.COM,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD B. MOORE, in his official capacity as Executive Officer of the California Board for Professional Engineers, Land Surveyors, and Geologists, et al.,<br><br>Defendants. | No.  2:22-CV-01720-DAD-CKD<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Hearing Date: December 6, 2022<br>Time: 1:30pm<br>Courtroom: 4<br>Judge: Dale A. Drozd |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

ARGUMENT IN REPLY ....................................................................................................... 1

I.     Abstention is not appropriate here ............................................................................... 1

      A.    *Younger* abstention does not apply ................................................................ 1

      B.    *Pullman* abstention does not apply ............................................................... 4

II.    The Board's commercial speech arguments are irrelevant .......................................... 6

III.   The Board fails to address Plaintiffs' actual free speech claim .................................. 7

IV.   The Board's atextual interpretation of "land surveying" reinforces Plaintiffs' likelihood of succeeding on their overbreadth and vagueness claims ....................... 12

      A.    The Board confirms the overbreadth problem .................................................. 12

      B.    The Board confirms the vagueness problem ..................................................... 14

V.    Irreparable harm and the balance of equities favor Plaintiffs ..................................... 15

CONCLUSION ........................................................................................................................ 15

CERTIFICATE OF SERVICE ............................................................................................... 17

1

## TABLE OF AUTHORITIES

2

PAGE(S)

3

CASES

4
*44 Liquormart, Inc. v. Rhode Island*,
517 U.S. 484 (1996) ......................................................................................... 11

5

6
*Alleghany Corp. v. Pomeroy*,
898 F.2d 1314 (8th Cir. 1990) ............................................................................ 4

7

8
*Am. Soc'y of Journalists & Authors, Inc. v. Bonta*,
15 F.4th 954 (9th Cir. 2021) ............................................................................... 9

9
*Arizonans for Off. Eng. v. Arizona*,
520 U.S. 43 (1997) ............................................................................................. 5

10

11
*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*,
482 U.S. 569 (1987) ......................................................................................... 13

12

13
*Bartnicki v. Vopper*,
532 U.S. 514 (2001) ........................................................................................... 9

14
*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) ............................................................................................. 6

15

16
*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980) ........................................................................................... 6

17

18
*Christ v. Town of Ocean City*,
312 F. Supp.3d 465 (D. Md. 2018) ................................................................... 12

19

20
*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ......................................................................................... 11

21
*City of Houston v. Hill*,
482 U.S. 451 (1987) ....................................................................................... 4, 5

22

23
*Colo. River Conservation Dist. v. United States*,
424 U.S. 800 (1976) ........................................................................................... 1

24

25
*Conant v. Walters*,
309 F.3d 629 (9th Cir. 2002) ....................................................................... 10, 11

26
*Courtney v. Danner*,
801 F. App'x 558 (9th Cir. 2020) ....................................................................... 5

27

28

*Courtney v. Goltz*,
    736 F.3d 1152 (9th Cir. 2013).............................................................................. 4, 5

*Expressions Hair Design v. Schneiderman*,
    581 U.S. 37 (2017) .................................................................................................. 5

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998)............................................................................ 13, 14

*Full Circle of Living & Dying v. Sanchez*,
    No. 2:20-CV-01306-KJM-KJN, 2020 WL 7714200 (E.D. Cal. Dec. 28, 2020) ............. 2, 7, 8

*Hines v. Quillivan*,
    982 F.3d 266 (5th Cir. 2020).................................................................................. 8

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) .................................................................................................. 8

*Huffman v. Pursue, Ltd.*,
    420 U.S. 592 (1975)............................................................................................... 2

*Järlström v. Aldridge*,
    366 F. Supp.3d 1205 (D. Or. 2018) ....................................................................... 8

*Majors v. Engelbrecht*,
    149 F.3d 709 (7th Cir. 1998)................................................................................. 4

*Maymó-Meléndez v. Alvarez-Ramírez*,
    364 F.3d 27 (1st Cir. 2004)............................................................................... 3, 4

*Monarch Content Mgmt. LLC v. Ariz. Dep't of Gaming*,
    971 F.3d 1021 (9th Cir. 2020)............................................................................. 10

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
    138 S. Ct. 2361 (2018)....................................................................................... 6, 8

*O'Neill v. City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994).................................................................................... 4

*Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,
    961 F.3d 1062 (9th Cir. 2020)......................................................................... 7, 8, 9

*Pickup v. Brown*,
    740 F.3d 1208 (9th Cir. 2014)............................................................................... 9

*Potrero Hills Landfill, Inc. v. Cnty. of Solano*,
    657 F.3d 876 (9th Cir. 2011).......................................................................... 1, 3, 4, 5

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund,*
  754 F.3d 754 (9th Cir. 2014)............................................................................ 1, 3

*Reno v. Am. Civ. Liberties Union,*
  521 U.S. 844 (1997).......................................................................................... 14

*San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose,*
  546 F.3d 1087 (9th Cir. 2008)............................................................................. 3

*Roulette v. City of Seattle,*
  97 F.3d 300 (9th Cir. 1996)............................................................................... 12

*Sec'y of State v. Joseph H. Munson Co.,*
  467 U.S. 947 (1984).......................................................................................... 14

*Sorrell v. IMS Health Inc.,*
  564 U.S. 552 (2011)........................................................................................ 7, 9

*Tingley v. Ferguson,*
  47 F.4th 1055 (9th Cir. 2022) .......................................................................... 8, 9

*United States v. Hansen,*
  25 F.4th 1103 (9th Cir. 2022) ........................................................................... 12

*United States v. Davis,*
  139 S. Ct. 2319 (2019)...................................................................................... 14

*United States v. Johnson,*
  626 F.3d 1085 (9th Cir. 2010)........................................................................... 14

*United States v. Stevens,*
  559 U.S. 460 (2010).............................................................................. 12, 13, 14

*Upsolve Inc. v. James,*
  No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y. May 24, 2022)......................... 8, 10, 11

*Wooley v. Maynard,*
  430 U.S. 705 (1977).................................................................................... 2, 3, 4

**CODES & STATUTES**

Cal. Building Code (2016) ch. 1, div. 2, § 107.2.5 ....................................................... 11

Cal. Bus. & Prof. Code § 8726 ............................................................................. 5, 7, 13

Cal. Code Regs. tit. 16, § 472.3 .................................................................................. 1

**INTRODUCTION**

The Board's opposition to Plaintiffs' motion for a preliminary injunction confirms that the motion should be granted. First, abstention is not warranted in this case. Second, the Board's commercial speech arguments are both irrelevant and wrong. Third, the Board misunderstands Plaintiffs' free speech claim and fails to engage with the governing case law. Fourth, the Board actually confirms the overbreadth and vagueness problems with the statutory definition. Finally, the Board misapprehends the irreparable harm and balance of equities here. This court should, therefore, grant Plaintiffs' motion.

**ARGUMENT IN REPLY**

**I.     Abstention is not appropriate here.**

The Board first argues that this court should abstain from hearing this case rather than grant a preliminary injunction. Opp. 6-9. In the face of this court's "virtually unflagging obligation" to exercise its jurisdiction, *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), the Board asserts both *Younger* and *Pullman* abstention. Neither applies here.

**A.     *Younger* abstention does not apply.**

The Board claims *Younger* abstention should apply here. Opp. 6-7. *Younger* abstention is rooted in the idea that federal courts should not "enjoin pending state [enforcement] proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). It is "an extraordinary and narrow exception" to this court's obligation to exercise jurisdiction. *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011). Therefore, *Younger* abstention is appropriate only when the requested relief "seek[s] to enjoin—or ha[s] the practical effect of enjoining—*ongoing* state proceedings." *ReadyLink Healthcare*, 754 F.3d at 758 (emphasis added). Because this case does not affect an ongoing state proceeding—there is no such proceeding—and seeks only prospective relief against future enforcement, the Board's *Younger* argument fails.

There is no ongoing state proceeding to abstain in favor of. Before filing suit, Plaintiffs withdrew their appeal and paid their fine. Crownholm Decl. (ECF 12-1) ¶ 78. This action made the Board's citation final, though it does "not constitute an admission of the violation charged." Cal. Code Regs. tit. 16, § 472.3(e)-(f). There is, therefore, no ongoing state proceeding to enjoin.

1    Plaintiffs do not seek to enjoin *any* proceeding; they challenge certain statutes as violating their

2    First and Fourteenth Amendment rights and seek *prospective* relief against enforcement of those

3    statutes in the future. Compl. (ECF 1) Prayer for Relief; *see also Full Circle of Living & Dying v.*

4    *Sanchez*, No. 2:20-CV-01306-KJM-KJN, 2020 WL 7714200, at *2 (E.D. Cal. Dec. 28, 2020)

5    (granting preliminary injunction to plaintiff that "withdrew its administrative appeal" and filed

6    federal § 1983 suit).

7         Nevertheless, the Board asserts its "better view" that *ongoing* does not actually mean

8    *ongoing*. Rather, it claims that *Younger* applies if "there were state administrative enforcement

9    proceedings for which judicial review would have been available, even when the subject of the

10   enforcement action did not pursue the state enforcement proceedings to conclusion." Opp. 7. That

11   argument is contrary to controlling Supreme Court and Ninth Circuit precedent. Moreover, none of

12   the out-of-circuit cases the Board cites for this "better view" deal with the issue here. Those cases

13   instead involved state proceedings that were actually ongoing or a federal litigant seeking to reverse

14   a state proceeding in federal court, rather than prospective relief.

15        First, the Board's argument is contrary to the Supreme Court's decision in *Wooley v.*

16   *Maynard*, 430 U.S. 705 (1977). In that case, New Hampshire required that license plates embossed

17   with the state motto ("Live Free or Die") be displayed. *Id.* at 707. Mr. Maynard was prosecuted

18   three times for refusing to display the motto. *Id.* at 708. He never appealed any of those convictions

19   and, instead, filed a § 1983 action challenging the requirement. *Id.* at 709. Based on *Huffman v.*

20   *Pursue, Ltd*., 420 U.S. 592 (1975), the state argued that *Younger* prohibited the federal courts from

21   hearing the § 1983 suit because "Maynard failed to seek review of his criminal convictions." *Id.* at

22   709-10. But the Court rejected the argument—finding *Huffman* "inapposite," *id.* at 710—because

23   Maynard's cases were no longer pending and he sought only prospective relief. Unlike in *Huffman*,

24        [this] suit is in no way "designed to annul the results of a state trial" since the relief
         sought is wholly prospective, to preclude further prosecution under a statute alleged

25       to violate appellees' constitutional rights. Maynard has already sustained
         convictions and has served a sentence of imprisonment for his prior offenses. He

26       does not seek to have his record expunged, or to annul any collateral effects those
         convictions may have, *e.g.*, upon his driving privileges. The Maynards seek only to

27       be free from prosecutions for future violations of the same statutes. *Younger* does
         not bar federal jurisdiction.

28

2

1 | *Id.* at 711.

2 |       Plaintiffs' case is like *Maynard*. Plaintiffs seek only prospective relief. Compl. Prayer for

3 | Relief. They have already sustained and paid their penalty. Crownholm Decl. ¶ 78. They don't seek

4 | to have their records expunged, fine refunded, or to undo any other collateral effects. Compl. Prayer

5 | for Relief. Like Maynard, they seek "only to be free from prosecutions for future violations of the

6 | same statutes." Therefore, as in *Maynard*, "*Younger* does not bar federal jurisdiction."

7 |       Second, the Board's argument is contrary to Ninth Circuit precedent. The Board only cites

8 | *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546

9 | F.3d 1087 (9th Cir. 2008), *abrogated as recognized in ReadyLink Healthcare*, 754 F.3d at 759. But

10 | in *San Jose* the agency had not yet finished its proceeding against the Plaintiff—it had not yet

11 | imposed punishment—and therefore the administrative proceeding was, in every sense of the word,

12 | "ongoing." *Id.* at 1093-94. Accordingly, the Ninth Circuit expressly refused to determine whether

13 | *still available* state-court review could render an administrative proceeding "ongoing." *Id*. at 1094.

14 | Moreover, the federal plaintiff in *San Jose* sought an order that the state agency "rescind" its

15 | decision, *id.* at 1091, the equivalent of an appeal to federal court from a state proceeding. *San Jose*

16 | therefore has no applicability here. To the contrary, the Ninth Circuit recognizes that, following

17 | *Maynard*, "[w]here a federal plaintiff seeks relief not from past state actions but merely from

18 | prospective enforcement of state law, federal court adjudication would not interfere with the state's

19 | basic executive functions in a way *Younger* disapproves." *Potrero Hills*, 657 F.3d at 885.

20 |       Against this controlling precedent, the Board's out-of-circuit precedents—all of which

21 | predate *Potrero Hills*—are inapplicable because they all involve federal suits filed while a state

22 | proceeding was pending or that sought to undo a state proceeding, rather than prospective relief.

23 |       In *Maymó-Meléndez v. Alvarez-Ramírez*, the federal plaintiff filed suit while his state

24 | enforcement proceeding was pending and also sought to enjoin the very punishment levied against

25 | him in the state proceeding—a five-year suspension of his racing license—before that punishment

26 | took effect. 364 F.3d 27, 30, 34 (1st Cir. 2004). The First Circuit refused to "overturn" or allow a

27 | retrospective "collateral attack" on a concluded state proceeding, while noting that *Rooker-*

28 | *Feldman* or preclusion, not *Younger*, was the way to foreclose the collateral attack after the state

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1   proceedings have ended. *Id*. at 32-33. Indeed, consistent with *Maynard*, the court noted that if the

2   plaintiff had "sought to enjoin future enforcement of the regulations" after serving out his

3   punishment, "that would be a different question." *Id*. at 34 ("a general attack on a state law or

4   regulation is not precluded by a prior judgment applying such a law or rule to the federal plaintiff.").

5          In *Majors v. Engelbrecht*, the federal plaintiff filed suit while a hearing before a state board

6   was scheduled, and the parallel state proceedings continued—including in an administrative

7   appeal—while the federal suit was pending. 149 F.3d 709, 711, 713 (7th Cir. 1998).

8          In *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789-90 (3d Cir. 1994), the court applied

9   *Younger* based on *Huffman*. But in that case, the federal plaintiffs did not seek prospective relief;

10   they sought to "invalidate" the state proceedings by, among other things, seeking the return of fines

11   levied by the agency and vacation of outstanding agency judgments. *Id*. at 789, 791.

12          Finally, in *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1317 (8th Cir. 1990), the court

13   again applied *Younger* based on *Huffman*. But *Alleghany Corp*. does not discuss *Maynard* or the

14   nature of relief sought in the federal suit, meaning it does not speak to this case.

15          In short, both the Supreme Court and the Ninth Circuit have already decided that *Younger*

16   does not apply in cases like this one, where state proceedings have concluded and where prospective

17   relief is sought. None of the older, other-circuit, cases cited by the Board speaks to this issue.

18   Accordingly, as in *Maynard* and *Potrero Hills*, *Younger* abstention does not apply here.[1]

19          **B.    *Pullman* abstention does not apply.**

20          The Board also erroneously seeks *Pullman* abstention. Opp. 8-9. *Pullman* is a discretionary

21   doctrine that allows federal courts to "abstain from adjudicating disputes that hinge on significant

22   and unsettled questions of state law." *Courtney v. Goltz*, 736 F.3d 1152, 1162-63 (9th Cir. 2013).

23   Like all forms of abstention, it is disfavored; it is "the exception and not the rule." *City of Houston*

24

25   [1] Because the Board's *Younger* argument is not about interference in ongoing proceedings and is instead a
    complaint that Plaintiffs "could have" pursued an appeal and raised constitutional issues, the Board may
26   have meant to make something other than a *Younger* argument. *See Maymó-Meléndez*, 364 F.3d at 32-33
    (noting doctrines that might apply other than *Younger*). But the Board has not made any such argument, and,
27   even if it had, such arguments would not be meritorious. Again, Plaintiffs assert "a general attack on a state
    law or regulation," which is "not precluded by a prior judgment applying such a law or rule to the federal
28   plaintiff." *Id*. at 34. Should the Board invoke such arguments at a later time, Plaintiffs will respond.

4
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1    *v. Hill*, 482 U.S. 451, 467 (1987). It is a particularly "blunt instrument," *Expressions Hair Design*

2    *v. Schneiderman*, 137 S. Ct. 1144, 1156 (2017) (Breyer, J., concurring), that mandates "a full round

3    of litigation in the state court system before any resumption of proceedings in federal court,"

4    *Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997), which causes significant delay.[2]

5    Courts are "particularly reluctant" to apply *Pullman* abstention to "facial challenges based on the

6    First Amendment," as the delay causes an "impermissible chilling of the very constitutional right"

7    the plaintiff seeks to protect. *City of Houston*, 482 U.S. at 467-68 (citation omitted). *Pullman*

8    abstention is not just disfavored; it is particularly inappropriate here for two reasons.

9       First, there are no "significant and unsettled questions of state law" that prevent this Court

10   from addressing Plaintiffs' First Amendment claim. This court already knows the statutory scheme

11   applies to Plaintiffs because their site plan drawings "depict the location of property lines, fixed

12   works, and the geographical relationship thereto." Crownholm Decl. Ex. D. The Board has said as

13   much already, *id.*, and maintains that position here: "land surveying shows the positions of fixed

14   works (such as buildings or fences) or natural objects … in relationship to property lines." Opp.

15   18-19. Waiting years for a state court to say the same thing will not serve the parties or this court.

16       Second, while the scope of California's outdated definition of "land surveying," Cal. Bus.

17   & Prof. Code § 8726(a), is relevant to Plaintiffs' facial overbreadth and vagueness challenges,

18   *Pullman* abstention is still inappropriate. Abstention in facial First Amendment cases is

19   inappropriate. *City of Houston*, 482 U.S. at 467-68. And it is particularly inappropriate because the

20   definition at issue here is not "fairly subject to an interpretation which will render unnecessary or

21   substantially modify the federal constitutional question." *Id.* at 468. Any saving construction must

22   be "apparent" on the statute's face; otherwise "abstention is unwarranted," *Potrero Hills*, 657 F.3d

23   at 889, even absent a state court interpretation, *City of Houston*, 482 U.S. at 468.

24       Here, the Board offers no saving construction. Opp. 8-9. The Board proposes a narrowing

25   construction—it says a license is required only to say the *distance between* a fixed work and a

26

27    [2] *Courtney v. Goltz*, on which the Board relies, demonstrates this problem. It took seven years from the Ninth

28   Circuit's abstention for the Courtneys to get back to the Ninth Circuit, at which point the court still had to
      address the constitutional issue. *See Courtney v. Danner*, 801 F. App'x 558, 559 (9th Cir. 2020).

property line, not *any* depiction of the location of a fixed work and property line. *Compare* Pl. Br. 17-18, 20-22, *with* Opp. 18-19. But that is a textbook example of a content-based regulation of speech (as discussed below), so while it might *narrow* the statute's reach, it does not *save* it. And in any event, there is no textual basis for the Board's narrowed interpretation, which comes not from the statute itself, but from declarations supporting its brief which do not reference the statute. Opp. 18-19 (citing Moore Decl. ¶ 15, Sweeney Decl. ¶ 4, and Vernon Decl. ¶ 6, and making no mention of the statutory text). The Board's own say-so cannot trump § 8726(a)'s plain meaning. Abstention in favor of this conjured conflict is inappropriate.

*       *       *

For the foregoing reasons neither *Younger* nor *Pullman* abstention are applicable here. This court should honor its obligation to hear Plaintiffs' federal civil rights action.

## II.     The Board's commercial speech arguments are irrelevant.

The Board argues that the challenged regulations survive constitutional standards governing commercial speech. Opp. 15-17. But this argument is irrelevant because Plaintiffs have not made a commercial speech claim. The challenged laws don't regulate commercial speech; as applied to Plaintiffs, they regulate fully protected speech. Regardless, the Board's commercial speech argument fails under its own terms because it erroneously assumes Plaintiffs' speech is misleading.

Plaintiffs do not make a commercial speech claim because they are not being regulated because of their commercial speech. Commercial speech is speech that "propos[es] a commercial transaction." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 562 (1980); *accord Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983). Speech by professionals is not commercial speech; speech by professionals is scrutinized as commercial speech only when the professional is engaging in commercial speech. *Nat'l Inst. of Fam. & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2372 (2018) ("*NIFLA*") (lesser scrutiny for commercial speech does not "turn[] on the fact that professionals were speaking"). Here, Plaintiffs are not regulated because of their proposal of a commercial transaction; they are regulated because they draw site plans that "depict the location of property lines, fixed works, and the geographical relationship thereto." Crownholm

1  Decl. Ex. D. The drawing itself is speech and the drawing itself is regulated.[3] And while Plaintiffs

2  do sell their drawings, a law restricting that sale is not a "a mere commercial regulation," it is a

3  restriction on the dissemination of speech and therefore subject to full First Amendment

4  protections. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 556-57 (2011); *accord Pac. Coast*

5  *Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1072 (9th Cir. 2020) ("*PCHS*").

6          Moreover, the Board's claim that Plaintiffs engage in "misleading" speech, Opp. 15, is also

7  wrong. The Board assumes the speech is misleading because it assumes Plaintiffs' drawings cannot

8  be suitable for submission as site plans. Opp. 15-16. But local building departments tell non-

9  surveyors to prepare identical site plans in the identical way that Plaintiffs do, and these same

10 agencies routinely accept such drawings, including Plaintiffs'. Crownholm Decl. ¶¶ 25-39 & Exs.

11 A-B. And the Board admits Plaintiffs' drawings are suitable for other informational purposes, but

12 only if they don't include measurements. Opp. 21-22. Thus, Plaintiffs' "allegations do not implicate

13 false or misleading speech." *Full Circle*, 2020 WL 7714200, at *5. Rather, Plaintiffs allege they

14 "do[] not have a license, and do[] not need one, because [their] truthful speech does not implicate"

15 the justification for the regulations at issue. *Id*. Plaintiffs allege that their drawings (their speech)

16 are suitable for the purposes they are used for, have long been used for those purposes, and, most

17 critically, are not authoritative and do not implicate justifications for requiring a surveyor license:

18 determining and representing authoritative location. Compl. ¶¶ 28-58, 72-75, 92-96, 105, 118-152;

19 Crownholm Decl. ¶¶ 17-64, 80. Plaintiffs' speech is not misleading—it is just prohibited.

20 **III.    The Board fails to address Plaintiffs' actual free speech claim.**

21         The Board's brief makes clear it does not understand Plaintiffs' case. The Board asserts this

22 case is about whether states may "require that land surveyors be licensed" at all. Opp. 14. It

23 concludes that there is no "First Amendment right" to "engage in the practice of land surveying

24 without a license"—nor "civil engineering, medicine, or law." *Id*. That is not what this case is about.

25 Plaintiffs assert only that the First Amendment precludes the Board from requiring a surveying

26 _____

27 [3] Plaintiffs do not challenge, and the Board has never previously claimed that Plaintiffs violate, Cal. Bus. & Prof. Code § 8726(a)(8), which is a restriction on commercial speech: using a specific title or claiming to offer land surveying. As even the Board admits, Opp. 16, Plaintiffs repeatedly disclaim being surveyors or

28 doing land surveying, Crownholm Decl. ¶¶ 43-46.

license for their non-authoritative site plan drawings that "depict the location of property lines, fixed works, and the geographical relationship thereto." They seek the same First Amendment scrutiny the federal courts must apply when an occupational-licensing law is applied to restrict a plaintiff's "speech as speech." *NIFLA*, 138 S. Ct. at 2374; *see, e.g.*, *Hines v. Quillivan*, 982 F.3d 266 (5th Cir. 2020) (veterinary medicine); *Upsolve Inc. v. James*, No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y. May 24, 2022) (law); *Järlström v. Aldridge*, 366 F. Supp. 3d 1205 (D. Or. 2018) (engineering); *see also Full Circle*, 2020 WL 7714200 (funeral directing). The crux of this case, then, is whether the Board is regulating Plaintiffs' speech. Pl. Br. 11. It is. *Id.* 10-12. But the Board mangles the test used to determine whether it is regulating Plaintiffs' speech or conduct.

The Board fails to apply the governing precedent. It asserts that, overall, California's surveying law "regulates conduct with at most an incidental impact on speech." Opp. 12. In other words, the Board claims that the licensure requirement is valid because many of its applications restrict conduct, not speech. Opp. 14. But that is the wrong inquiry. As Plaintiffs explained, courts do not look to the entire universe of activity a law might cover to determine whether it is regulating speech or conduct. In as-applied challenges like this one, they instead look at the precise activity the plaintiff engages in that triggers application of the law in that case. Pl. Br. 11-12.

This standard is set forth in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), but the Board does not address it at all. There, federal law prohibited providing designated terrorist groups with "material support or resources." *Id*. at 12. The plaintiffs wished to speak to some such groups to teach them "how to use humanitarian and international law to peacefully resolve disputes" and "how to petition … bodies such as the United Nations for relief." *Id*. at 21-22. As the Board does here, the government argued that the "material support or resources" restriction "*generally* functions as a regulation of conduct," *id*. at 27, and therefore was not a regulation of speech as applied. All nine justices rejected that argument. Even if the statute was "directed at conduct" in other instances, it applied to *these* plaintiffs because of their speech. *Id*. at 28. The First Amendment's "more demanding standard" of review was thus required. *Id*.

Rather than contend with the governing standard, the Board cites Ninth Circuit cases holding that certain medical treatments constitute conduct, not speech. Opp. 11 (citing *Tingley v.*

1   *Ferguson*, 47 F.4th 1055 (9th Cir. 2022) and *Pickup v. Brown*, 740 F.3d 1208, 1227 (9th Cir. 2014)).

2   But cases holding that *other* activities are conduct do not determine whether *Plaintiffs'* activities

3   are speech or conduct. If anything, *Tingley* confirms the need to analyze whether, as applied to any

4   plaintiff, a "law regulate[s] conduct" or is instead "a content-based regulation on speech" and that,

5   contrary to the Board's minimizing, *PCHS* sets forth the governing standard in the Ninth Circuit.

6   47 F.4th at 1076 (citing *PCHS*, 961 F.3d at 1073-74); *compare* Pl. Br. 10-12, *with* Opp. 12.

7           To the extent the Board has a response to this argument, it is that "plaintiffs are in the

8   business of producing and selling site plans, not speaking." Opp. 11. But Plaintiffs' non-

9   authoritative site plan drawings *are* speech—visual depictions communicating information about

10  location. And if providing "information do[es] not constitute speech, it is hard to imagine what

11  does." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001).[4] This is true even when that speech is sold

12  rather than given away. *Sorrell*, 564 U.S. at 557.

13          The Board also confirms that this case involves a content-based regulation of speech. *See*

14  *also* Pl. Br. 12-13. The Board asserts that it is the *content* of Plaintiffs' drawings—showing the

15  "positions of fixed works (such as buildings or fences) or natural objects (topographic features,

16  contours, elevations, etc.) in relationship to property lines," Opp. 18-19, or at least "indicat[ing],

17  for example, measurements between structures and property lines" on a drawing, *id.* 22—that

18  triggers the licensing requirement and thus prohibits Plaintiffs' unlicensed speech. This is just as in

19  *PCHS*, where it was the content of what plaintiffs taught—vocational education—that subjected

20  them to regulation and restricted their speech. 961 F.3d at 1071-73. And as in *Sorrell*, where it was

21  the content of the information that plaintiffs used, created, and sold, that subjected them to

22  regulation. 564 U.S. at 570.

23          The Ninth Circuit's decision in *American Soc'y of Journalists & Authors, Inc. v. Bonta*, 15

24  F.4th 954, 957 (9th Cir. 2021), is similarly inapposite here. As the Board itself points out, that case

---

26  [4] The Board's analogy to Ikea's furniture catalogue underscores its confusion. *See* Opp. 12 n.6. Plaintiffs do

27  not contend that furniture itself is speech, just as they do not contend that fixed works like buildings are speech. A drawing of what a piece of furniture looks like, however, is speech. As are instructions for how

28  to assemble that furniture. And—to complete the analogy to Plaintiffs' maps—a drawing depicting the layout of a house to show a moving company where to place that piece of furniture is speech as well.

1   concerned a restriction on particular labor arrangements—a regulation not of "speech, but

2   economic activity." Opp. 12. Here, though, the Board's regulation is triggered by the content of

3   Plaintiffs' drawings: Plaintiffs cannot do drawings that "depict the location of property lines, fixed

4   works, and the geographical relationship thereto," which, at a minimum, means Plaintiffs cannot

5   show distances in their drawings. Opp. 18-19, 21-22. *Cf. Monarch Content Mgmt. LLC v. Ariz.*

6   *Dep't of Gaming*, 971 F.3d 1021, 1029-1030 (9th Cir. 2020) (regulation of horseracing simulcasts

7   did not implicate First Amendment because "the statute is unconcerned with the content of

8   Monarch's simulcasts" and regulated only to whom Monarch must distribute simulcasts).

9        The Board continues its error by asserting that *Upsolve Inc. v. James* "is not helpful to

10   plaintiffs." Opp. 13 n.8. But *Upsolve*—along with the Ninth Circuit's decision in *Conant v. Walters*,

11   309 F.3d 629 (9th Cir. 2002)—illustrates the distinction between the Board's regulation of

12   Plaintiffs' speech and regulations of conduct that "incidentally impact speech." *Cf.* Opp. 12. The

13   Board asserts that Plaintiffs' drawings use publicly available information to depict "measurements

14   between buildings … and property lines." Opp. 19. That is correct. But Plaintiffs' drawings do

15   not—and do not purport to—authoritatively determine location information with any legally

16   binding effect, like for a deed. Crownholm Decl. ¶¶ 57-58.[5] The Board may regulate maps or other

17   survey products that are authoritative—that do establish location information with legally binding

18   effect—because that regulation is triggered not by the maps' communicative content, but by their

19   independent legal effect. But Plaintiffs' maps don't establish location or have legally binding effect.

20        The federal courts—including the *Conant* and *Upsolve* courts—draw that distinction. In

21   *Conant*, the plaintiffs—including a group of physicians—wanted to communicate to their patients

22   the benefits of using medical marijuana. The Ninth Circuit affirmed the district court's injunction

23   allowing the physicians to do so. 309 F.3d at 634-39. In so doing, it distinguished *recommending*

24   medical marijuana, which sanctions only "the dispensing of information," from *prescribing*

25   marijuana, which would have the independent legal effect of allowing "the dispensing of controlled

26   _____

27   [5] The Board interprets a paper by Bruce Joffe to assert that Joffe believes "maps like those sold by plaintiffs in California must be done by licensed land surveyors." Opp. 19. As Joffe himself explains in an accompanying declaration, his paper reaches exactly the opposite conclusion: Establishing boundaries with legal effect implicates the rationale for surveyor licensing, but Plaintiffs' non-authoritative maps do not.

28

10

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1  substances." *Id*. at 635. *Upsolve* is similar. There, the plaintiffs wanted to provide out-of-court legal

2  advice to low-income New Yorkers about how to respond to debt collection lawsuits. But

3  "rendering [] legal advice and opinions," under New York law, required an attorney license. 2022

4  WL 1639554, at *3. The court preliminarily enjoined the requirement as applied to the plaintiffs,

5  because their mere "out-of-court verbal advice" is protected speech. *Id*. at *10.[6] The court

6  distinguished that from, for example, drafting and filing legal documents and representing clients

7  in a live courtroom. *Id*. The latter activities involve speech, to be sure, but they may be regulated

8  because of the independent legal effect they carry.

9       The Board's entire argument against Plaintiffs' as-applied challenge rests on the notion that

10 Plaintiffs' drawings are conduct, not speech. It argues solely that its restriction of Plaintiffs'

11 drawings satisfies rational basis review, *see* Opp. 12, 14. It makes no mention of—much less any

12 attempt to satisfy—the heightened affirmative burden required to justify a restriction on speech.

13 *See* Pl. Br. 13-15. It cannot, in short, justify the restriction of Plaintiffs' drawings.

14      Elsewhere, the Board offers paternalistic reasons for its regulation. It asserts that it is "bad

15 practice" for municipalities to accept Plaintiffs' drawings in the permit issuing process, Opp. 20,

16 but they do, Pl. Br. 2-3, and they are allowed to. *See* Cal. Building Code (2016) ch. 1, div. 2,

17 § 107.2.5 (authorizing building officials to waive or modify site plan requirements). And for

18 drawings that are not submitted to local governments for permits—like a map showing a landscaper

19 that they should plant some trees 20 feet from a property line—the Board says there's "no reason"

20 that such drawings need to include *both* "structures and property lines." Opp. 22. But it is for "the

21 speaker and the audience"—here, Plaintiffs' customers—"not the government, [to] assess the value

22 of the information presented." *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 503-04 (1996)

23 (plurality) (citation omitted). The First Amendment requires courts to be "especially skeptical of

24 regulations that seek to keep people in the dark for what the government perceives to be their own

25 good." *Id*. at 503. The Board cannot meet the burden necessary to restrict Plaintiffs' speech.

26

27 ───────────────
[6] The Board emphasizes that the advice the *Upsolve* plaintiffs sought to provide was "*free.*" Opp. 13 n.8.
28 But paid advice is also entitled to full First Amendment protection. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 420 (1993).

**IV.    The Board's atextual interpretation of "land surveying" reinforces Plaintiffs' likelihood of succeeding on their overbreadth and vagueness claims.**

The Board's response to Plaintiffs' motion confirms both the overbreadth and vagueness problems with California's outdated definition of "land surveying."

**A.    The Board confirms the overbreadth problem.**

As Plaintiffs previously outlined, California's definition of "land surveying" requires a license to disseminate a huge amount of geographical information, no matter whether it has any legally binding effect. The text engulfs virtually all informal mapmaking, and certainly goes well beyond the authoritative determinations that is the core of surveyor licensing. Pl. Br. 15-20. The Board confirms the overbreadth of the restrictions on non-authoritative drawings and agrees that unknown thousands of homeowners and contractors are violating, and local building departments across the state are facilitating the violation of, the law. Opp. 20, 22 n.12.

As detailed above, that dissemination of non-authoritative drawings is speech. And unless the person disseminating has the appropriate license from the Board, § 8726(a) prohibits all that speech. The overbreadth doctrine exists precisely to ensure that such "legitimate speech" is not "chilled and foreclosed." *United States v. Hansen*, 25 F.4th 1103, 1111 (9th Cir. 2022). Because "a substantial number of [the statute's] applications" unconstitutionally infringe on protected speech, California's definition of land surveying fails the overbreadth test. *Id*. at 1106.

The Board's response to this is one conclusory sentence: In the Board's view, there is no overbreadth problem because Plaintiffs' non-authoritative mapmaking is "conduct," not "speech." Opp. 18. That is incorrect as set forth above.[7]

Next, the Board proposes a new understanding of the definition of land surveying—one without any connection to the statutory text. The Board defines land surveying as "show[ing] the positions of fixed works (such as buildings or fences) … in relationship to property lines." *Id*. 18-

---

[7] The Board appears to imply that the overbreadth doctrine applies only to restrictions on "spoken words," "picketing," or "handbilling." Opp. 18 (citing *Roulette v. City of Seattle*, 97 F.3d 300, 303 (9th Cir. 1996)). That is wrong. The overbreadth doctrine applies no matter the medium of the chilled speech; indeed, this century's seminal overbreadth case invalidated a restriction on "visual … depiction[s]." *United States v. Stevens*, 559 U.S. 460, 468 (2010); *see also, e.g., Christ v. Town of Ocean City*, 312 F. Supp. 3d 465, 479 (D. Md. 2018) ("activities[] including singing, puppeteering, miming, and drawing[] are protected speech").

19. But this definition is based only on declarations in support of its own opposition, which do not discuss the actual statutory definition. *Id*. (citing Moore Decl. ¶ 15; Sweeney Decl. ¶ 4; Vernon Decl. ¶ 6). Contrary to the plain text, the Board now asserts that a map depicting the location of buildings and fences alone is fine, as is a map showing property lines. But combining the two on the same piece of paper to show the distance between them is prohibited. *Id.* 18-19, 21-22.

Even if the Board's assertion were a reasonable construction of the statute's text, it would still be overbroad. The Board's new definition still bans a substantial amount of informal maps (based on their content), no matter whether those depictions purport to provide location information with any legally binding effect. Under the Board's new definition, a simple drawing depicting where Ryan's house is compared to the other lots on the street—no matter how informal; no matter the purpose of the drawing—would be banned. Opp. 21-22 (Plaintiffs' drawings cannot indicate "measurements between structures and property lines" regardless of their use). The Board may not sweep up such "ordinary and lawful activities." *United States v. Stevens*, 559 U.S. 460, 473 (2010).

But the Board's asserted interpretation is not a reasonable understanding of the statutory text. The statute's plain text requires a license to show the location of "fixed works" *alone*. Cal. Bus. & Prof. Code § 8726(a)(1). And to show the location of "any property line" *alone*. *Id.* § 8726(a)(3). The Board's novel view that the two must be married together to constitute land surveying is unmoored from the statutory text. *See id.* § 8726(a) (land surveying is when someone "does or offers to do any *one or more* of the following" (emphasis added)). Even if the Board's narrowing construction could save it from overbreadth, "the words of the [statute] simply leave no room" for the Board's interpretation. *Bd. of Airport Comm'rs v. Jews for Jesus, Inc*., 482 U.S. 569, 575 (1987); *see Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998) ("we are not required to … adopt an interpretation precluded by the plain language").

The Board concludes by hinting that the statute's valid *purpose*—"preserving the integrity of property boundaries in the state," Opp. 19—should save it from overbreadth. While the parties agree that this is a valid purpose, *see* Pl. Br. 18 ("[t]he legitimate sweep of surveyor-licensing laws is the regulation of authoritative location determination"), a regulation's valid purpose does not excuse its encroachment on protected speech. Valid goals like rooting out "extreme animal cruelty"

and "protecting children from harmful materials" did not save overbroad regulations in *Stevens*, 559 U.S. at 482, or *Reno v. American Civil Liberties Union*, 521 U.S. 844, 875 (1997). The First Amendment requires government to "accomplish its purpose 'without imposing an unnecessarily great restriction on speech.'" *Reno*, 521 U.S. at 876. The Board may not ban virtually all informal mapmaking in its quest to ensure legally authoritative surveys are made by surveyors.

### B.    The Board confirms the vagueness problem.

As Plaintiffs outlined in their opening brief, the breadth of California's definition of "land surveying" requires a license to disseminate a huge amount of run-of-the-mill geographical information, no matter whether it has any legally binding effect, which guarantees unpredictable enforcement practices. Pl. Br. 20-23. The Board's brief confirms this—and thus the definition's vagueness. The Board claims that "licensed land surveying does not encompass a map or other document simply because it contains an indication of a building, road, or property line." Opp. 18. Rather, it claims, "land surveying" is only when someone "shows the positions of fixed works (such as buildings or fences) or natural objects (topographic features, contours, elevations, etc.) in relationship to property lines." Opp. 18-19. Only when someone shows the distance between the two, the Board asserts, is a license required. *Id*. 21-22.

But the Board's "reading … cannot be squared with the statute's text." *United States v. Davis*, 139 S. Ct. 2319, 2324 (2019). The distinction the Board draws is rooted not in the text of the statute, but on the say-so of its own declarations. Opp. 18-19. Because the Board's interpretation is not based on the text, people "must necessarily guess at [the statute's] meaning" to know whether their informal map is prohibited. *United States v. Johnson*, 626 F.3d 1085, 1090 (9th Cir. 2010) (citation omitted). And because the Board's gloss on the definition is atextual, the Board retains the authority to enforce the broader textual definition of surveying. That raises the concern of "arbitrary and discriminatory enforcement" against any informal mapmaker—which the vagueness doctrine specifically guards against. *Foti*, 146 F.3d at 638 (citation omitted). Indeed, the Board agrees that countless people every year create the kind of informal, non-authoritative maps just like those Plaintiffs make, Opp. 22 n.12—while conceding that it has enforced its ban on those drawings against only a handful of people statewide, Opp. 20.

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

At base, the Board's opposition confirms Plaintiffs' concern that its definition of land surveying is so "imprecise" that it "creates an unnecessary risk of chilling free speech." *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 967-68 (1984).

**V.     Irreparable harm and the balance of equities favor Plaintiffs.**

Because the Board fails to address Plaintiffs' actual legal claims, the Board also fails to accurately address the irreparable harm and balance of equities elements of Plaintiffs' motion. Plaintiffs seek a preliminary injunction only to allow them to do what they have been doing: using, creating, and disseminating non-authoritative location information for site plan drawings. Pl. Br. 9. Plaintiffs have never claimed to, and do not seek to, be surveyors or do surveys. Crownholm Decl. ¶¶ 55-56. In the Board's own words, Plaintiffs just want to be able to create drawings that non-authoritatively "depict the location of property lines, fixed works, and the geographical relationship thereto." Crownholm Decl. Ex. D; *cf.* Opp. 18-19, 21-22.

As to irreparable harm, the Board concedes that Plaintiffs must have a license or hire a licensee to continue their business as they have for the last nine years. Opp. 21-22. And while the Board claims that "general informational" drawings are allowed, it says so only because, in its view, such drawings need not include "measurements between structures and property lines." *Id.* Tellingly, the Board does not say what else the drawings may not include. But at base, the Board wrongly asserts, again, that this case does not involve a restriction of Plaintiffs' speech. Opp. 21.

And as to balance of equities, the Board again misses the mark. It wrongly claims Plaintiffs do not have speech rights in their drawings. Opp. 22. Critically, the Board claims "a strong interest in the integrity of property boundaries—and therefore property interests." Opp. 22-23. Plaintiffs don't argue otherwise. Pl. Br. 18 ("The legitimate sweep of surveyor-licensing laws is the regulation of authoritative location determination."). But Plaintiffs don't do and don't seek to do authoritative drawings, *see* Pl. Br. 4, 14-15, 18-20, so they don't implicate the asserted interest at all. Accordingly, the Board's asserted "strong interest" is irrelevant.

**CONCLUSION**

For the reasons stated in Plaintiffs' motion and above, this Court should grant Plaintiffs' motion for a preliminary injunction.

1    Respectfully submitted this 14th day of November 2022.

2                                                    /s/ Paul V. Avelar
3    **THE KERNAN LAW FIRM, APC**                    Paul V. Avelar* (AZ Bar no. 023078)
     S. Michael Kernan (CA Bar no. 181747)           **INSTITUTE FOR JUSTICE**
4    9663 Santa Monica Blvd., Suite 450              398 S. Mill Ave., Suite 301
     Beverly Hills, California 90210                 Tempe, AZ 85281
5    Tel: (310) 490-9777                             Tel.: (480) 557-8300
6    Fax: (310) 861-0503                             Fax: (480) 557-8305
     Email: MKernan@kernanlaw.net                    Email: pavelar@ij.org
7                                                    *Counsel for Service*

8                                                    Michael Greenberg* (DC Bar no. 1723725)
                                                     **INSTITUTE FOR JUSTICE**
9                                                    901 N. Glebe Rd., Suite 900
                                                     Arlington, VA 22203
10                                                   Tel.: (703) 682-9320
11                                                   Fax: (703) 682-9321
                                                     Email: mgreenberg@ij.org
12
                                                     *Admitted *pro hac vice*
13
14                              *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of November 2022, I caused the forgoing document to be filed with the Court's CM/ECF system and served on the counsel of record for Defendants by the Court's CM/ECF system.

/s/ Paul V. Avelar
Paul V. Avelar
*Attorney for Plaintiffs*