**INSTITUTE FOR JUSTICE**
Paul V. Avelar* (AZ Bar no. 023078)
398 S. Mill Ave., Suite 301
Tempe, AZ  85281
Tel.: (480) 557-8300
Fax: (480) 557-8305
Email: pavelar@ij.org
*Counsel for Service*

Michael Greenberg* (DC Bar no. 1723725)
901 N. Glebe Rd., Suite 900
Arlington, VA 22203
Tel.: (703) 682-9320
Fax: (703) 682-9321
Email: mgreenberg@ij.org

*Admitted *pro hac vice*

**THE KERNAN LAW FIRM, APC**
S. Michael Kernan (CA Bar no. 181747)
9663 Santa Monica Blvd., Suite 450
Beverly Hills, California 90210
Tel: (310) 490-9777
Fax: (310) 861-0503
Email: MKernan@kernanlaw.net

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CROWNHOLM; and CROWN CAPITAL ADVENTURES, INC., d/b/a MYSITEPLAN.COM,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD B. MOORE, in his official capacity as Executive Officer of the California Board for Professional Engineers, Land Surveyors, and Geologists, et al.,<br><br>Defendants. | No.  2:22-CV-01720-DAD-CKD<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date: January 17, 2023<br>Time: 1:30pm<br>Courtroom: 4<br>Judge: Dale A. Drozd |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ......................................................................................... iii

INTRODUCTION ....................................................................................................... 1

LEGAL STANDARD ................................................................................................. 1

BACKGROUND ......................................................................................................... 2

ARGUMENT .............................................................................................................. 3

   I.   Abstention is not appropriate here. ..................................................................... 3

        A. *Younger* abstention does not apply. ........................................................ 3

        B. *Pullman* abstention does not apply. ....................................................... 7

   II.   Plaintiffs plausibly allege that California's Land Surveyor licensing law restricts Plaintiffs' First Amendment-protected speech as applied in this case .............................. 8

        A. The Board is regulating these Plaintiffs' speech. ..................................... 9

        B. Plaintiffs are regulated because of the content of their speech. ........... 12

        C. The Board cannot meet its narrow-tailoring burden on the pleadings. ................. 14

   III.   Plaintiffs have stated a claim that California's definition of land surveying is unconstitutionally overbroad, unconstitutionally vague, or both. ..................................... 16

        A. Plaintiffs have stated an overbreadth claim. ......................................... 17

        B. Plaintiffs have stated a vagueness claim. .............................................. 19

   IV.   Plaintiffs have sufficiently pleaded substantive due process and equal protection claims. .............................................................................. 21

CONCLUSION ......................................................................................................... 25

CERTIFICATE OF SERVICE ................................................................................. 27

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alleghany Corp. v. Pomeroy*,
   898 F.2d 1314 (8th Cir. 1990) ................................................................. 6

*Arizona Attorneys for Criminal Justice v. Brnovich*,
   No. 20-16293, 2021 WL 3743888 (9th Cir. Aug. 24, 2021) .................... 4

*Arizona Dream Act Coalition v. Brewer*,
   855 F.3d 957 (9th Cir. 2017) ................................................................. 24

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) ................................................................................... 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 1

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) ................................................................................. 9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................. 1

*Brown v. Entertainment Merchants Association*,
   564 U.S. 786 (2011) ................................................................................. 9

*Citizens United v. FEC*,
   558 U.S. 310 (2010) ............................................................................... 13

*City of Austin v. Reagan National Advertising of Austin, LLC*,
   142 S. Ct. 1464 (2022) ..................................................................... 13, 14

*City of Cleburne v. Cleburne Living Center*,
   473 U.S. 432 (1985) ............................................................................... 24

*City of Houston v. Hill*,
   482 U.S. 451 (1987) ....................................................................... 7, 18, 19

*Cohen v. California*,
   403 U.S. 15 (1971) ................................................................................. 10

*Cohen v. San Bernardino Valley College*,
   92 F.3d 968 (9th Cir. 1996) ................................................................... 21

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Colorado River Conservation District v. United States,*
   424 U.S. 800 (1976) ................................................................................................... 3

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
   657 F.3d 936 (9th Cir. 2011) ................................................................................... 19

*Conant v. Walters,*
   309 F.3d 629 (9th Cir. 2002) ............................................................................. 11, 12

*Cornwell v. Hamilton,*
   80 F. Supp. 2d 1101 (S.D. Cal. 1999) ............................................................... 22, 23

*Courthouse News Service v. Planet,*
   750 F.3d 776 (9th Cir. 2014) ..................................................................................... 1

*Courtney v. Goltz,*
   736 F.3d 1152 (9th Cir. 2013) ................................................................................... 7

*Craigmiles v. Giles,*
   312 F.3d 220 (6th Cir. 2002) ............................................................................. 22, 23

*Dias v. City & County of Denver,*
   567 F.3d 1169 (10th Cir. 2009) ............................................................................... 22

*Edenfield v. Fane,*
   507 U.S. 761 (1993) ........................................................................................... 14, 15

*Expressions Hair Design v. Schneiderman,*
   137 S. Ct. 1144 (2017) ............................................................................................. 7

*Foti v. City of Menlo Park,*
   146 F.3d 629 (9th Cir. 1998) ............................................................................. 19, 20

*Full Circle of Living & Dying v. Sanchez,*
   No. 2:20-CV-01306-KJM-KJN, 2020 WL 7714200 (E.D. Cal. Dec. 28, 2020) ................. 4, 9

*Grayned v. City of Rockford,*
   408 U.S. 104 (1972) ................................................................................................. 20

*In re National Security Letter,*
   33 F.4th 1058 (9th Cir. 2022) ........................................................................... 13, 15

*Italian Colors Restaurant v. Becerra,*
   878 F.3d 1165 (9th Cir. 2018) ........................................................................... 15, 16

*Holder v. Humanitarian Law Project,*
   561 U.S. 1 (2010) ............................................................................................... 10, 11

iv

*Hill v. Kirkwood*,
    161 Cal. App. 2d 346 (1958)................................................................................................ 8

*Hines v. Quillivan*,
    982 F.3d 266 (5th Cir. 2020)............................................................................................ 8

*Järlström v. Aldridge*,
    366 F. Supp. 3d 1205 (D. Or. 2018) ................................................................................ 9

*Majors v. Engelbrecht*,
    149 F.3d 709 (7th Cir. 1998)............................................................................................ 6

*Mathews v. Lucas*,
    427 U.S. 495 (1976) ........................................................................................................ 21

*Maymó-Meléndez v. Álvarez-Ramírez*,
    364 F.3d 27 (1st Cir. 2004) .............................................................................................. 6

*McCullen v. Coakley*,
    573 U.S. 464 (2014) .................................................................................................. 15, 16

*McCutcheon v. FEC*,
    572 U.S. 185 (2014) ........................................................................................................ 15

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022).............................................................................................. 1

*Merrifield v. Lockyer*,
    547 F.3d 978 (9th Cir. 2008)................................................................................... *passim*

*National Association for Advancement of Psychoanalysis v.*
    *California Board of Psychology*,
    228 F.3d 1043 (9th Cir. 2000).......................................................................................... 10

*National Institute of Family & Life Advocates v. Becerra*,
    138 S. Ct. 2361 (2018) ............................................................................................. *passim*

*North Star International v. Arizona Corp. Commission*,
    720 F.2d 578 (9th Cir. 1983)............................................................................................ 1

*O'Neill v. City of Philadelphia*,
    32 F.3d 785 (3d Cir. 1994)............................................................................................... 6

*Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*,
    961 F.3d 1062 (9th Cir. 2020)........................................................................ 10, 11, 12, 13

*Parks School of Business, Inc. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995)............................................................................................ 1

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Pinnacle Armor, Inc. v. United States*,
    648 F.3d 708 (9th Cir. 2011) ................................................................... 19

*Police Department of Chicago v. Mosley*,
    408 U.S. 92 (1972) .................................................................................. 14

*Potrero Hills Landfill, Inc. v. County of Solano*,
    657 F.3d 876 (9th Cir. 2011) ......................................................... 4, 5, 6, 7

*ReadyLink Healthcare, Inc. v. State Compensation Insurance Fund*,
    754 F.3d 754 (9th Cir. 2014) ................................................................. 4, 5

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ..................................................................... 12, 13, 14

*San Jose Silicon Valley Chamber of Commerce Political Action Committee v.
    City of San Jose*,
    546 F.3d 1087 (9th Cir. 2008) ............................................................... 5, 6

*Secretary of State v. Joseph H. Munson Co.*,
    467 U.S. 947 (1984) ................................................................................ 18

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ............................................................................. 9, 11

*Sprint Communications, Inc. v. Jacobs*,
    571 U.S. 69 (2013) .................................................................................... 3

*Tingley v. Ferguson*,
    47 F.4th 1055 (9th Cir. 2022) ................................................................... 9

*United States v. Carolene Productions Co.*,
    304 U.S. 144 (1938) ................................................................................ 21

*United States v. Hansen*,
    25 F.4th 1103 (9th Cir. 2022) ........................................................... 17, 19

*United States v. Johnson*,
    626 F.3d 1085 (9th Cir. 2010) ................................................................ 20

*United States v. National Treasure Employees Union*,
    513 U.S. 454 (1995) ................................................................................ 18

*United States v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000) ........................................................................... 14, 15

*United States v. Stevens*,
    559 U.S. 460 (2010) ................................................................................ 17

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Upsolve, Inc. v. James,*
   No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y. May 24, 2022)........................... 8–9, 12

*Virginia v. Hicks,*
   539 U.S. 113 (2003) ......................................................................................................... 17

*Vizaline, LLC v. Tracy,*
   949 F.3d 927 (5th Cir. 2020).......................................................................................... 10

*Wiener v. County of San Diego,*
   23 F.3d 263 (9th Cir. 1994)........................................................................................... 4–5

*Wooley v. Maynard,*
   430 U.S. 705 (1977) ......................................................................................................... 5

*Yamada v. Snipes,*
   786 F.3d 1182 (9th Cir. 2015).................................................................................... 19, 21

*Yoshikawa v. Seguirant,*
   41 F.4th 1109 (9th Cir. 2022)...................................................................................... 2, 24

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend I ................................................................................................... *passim*

U.S. Const. amend XIV ................................................................................................ 1, 3

## STATUTES & CODES

42 U.S.C § 1983 .................................................................................................. 1, 3, 4, 5

Cal. Bus. & Prof. Code § 8704 ..................................................................................... 14

Cal. Bus. & Prof. Code § 8708...................................................................................... 14

Cal. Bus. & Prof. Code § 8726 ............................................................................. *passim*

Cal. Bus. & Prof. Code § 8727 ....................................................................................... 8

Cal. Bus. & Prof. Code § 8792 ............................................................................... 2–3, 17

## RULES

Fed. R. Civ. P. 12 ................................................................................................... *passim*

**OTHER AUTHORITIES**

*Locate*, Merriam-Webster,
    *https://www.merriam-webster.com/dictionary/locate* (last accessed Nov. 30, 2022)............. 17

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**INTRODUCTION**

In this § 1983 federal civil rights action, Plaintiffs seek prospective relief against enforcement of California statutes that violate their rights under the First and Fourteenth Amendments. Plaintiffs' three-count Complaint states (1) free speech, (2) overbreadth and/or vagueness, and (3) substantive due process and equal protection legal theories of relief. Defendants move for this Court to abstain from deciding this case and/or dismiss it for failing to state a claim upon which relief can be granted. Defendants' arguments are near-carbon copies of their arguments in opposition to Plaintiffs' motion for a preliminary injunction. Those arguments are still wrong. First, Defendants admit this Court has jurisdiction, so this Court should exercise that jurisdiction. Second, Plaintiffs' Complaint is based on sufficient factual allegations supporting cognizable legal theories. This Court should, therefore, deny the Motion to Dismiss.

**LEGAL STANDARD**

Defendants urge their motion under both Fed. R. Civ. P. 12(b)(1) and (b)(6), Mem. Supp. Mot. Dismiss ("MTD"), ECF 15-1 at 5-6, but under either rule, this Court should take all factual allegations in the Complaint as true and construe the Complaint in favor of Plaintiffs. *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (Rule 12(b)(1));[1] *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (Rule 12(b)(6)). The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A complaint need only contain sufficient factual allegations which state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facts alleged must "be enough to raise a right to relief above the speculative level," but the complaint may survive a motion to dismiss even if recovery seems "very remote and unlikely." *Twombly*, 550 U.S. at 555-56 (internal quotations omitted). Thus, to survive

---

[1] Courts are undecided whether motions to abstain are 12(b)(1) or 12(b)(6) motions. *Courthouse News Serv. v. Planet*, 750 F.3d 776, 779 n.2 (9th Cir. 2014). Assuming they are 12(b)(1) motions, a court may consider extrinsic evidence to contest complaint allegations as to jurisdiction. *Mecinas*, 30 F.4th at 896. Here, however, it does not appear the parties dispute facts, so the Complaint's allegations control. *Id.*

1   a motion to dismiss under Rule 12(b)(6), Plaintiffs' Complaint need only be based on a cognizable

2   legal theory and include sufficient facts alleged under that theory. *Yoshikawa v. Seguirant*, 41 F.4th

3   1109, 1114 (9th Cir. 2022).

**BACKGROUND**

5       Ryan Crownholm has been drawing site plans in California for many years. When he was

6   a licensed contractor, he had to submit a site plan drawing to apply for permits. Compl. (ECF 1)

7   ¶¶ 23-28. These site plan drawings were not considered surveys and homeowners and contractors

8   are allowed to create and submit them themselves. *Id.* ¶¶ 29-35. Several California counties and

9   municipalities provided, and still provide, guidance to non-surveyors on how to prepare their own

10  site plan drawings for submission to permit issuing agencies. *Id.* ¶¶ 36-45. This guidance shows

11  that site plans may be drawn by non-surveyors using publicly available data and images from GIS

12  or even Google Maps. *Id.* ¶¶ 44-52. This is because such site plans are not an authoritative

13  determination of where any lot lines or features of a property are located. *Id.* ¶¶ 70, 93, 95, 105.

14      Ryan eventually learned how to use this publicly available information from GIS to create

15  electronic site plan drawings in a Computer-aided Design (CAD) program. *Id.* ¶ 53. Ryan's site

16  plans proved popular with both contractors and building permit issuers, *id.* ¶¶ 57-60, who could

17  otherwise spend hours dealing with hand-drawn site plans, *see id.* ¶¶ 42, 58. No one ever thought

18  that these drawings were surveys. *Id.* ¶ 60. This led Ryan to start MySitePlan.com in 2013. *Id.* ¶¶ 9-

19  12, 61. Ever since, MySitePlan.com has provided these same site plans—non-authoritative, not

20  certified (signed or sealed), not legal surveys, and accompanied by numerous disclaimers to that

21  effect—in California and elsewhere. *Id.* ¶¶ 62-74. No building department or client has ever

22  complained to Plaintiffs about MySitePlan.com site plan drawings. *Id.* ¶ 75. And these drawings

23  are used for a variety of informational purposes beyond permit applications. *Id.* ¶¶ 71-72.

24      But the California Board for Professional Engineers, Land Surveyors, and Geologists says

25  Plaintiffs' drawings are illegal. The Board issued a Citation Order stating that drawing "site plans

26  which depict the location of property lines, fixed works, and the geographical relationship thereto"

27  constituted the practice of land surveying. *Id.* ¶ 82. The Citation Order directed Plaintiffs to pay a

28  fine of $1,000 and to "cease and desist from violating Business & Professions Code section(s)

8792(a) and (i)." *Id.* ¶ 79. Prior to filing the instant federal civil rights action, Ryan signed a notice agreeing not to appeal the Board's citation, instead accepting its terms and paying the Board a $1,000 fine. *Id*. ¶ 88. Based on the Board's citation and statutory provisions cited, MySitePlan.com and Ryan are prospectively threatened with enforcement and fines merely for continuing to do or offering to do their site plan drawings, just because they depict or show "the location of property lines, fixed works, and the geographical relationship thereto." *Id.* ¶ 85.

This threat of statutory enforcement infringes Plaintiffs' rights protected by the First and Fourteenth Amendments to the United States Constitution. *See id*. ¶¶ 106-74. Accordingly, Plaintiffs filed this § 1983 federal civil rights action seeking only prospective relief against enforcement of those statutes that violate their rights. *Id.* Prayer for Relief.

## ARGUMENT

The Board's motion to dismiss is a near-carbon copy of its opposition to the motion for a preliminary injunction and is equally unavailing. First, this court should not abstain from exercising its jurisdiction under *Younger* or *Pullman*. Second, Plaintiffs' free speech claim is based on controlling precedent and sufficient factual allegations, but the Board continues to misunderstand that claim and fails to engage with governing case law. Third, Plaintiffs' facial overbreadth and vagueness claims are adequately pled. Fourth, Plaintiffs' rational basis claims—substantive due process and equal protection—are adequately pled under controlling precedent. Accordingly, this court should DENY the Board's motion to dismiss.

## I.    Abstention is not appropriate here.

The Board concedes jurisdiction but asserts this court should ignore its "virtually unflagging obligation" to exercise its jurisdiction. *Colo. River Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ("In the main, federal courts are obliged to decide cases within the scope of federal jurisdiction."). The Board claims both *Younger*, MTD 6-11, and *Pullman*, *id.* 24-25, abstention. But as Plaintiffs previously demonstrated, ECF 14 at 1-6, the Board's abstention arguments fail.

### A.    *Younger* abstention does not apply.

The Board wrongly claims *Younger* abstention applies here. MTD 6-11. *Younger* abstention

1    is rooted in the idea that federal courts should not "enjoin pending state [enforcement]

2    proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir.

3    2014). It is "an extraordinary and narrow exception" to this court's obligation to exercise

4    jurisdiction. *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011).

5    Accordingly, "*Younger* abstention is appropriate only" if various "threshold elements" are satisfied.

6    *ReadyLink*, 754 F.3d at 759. The first element is that state proceedings "are ongoing." *Id.* Even if

7    all the threshold elements are met, abstention is appropriate only if "the federal action would have

8    the practical effect of enjoining the state proceedings." *Id.* The Board's *Younger* argument fails

9    because there is no ongoing state proceeding to enjoin and Plaintiffs seek only prospective relief

10   against enforcement of the statutes that threaten their rights.

11          There is no ongoing state proceeding to abstain in favor of, so *Younger* does not apply.

12   Before filing this suit, Plaintiffs withdrew their appeal and paid their fine. Compl. ¶ 88; MTD 7.

13   This action "resol[ved] . . . the matter," though it does "not constitute an admission of the violation

14   charged." Cal. Code Regs. tit. 16, § 472.3(e)-(f). Plaintiffs are, therefore, not currently parties in

15   any disciplinary proceeding. *See Ariz. Att'ys for Crim. Just. v. Brnovich*, No. 20-16293, 2021 WL

16   3743888, at *3 (9th Cir. Aug. 24, 2021) ("the first *Younger* requirement—the presence of an

17   ongoing state proceeding—is not satisfied" because "no plaintiffs are currently parties in

18   disciplinary proceedings"). Moreover, Plaintiffs do not seek to enjoin *any* state proceeding.

19   Plaintiffs only challenge certain statutes as violating their constitutional rights and seek *prospective*

20   relief against enforcement of those statutes in the future. Compl. Prayer for Relief; *see also Full*

21   *Circle of Living & Dying v. Sanchez*, No. 2:20-CV-01306-KJM-KJN, 2020 WL 7714200, at *2

22   (E.D. Cal. Dec. 28, 2020) (denying a motion to dismiss when plaintiff "withdrew its administrative

23   appeal" and then filed federal § 1983 suit).

24          *Younger* does not apply where a plaintiff completes state-court proceedings and then seeks

25   prospective relief against future enforcement of the underlying statutes. "Where a federal plaintiff

26   seeks relief not from past state actions but merely from prospective enforcement of state law,

27   federal court adjudication would not interfere with the state's basic executive functions in a way

28   *Younger* disapproves." *Potrero Hills*, 657 F.3d at 885; *accord Wiener v. County of San Diego*, 23

4

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

F.3d 263, 267 (9th Cir. 1994) ("*Younger* abstention does not apply when, as here, a federal plaintiff seeks a prospective injunction against prosecutions under an allegedly unconstitutional ordinance."). This rule comes from the Supreme Court's decision in *Wooley v. Maynard*, 430 U.S. 705 (1977). Mr. Maynard had been prosecuted three times for violating a state statute but never appealed his convictions. *Id* at 708-09. Instead, he filed a § 1983 action challenging the statute. *Id.* at 709. The state argued that *Younger* prohibited the federal courts from hearing the suit because "Maynard failed to seek review of his criminal convictions." *Id.* at 709-10. But the Court rejected that because

> the suit is in no way "designed to annul the results of a state trial" since the relief sought is wholly prospective, to preclude further prosecution under a statute alleged to violate appellees' constitutional rights. Maynard has already sustained convictions and has served a sentence of imprisonment for his prior offenses. He does not seek to have his record expunged, or to annul any collateral effects those convictions may have, *e.g.*, upon his driving privileges. The Maynards seek only to be free from prosecutions for future violations of the same statutes. *Younger* does not bar federal jurisdiction.

*Id.* at 711.

Plaintiffs' case is like *Maynard*. They have already sustained and paid their penalty. Compl. ¶ 88. They seek only prospective relief. Compl. Prayer for Relief. They don't seek to have their records expunged, fine refunded, or to undo any other effects of the order. *Id*. Like Maynard, they seek "only to be free from prosecutions for future violations of the same statutes." Therefore, as in *Maynard*, "*Younger* does not bar federal jurisdiction."

Nevertheless, the Board still asserts that *Younger* applies if "there were state administrative enforcement proceedings for which judicial review would have been available, even when the subject of the enforcement action did not pursue the state enforcement proceedings to conclusion." MTD 7. The Board's argument doesn't discuss *Potrero Hills* and doesn't even mention *Maynard*. The only Ninth Circuit precedent the Board cites is *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087 (9th Cir. 2008), *abrogated as recognized in ReadyLink Healthcare*, 754 F.3d at 759. MTD 7. But in *San Jose* the agency had not yet finished its proceeding against the federal plaintiff, 546 F.3d at 1093-94, and the federal plaintiff sought an order that the state agency "rescind" its decision, *id.* at 1091, the opposite of prospective

1  relief. And, in any event, *San Jose* predates the *Potrero Hills* decision.

2        As before, the Board's argument is based on older, out-of-circuit, cases in which state

3  proceedings were ongoing or a federal litigant sought to reverse a state proceeding in federal court,

4  rather than prospective relief. MTD 7-8. Those cases thus do not apply here. In *Maymó-Meléndez*

5  *v. Álvarez-Ramírez*, 364 F.3d 27, 30, 34 (1st Cir. 2004), the federal plaintiff filed suit while his

6  state enforcement proceeding was pending and also sought to enjoin the punishment levied against

7  him in the state proceeding before that punishment took effect. In *Majors v. Engelbrecht*, 149 F.3d

8  709, 711, 713 (7th Cir. 1998), the federal plaintiff filed suit while a hearing before a state board

9  was pending. In *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789-91 (3d Cir. 1994), the federal

10  plaintiffs did not seek prospective relief; they sought to "invalidate" the state proceedings by,

11  among other things, seeking the return of fines levied by the agency and vacation of outstanding

12  agency judgments. And *Alleghany Corp. v. Pomeroy*, 898 F.2d 1314, 1317 (8th Cir. 1990) was a

13  direct challenge to a state insurance commissioner's rejection of the plaintiff's application to buy

14  an insurance company, not a prospective relief case.

15        The Board's argument isn't really that there is an ongoing proceeding; it is instead that

16  Plaintiffs seek "a federal court order enjoining the Board from enforcing" its own order. MTD 7.

17  That is not interference with an "ongoing" proceeding, and the Board does not cite anything saying

18  otherwise.[2] And that is not what Plaintiffs seek; they seek a declaration that certain statutes violate

19  their rights and an injunction "prohibiting Defendants from enforcing" those statues "against

20  Plaintiffs." Compl. Prayer for Relief. Plaintiffs do not seek to have their records expunged or fine

21  refunded, or to undo any effect of the order. *Id.* The Board would only be enjoined from enforcing

22  in the future the statutes on which the order is based.

23        At base, the Board argues that, having once been prosecuted, Plaintiffs can never bring a

24  prospective claim in federal court. MTD 7-8. But both the Supreme Court and the Ninth Circuit

25  have rejected that argument by holding that *Younger* does not apply where state proceedings have

26  concluded and plaintiffs seek prospective relief against enforcement of the underlying statutes. No

27

28  ---

[2] This demonstrates that the Board's arguments do not arise under *Younger*; they invoke other, unstated doctrines that also do not apply here, such as administrative exhaustion, *Rooker-Feldman*, or preclusion.

1    case cited by the Board says otherwise. Accordingly, as in *Maynard* and *Potrero Hills*, *Younger*

2    abstention does not apply here.

3        **B.    *Pullman* abstention does not apply.**

4        The Board also erroneously seeks *Pullman* abstention. MTD 24-25. *Pullman* allows federal

5    courts to "abstain from adjudicating disputes that hinge on significant and unsettled questions of

6    state law." *Courtney v. Goltz*, 736 F.3d 1152, 1162-63 (9th Cir. 2013). But like all forms of

7    abstention, it is disfavored; it is "the exception and not the rule." *City of Houston v. Hill*, 482 U.S.

8    451, 467 (1987). It is a "blunt instrument," *Expressions Hair Design v. Schneiderman*, 137 S. Ct.

9    1144, 1156 (2017) (Sotomayor, J., concurring), that mandates "a full round of litigation in the state

10   court system before any resumption of proceedings in federal court," *Arizonans for Official English

11   v. Arizona*, 520 U.S. 43, 76 (1997), which causes significant delay. Courts are "particularly

12   reluctant" to apply *Pullman* abstention to "facial challenges based on the First Amendment," as the

13   delay causes an "impermissible chilling of the very constitutional right" the plaintiff seeks to

14   protect. *City of Houston*, 482 U.S. at 467-68 (citations omitted). *Pullman* abstention is not just

15   disfavored; it is particularly inappropriate here for two reasons.

16       First, there are no "significant and unsettled questions of state law" preventing this Court

17   from addressing Plaintiffs' First Amendment claim. The Board already determined that Plaintiffs'

18   drawings which "depict the location of property lines, fixed works, and the geographical

19   relationship thereto" violate state law. Compl. ¶ 82. It has not repudiated that position. *E.g.*, MTD

20   21. Waiting years for a state court to say the same thing will not serve the parties or this Court.

21       Second, while the scope of California's outdated definition of "land surveying," Cal. Bus.

22   & Prof. Code § 8726(a), is relevant to Plaintiffs' facial overbreadth and vagueness challenges,

23   *Pullman* abstention is still inappropriate. Abstention in facial First Amendment cases is

24   inappropriate, particularly where the statute at issue is not "fairly subject to an interpretation which

25   will render unnecessary or substantially modify the federal constitutional question." *City of

26   Houston*, 482 U.S. at 467-68. Any saving construction must be "apparent" on the statute's face;

27   otherwise "abstention is unwarranted," *Potrero Hills*, 657 F.3d at 889, even absent a state court

28   interpretation, *City of Houston*, 482 U.S. at 468. The Board offers no saving construction here but

1   previously proposed a content-based narrowing construction—a license is required only to say the

2   *distance between* a fixed work and a property line. ECF 13 at 18-19, 21-22. But that still restricts a

3   substantial amount of protected speech (including Plaintiffs'), so it would not *save* the statute. ECF

4   14 at 5-6. The only possible saving construction is that the licensing requirement applies only when

5   authoritatively determining location information with legally binding effect. But the Board

6   correctly rejects that as atextual. MTD 14.[3] Accordingly, *Pullman* abstention is unwarranted.

7   **II.    Plaintiffs plausibly allege that California's Land Surveyor licensing law restricts

8           Plaintiffs' First Amendment-protected speech as applied in this case.**

9           This court should deny the Board's motion to dismiss Plaintiffs' as-applied First

10  Amendment free speech claim, MTD 11-20, because it is based on a cognizable legal theory and is

11  supported by sufficient factual allegations, Compl. ¶¶ 118-35. As explained below, Plaintiffs allege

12  that, as applied to them, the challenged surveyor licensing statutes regulate their "speech as

13  speech," without sufficient justification, which violates their First Amendment rights. *Nat'l Inst. of

14  Fam. & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2374 (2018) ("*NIFLA*"). But the Board

15  continues to misunderstand this claim; it is not about whether states may, in general, regulate "any

16  profession," like "medicine, law, engineering, [or] architecture." MTD 20. Rather, Plaintiffs' First

17  Amendment claim is simpler, narrower, and tracks with Supreme Court precedent: States may

18  impose occupational licensing requirements that generally regulate conduct, but when those laws

19  are applied to restrict a plaintiff's speech, those laws are subject to ordinary First Amendment

20  scrutiny as-applied to that plaintiff, just like any other speech restriction. *NIFLA*, 138 S. Ct. at 2374.

21  The federal courts routinely follow this approach when analyzing the First Amendment

22  implications of occupational licensing laws. *E.g.*, *Hines v. Quillivan*, 982 F.3d 266 (5th Cir. 2020)

23  (veterinary medicine); *Upsolve, Inc. v. James*, No. 22-cv-627 (PAC), 2022 WL 1639554 (S.D.N.Y.

24  ───────────────

25  [3] The Board is unaware of any California decision addressing these issues. MTD 25. Plaintiffs are aware of
    one, but it has been legislatively mooted. In *Hill v. Kirkwood*, 161 Cal. App. 2d 346, 351 (1958), the court,
26  following then Cal. Bus. & Prof. Code § 8727, recognized that "[s]urveys, made exclusively for geological
    or landscaping purposes or aerial photography or photogrammetry and not involving the determination of
27  any property line, do not constitute surveying within the meaning of this chapter." But § 8727 was later
    amended to limit or eliminate the exception. *See* Cal. Bus. & Prof. Code § 8727 (2022) (requiring geology
    or landscape architecture licenses). Accordingly, it remains the case that the only potential saving
28  construction is contrary to the plain text of the statutes.

May 24, 2022) (law); *Järlström v. Aldridge*, 366 F. Supp. 3d 1205 (D. Or. 2018) (engineering); *see also Full Circle*, 2020 WL 7714200 (funeral directing); *accord Tingley v. Ferguson*, 47 F.4th 1055, 1074 (9th Cir. 2022) ("*NIFLA* abrogated the part of *Pickup* in which we stated that professional speech, *as a category*, receives less protection under the First Amendment.").

As explained below, Plaintiffs' factual allegations make out a plausible claim that the challenged statutes, as enforced against Plaintiffs, restrict Plaintiffs' speech. And under the 12(b)(6) standard, the Board cannot meet (and has not met) its evidentiary burden to justify a speech restriction under any level of First Amendment scrutiny. Accordingly, this Court should deny the Board's motion to dismiss Count I.

## A. The Board is regulating these Plaintiffs' speech.

Plaintiffs have plausibly alleged that the Board is restricting their speech. Binding precedent says that the use, creation, and dissemination of information is "speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011); Compl. ¶ 122.[4] Therefore, "[a]n individual's right to speak is implicated when information he or she possesses is subjected to restraints on the way in which the information might be used or disseminated." *Sorrell*, 564 U.S. at 568. This includes when such information is sold. *Id.* at 567 (no less protection because "speech results from an economic motive"). The Complaint states that Plaintiffs "take existing data and information, including GIS data made available to the public by governments, and use it to create and disseminate new information in the form of non-authoritative site plans," that creating and disseminating this information is illegal under California law (as interpreted and enforced by the Board), and that this restriction on creating and disseminating information restricts Plaintiffs' speech. *Id.* ¶¶ 121-28. Specifically, Plaintiffs are prohibited from using existing publicly available information (satellite imagery and GIS data) to generate new information (a drawing depicting the basic layout of a property and, if necessary, a simple explanation of the changes to be made to the property) for their clients. Compl. ¶¶ 30, 70-71, 82, 85.[5] Their Complaint is therefore based on a

---

[4] If providing "information do[es] not constitute speech," the Supreme Court has counseled, "it is hard to imagine what does." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) (cleaned up).

[5] Visual depictions are speech. *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 791-93 (2011).

1    cognizable legal theory supported by adequate factual allegations showing their speech is restricted.

2          Nothing about this cognizable legal theory changes because the speech restriction here

3 stems from an occupational-licensing statute rather than some other kind of law. "[T]he First

4 Amendment deprives the states of 'unfettered power to reduce a group's First Amendment rights

5 by simply imposing a licensing requirement.'" *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*,

6 961 F.3d 1062, 1069 (9th Cir. 2020) ("*PCHS*") (quoting *NIFLA*, 138 S. Ct. at 2375)); *see also*

7 *Vizaline, LLC v. Tracy*, 949 F.3d 927, 934 (5th Cir. 2020) (reversing district court's holding that

8 Mississippi's surveyor-licensing law was "wholly exempt from First Amendment scrutiny simply

9 because [it was] an occupational-licensing regime."). In arguing otherwise—as it has done before,

10 *see* ECF 13 at 9-14—the Board fails to grapple with Plaintiffs' actual as-applied claim. The Board's

11 primary argument is that California "may validly impose" a licensing requirement on all the

12 activities California defines as "land surveying," "notwithstanding the First Amendment." MTD

13 11. According to the Board, although the surveyor-licensing law may "implicate[]" "some speech

14 interests," when viewed as a whole, it is "a valid exercise of the state's police power. *Id*. 12 (quoting

15 in part *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psych.*, 228 F.3d 1043, 1056

16 (9th Cir. 2000) ("*NAAP*"). The Board posits that most of the law's applications "regulat[e] conduct

17 and not speech," MTD 13, and thus no First Amendment scrutiny is warranted here. In short, the

18 Board ignores Plaintiffs' narrow as-applied claim by invoking the standards for a facial challenge.

19          As Plaintiffs have explained, *see* ECF 12-1 at 11-12; ECF 14 at 7-11, the Board fails to

20 address the precedents that govern this as-applied case. In *Holder v. Humanitarian Law Project*,

21 561 U.S. 1 (2010), the Supreme Court (well after the Ninth Circuit decided *NAAP*) set the standard

22 for determining, in an as-applied case, whether a restriction is of a plaintiff's speech or conduct.

23 *Holder* instructs that, in as-applied free speech challenges, courts are not (as the Board argues) to

24 view the entire universe of activity a law might cover to determine whether it is regulating speech

25 or conduct. *Id.* at 27-28. Instead, courts must ask whether the precise activity the plaintiff engages

26 in that triggers application of the law to them is speech or conduct. *Id.* (noting that precedents

27 including *Cohen v. California*, 403 U.S. 15 (1971), are in accord). In *Holder*, federal law prohibited

28 providing designated terrorist groups with "material support or resources." 561 U.S. at 12. The

plaintiffs wished to speak to some such groups to teach them "how to use humanitarian and international law to peacefully resolve disputes" and "how to petition . . . bodies such as the United Nations for relief." *Id*. at 21-22. Although the "material support or resources" restriction "*generally* functions as a regulation of conduct," *id*. at 27, all nine justices recognized that, as applied to these plaintiffs, it regulated speech, *id*. at 28. Accordingly, their as-applied challenge required the First Amendment's "more demanding standard" of review. *Id*.

Whether or not California's surveying laws work a restriction on conduct when applied to other people, the Complaint pleads that those laws are applied by the Board to Plaintiffs because of Plaintiffs' speech. That is, Plaintiffs are subject to regulation because their drawings "depict the location of property lines, fixed works, and the geographical relationship thereto." Compl. ¶ 82. As outlined above, those drawings are speech.

Rather than address the *Holder* standard, the Board cites cases holding that other activities are conduct or "economic activity" rather than speech. MTD 13. But cases holding that other regulated activities are conduct do not determine whether Plaintiffs' regulated activities are speech or conduct. The closest the Board comes to engaging with governing case law is when it notes a single passage from *NIFLA*: "States may regulate professional conduct, even though that conduct incidentally involves speech." MTD 13 n.6 (quoting 138 S. Ct. at 2372). But the Board's theory—that the statutes generally regulate conduct and therefore incidentally regulate Plaintiffs' speech, MTD 13-14—runs afoul of both the *Holder* inquiry, 561 U.S. at 27-28, and *NIFLA*'s elimination of the professional speech doctrine, 138 S. Ct. at 2375 (allowing the requirement of a "professional license" just to speak "gives the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement."). Regardless, the "incidental" rule is inapplicable here because such a law must actually regulate the person's conduct, not his speech. *Id.* at 2372-74. Here, Plaintiffs' drawings are illegal because they "depict the location of property lines, fixed works, and the geographical relationship thereto." Compl. ¶ 82. Such targeting of speech "based on its communicative content" is not an incidental burden. *PCHS*, 961 F.3d at 1070-71; *accord Sorrell*, 564 U.S. at 567.

The Ninth Circuit's decision in *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002), illustrates

the Board's misunderstanding. *Conant* recognized that the government can regulate or even prohibit *prescribing* marijuana, but held the First Amendment precludes the government from punishing physicians who *recommend* marijuana to patients. *Id.* at 635. Although both the recommendation and the prescription are carried out through words, only the prescription creates the legal entitlement to access a controlled substance. *Id.* The government may prohibit prescribing, even though doing so may incidentally burden the ability to recommend marijuana to patients, but it may not prohibit recommending alone. This is because banning the prescription does not target speech "based on its communicative content," *PCHS*, 961 F.3d at 1070-71, but for its independent legal effect. *Accord Upsolve*, 2022 WL 1639554 (enjoining requirement that plaintiffs obtain a law license to provide out-of-court legal advice to clients, and distinguishing such speech from, *e.g.*, filing written documents for a client with a court). If Plaintiffs' drawings did have independent legal effect—if those drawings were authoritative and were used to create "property boundaries – and therefore property rights," MTD 25—such as being incorporated into a deed, then the "incidental regulation" line of cases would apply. But Plaintiffs' speech carries no independent legal effect; it is only informational and does not authoritatively establish property boundaries. *Id.* ¶¶ 66, 70, 93. Plaintiffs' speech is not "professional conduct" that only "incidentally involves speech." *NIFLA*, 138 S. Ct. at 2372. It is the kind of pure "speech as speech" that receives full First Amendment protection. *Id.* at 2374.

**B.   Plaintiffs are regulated because of the content of their speech.**

As applied to Plaintiffs, the challenged statutes are a content-based restriction of Plaintiffs' speech requiring the highest level of constitutional scrutiny. *See* Compl. ¶ 128. Plaintiffs are prohibited from drawing "the location of property lines, fixed works, and the geographical relationship thereto." Compl. ¶ 82; *see also* ECF 13 at 18-19, 21-22. If Plaintiffs instead created drawings depicting virtually anything besides "property lines, fixed works, and the geographical relationship thereto," the surveyor-licensing laws would not apply. Accordingly, the restriction of Plaintiffs' speech is triggered by "the topic discussed or the idea or message expressed," which makes it content based. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *id.* at 169 ("[A] speech regulation targeted at specific subject matter is content based even if it does not discriminate among

viewpoints within that subject matter."); *PCHS*, 961 F.3d at 1073 (content-based if government must "examine the contents of the message to see if a violation has occurred"). And strict scrutiny therefore applies. *See In re Nat'l Sec. Letter*, 33 F.4th 1058, 1071-72 (9th Cir. 2022).

Nothing the Board argues supports a different conclusion. First, the Board argues that it is restricting Plaintiffs' speech, not because of its disagreement with the content, but because Plaintiffs aren't qualified to engage in that speech. MTD 19 (explaining that the Board is requiring Plaintiffs to meet "training and licensing requirements" before speaking). But a law that is content-based on its face is subject to strict scrutiny regardless of the government's content-neutral justification, "benign motive," or "lack of animus" toward the speech. *Reed*, 576 U.S. at 165 (internal quotation marks omitted); *see id*. at 169 (singling out "specific subject matter" is sufficient, even without "discriminat[ing] among viewpoints within that subject matter"); *PCHS*, 961 F.3d at 1073 & n.10 ("because content discrimination is apparent" on the face of the statute, "heightened scrutiny" required even absent any "reason to question California's motives"). Here, Plaintiffs are regulated because their drawings show or contain specific information: "the location of property lines, fixed works, and the geographical relationship thereto." Compl. ¶ 82.

Second, the Board's argument that it is only requiring heightened credentials of speakers before they speak would merely substitute a speaker-based restriction for a content-based one. MTD 19; *cf. NIFLA*, 138 S. Ct. 2375 (rejecting idea that government can condition speech on holding a professional license). Speaker-based restrictions, too, are subject to heightened constitutional scrutiny. *E.g.*, *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) ("Prohibited, too, are restrictions distinguishing among different speakers"); *PCHS*, 961 F.3d at 1071 (noting that challenged act "distinguishes between speakers")*.*

Third, the Board admits it must analyze the content and author of a drawing to determine whether and how the drawing is regulated, but claims this is allowed under *City of Austin v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464 (2022). MTD 19-20. *City of Austin* has no applicability here. That case dealt with a restriction, not on what speakers may say, but on where they may display their message. *See* 142 S. Ct. at 1469, 1471 (upholding code provision banning certain advertising signs unless placed on the site that is being advertised); *id*. at 1480 n.1 (Alito,

J., concurring in the judgment) ("The distinction . . . is based solely on location, and that is why [it] is not content-based.").[6] The restriction on *where* messages may be displayed is different from the restriction on *any* "depict[ion] [of] the location of property lines, fixed works, and the geographical relationship thereto" without a license. Compl. ¶ 82. Rather than being "agnostic as to content," *City of Austin*, 142 S. Ct. at 1471, the Board prohibits a drawing based on what it shows, no matter the time, location, or manner used. In other words, it "singles out specific subject matter for differential treatment." *Reed*, 576 U.S. at 169. Because the restriction "describes [im]permissible [drawings] in terms of [their] subject matter," *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972), it is content based.

### C.   The Board cannot meet its narrow-tailoring burden on the pleadings.

No matter which level of First Amendment scrutiny applies, the Board cannot meet its burden to dismiss Plaintiffs' claim at this stage.[7] While the Supreme Court has enumerated an array of standards of scrutiny under the First Amendment, every such standard has this in common: "When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). "This burden is not satisfied by mere speculation or conjecture"; it requires real evidence. *Edenfield v. Fane*, 507 U.S. 761, 770 (1993). Accordingly, the Board cannot make its showing at the 12(b)(6) stage, where only the factual allegations of the Complaint are considered.

---

[6] The Court was careful to note that "distinctions between on-premises and off-premises signs, like the one at issue in this case," have long been deemed content neutral. 142 S. Ct. at 1473. While the Court grounded its decision in "the Nation's history of regulating off-premises signs," 142 S. Ct. at 1474, there is no such history here. *See NIFLA*, 138 S. Ct. at 2372 (no "persuasive evidence of a long (if heretofore unrecognized) tradition" of exempting "professional speech" from First Amendment protection (cleaned up)). The Board claims there is a long tradition of regulating "surveying," MTD 14-15, but it offers no evidence that such regulation encompassed *non-authoritative* drawings. *Cf.* 23 Op. Cal. Att'y Gen 86 (Feb. 11, 1954) ("Map making is not ipso facto surveying." It depends on the map's "purpose or its method.").

[7] The Board also argues that its restriction survives the constitutional standard for commercial speech. MTD 15-17. Plaintiffs have already explained they are not regulated because of their advertising; they are regulated because they draw site plans that "depict the location of property lines, fixed works, and the geographical relationship thereto." Compl. ¶ 82. Plaintiffs have not brought a commercial speech claim because the Board has never previously claimed that Plaintiffs violate any commercial speech regulation. ECF 14 at 6-7; Compl. ¶¶ 86-87. And while the land surveyor licensing laws include restrictions on commercial speech, Cal. Bus. & Prof. Code §§ 8704, 8708, 8726(a)(8), Plaintiffs disclaim being surveyors or doing land surveying. Compl. ¶¶ 62-70. Regardless, as described below, the Board must have evidence to support a restriction on commercial speech and at this stage of litigation it has none.

Content-based restrictions of speech must satisfy strict scrutiny; that is, be narrowly tailored to serve a compelling state interest. *In re Nat'l Sec. Letter*, 33 F.4th at 1071-72. As a result, they are "presumptively invalid," and the Board "bears the burden to rebut that presumption." *Playboy Entm't Group*, 529 U.S. at 817 (citation omitted). The Board does not argue that its restriction satisfies strict scrutiny. It doesn't mention strict scrutiny at all. That makes its bid to dismiss Plaintiffs' claim an easy candidate for denial: The Board's content-based restriction is "presumptively invalid," and it has not tried to meet its "burden to rebut that presumption." *Id.*

But even if the Court assumes the restriction is content-neutral or commercial speech, the Board still must—and cannot at this stage—satisfy intermediate scrutiny. *See McCutcheon v. FEC*, 572 U.S. 185, 199 (2014) (plurality opinion) (declining to decide whether strict or intermediate scrutiny applied because speech restriction failed even under more lenient test); *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018) ("Restrictions on commercial speech must survive intermediate scrutiny"). Intermediate scrutiny requires the Board to prove its restriction is "narrowly tailored to serve a significant government interest." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014). That means it must "directly advance the asserted interest, and . . . not be 'more extensive than is necessary to serve that interest.'" *Italian Colors Rest.*, 878 F.3d at 1176. The Board's "burden under this test is 'heavy.'" *Id.*

The Board has not come close to satisfying that burden at this stage. The Board appears to invoke two interests served by its censoring of Plaintiffs' drawings: "protect[ing] vulnerable consumers" from "misleading content," MTD 18, and "maintaining the integrity of property lines," *id.* 19. Even assuming these are significant interests, government needs to justify its speech restriction with evidence, not bare assertions on a motion to dismiss. *Edenfield*, 507 U.S. at 770.

First, the Complaint cannot be read to support the idea that consumers are or will be "misled" by Plaintiffs' speech because Plaintiffs inform their customers that they are not surveyors and that their drawings do not substitute for surveys. Compl. ¶¶ 41, 58, 60, 62-65, 75, 130. And even if the Board had evidence of consumers being misled by Plaintiffs' drawings (which it does not and cannot at this stage), it has an option that "would restrict less speech and [] more directly advance [its] asserted interest in preventing consumer deception": It could enforce against Plaintiffs

1   the state's "existing laws banning unfair business practices and misleading advertising." *Italian*

2   *Colors Rest.*, 878 F.3d at 1178. At the 12(b)(6) stage, the Board cannot show "that it seriously

3   undertook to address" the alleged harm from Plaintiffs' drawings "with less intrusive tools readily

4   available to it," and that precludes its motion to dismiss. *McCullen*, 573 U.S. at 494.

5          Second, Plaintiffs allege they do not implicate any interest. The parties agree that regulating

6   authoritative location information is the legitimate interest surveyor-licensing requirements serve.

7   *See* Compl. ¶ 157 ("the government's interest in regulating professional surveyors [is] ensuring

8   accurate authoritative location survey products"). But Plaintiffs allege their drawings are *non-*

9   *authoritative*, for general planning and informational use, and not used (and not intended to be

10   used) to legally establish locations. Compl. ¶¶ 3, 62, 70, 93, 95, 114, 121, 123. Thus, Plaintiffs

11   allege that they and their drawings do not implicate the state's interest. Compl. ¶¶ 131-33

12   ("Defendants possess no evidence that" any interest is furthered by enforcement as applied here).

13   At the 12(b)(6) stage, the Board cannot meet its "heavy," *Italian Colors Rest.*, 878 F.3d at 1176,

14   evidentiary burden to show that it tried to address the problem of bad authoritative location

15   information with something "less intrusive" than regulating *all* location information, authoritative

16   or not. *McCullen*, 573 U.S. at 494.

17   **III.   Plaintiffs have stated a claim that California's definition of land surveying is**

18          **unconstitutionally overbroad, unconstitutionally vague, or both.**

19          This Court should deny the Board's motion to dismiss Plaintiffs' overbreadth and vagueness

20   claim, MTD 20-23, because that claim is based on a cognizable legal theory and supported by

21   sufficient factual allegations, Compl. ¶¶ 136-52. The Board's motion to dismiss confirms Plaintiffs'

22   allegation that California's definition of "land surveying" criminalizes virtually all informal

23   mapmaking by people without a license from the Board. That, in turn, confirms that Plaintiffs have

24   stated an overbreadth claim. As to Plaintiffs' vagueness claim, the Board only quotes the statutory

25   text and declares it not vague. But Plaintiffs' vagueness claim stems not solely from the statute's

26   incredibly broad definition of what constitutes "land surveying," but from the Board's confusingly

27   haphazard enforcement of that definition. What's more, the Board's reliance on the statutory text

28   here for its definition of the scope of "land surveying" cannot be squared with the atextual definition

it asserted in its preliminary-injunction briefing. The resulting lack of clarity as to what is regulated as "land surveying" and what is not leaves the public guessing as to which maps are prohibited and which are not, underscoring the vagueness problem.

### A.    Plaintiffs have stated an overbreadth claim.

The Board agrees that "[i]n the First Amendment context," a statute will be "invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S. 460, 473 (2010); *see* MTD 22. Plaintiffs plausibly allege that California's land surveying restriction suffers exactly that defect.

The Board's motion does not mention how courts evaluate overbreadth claims. The analysis contains three steps: *First*, construe the statutory text; *second*, determine the statute's "plainly legitimate sweep," if any; and *third*, gauge the amount of speech impacted relative to any legitimate sweep. *United States v. Hansen*, 25 F.4th 1103, 1107-11 (9th Cir. 2022). Courts are to be "especially" concerned about overbreadth when, as here, the statute "imposes criminal sanctions." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003); Cal. Bus. & Prof. Code § 8792(a), (i).

*First*, Plaintiffs allege that California's definition of land surveying "criminalizes a vast amount of informal mapmaking and information conveying by anyone without a surveyor's license." Compl. ¶ 143. That allegation comes straight from the statutory text. Cal. Bus. & Prof. Code § 8726(a)(1) requires a license to "[l]ocate[] . . . the alignment or elevation" of a fixed work, while § 8726(a)(3) requires a license to "[l]ocate[] . . . any property line or boundary of any parcel of land." To "locate," according to the dictionary, means merely "to determine or *indicate* the place, site, or limits of." *Locate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/locate (emphasis added) (last accessed Nov. 30, 2022). Anyone who indicates the "alignment or elevation" of a building or road or indicates the location of a property line, then, is practicing land surveying. Cal. Bus. & Prof. Code § 8726 (a)(1), (3). Subsections (a)(1) and (a)(3) further prohibit merely "retrac[ing]" the alignment of fixed works or the location of property lines. *Id*. Worse, subsection (a)(7) makes a criminal of anyone who would merely "[d]etermine[] the information shown or to be shown on any map or document," so long as that map or document ultimately depicted the alignment of a fixed work or the location of a property line. The restriction applies equally to a

surveyor authoritatively determining property lines for legal instruments like a deed, and to someone making non-authoritative map drawings. The Board doesn't seem to dispute this plain reading of the text. *See* MTD 21 (quoting statutory text and stating that Plaintiffs' drawings "fall[] squarely within section 8726(a)(1) and (3).").

*Second*, the Board does not identify the "plainly legitimate sweep" of its surveying definition in arguing against overbreadth. Elsewhere, though, the Board agrees with Plaintiffs that the licensure requirement is justified as far as it regulates legally binding, authoritative location determination, like property boundaries. *Compare* Compl. ¶ 157, *with* MTD 19, 25. Plaintiffs allege the Board's interest ends there. Compl. ¶¶ 92, 94, 163, 165.

But, *third*, California's definition of land surveying sweeps far beyond legally binding, authoritative location determinations. Compl. ¶¶ 96-97, 143; *see* Cal. Bus. & Prof. Code § 8726(a); MTD 14. Regulating virtually all *informal* mapmaking, Compl. ¶ 143, on top of authoritative location depictions, is an exceedingly "imprecise" method of "accomplish[ing] the State's objective[]." *Sec'y of State v. Joseph H. Munson Co.*, 467 U.S. 947, 967-68 (1984). Because the statute requires a license for "wholly-innocuous pictures," Compl. ¶ 137, it is "susceptible of regular application to protected expression" and therefore overbroad. *City of Houston*, 482 U.S. at 467.

The Board's response is that "the Act regulates conduct—the sale of site maps[,]" not speech. MTD 22. As a result, the Board says, Plaintiffs "have presented no evidence that the Act has ever been enforced against someone engaged in protected speech." *Id*. 22-23. Those two sentences get five separate things wrong. First, and as explained at length above, informal, non-authoritative drawings like Plaintiffs' (and like those regularly created by homeowners and contractors, *see, e.g.,* Compl. ¶ 39) are speech, not conduct. Second, the statute's reach is not limited to the act of *selling* site maps; it requires a license to create the drawing—to engage in the speech—in the first place. Cal. Bus. & Prof. Code § 8726(a); *see* Compl. ¶ 82. Third, selling speech is also protected by the First Amendment. *United States v. Nat'l Treas. Emps. Union*, 513 U.S. 454, 468 (1995) (a "prohibition on compensation [for speech] unquestionably imposes a significant burden on expressive activity" and is subject to First Amendment review). Fourth,

overbreadth doctrine is not governed by the Board's enforcement or lack thereof; it focuses on whether the statute is "susceptible of regular application to protected expression," *City of Houston*, 482 U.S. at 467, "because an overly broad statute may *chill* . . . speech," *Hansen*, 25 F.4th 1106-07 (emphasis added). And finally, the Board's complaint that Plaintiffs "have presented no evidence" is a non-starter. MTD 22. Plaintiffs are "not required to 'demonstrate' anything [] to survive a Rule 12(b)(6) motion to dismiss"; rather, they "only need[] to *allege* 'sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 721 (9th Cir. 2011) (citation omitted). Even at later stages, "[t]he party challenging the law need not necessarily introduce admissible evidence of overbreadth"; they must only "describe the instances of arguable overbreadth." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (en banc). Here, Plaintiffs have plausibly alleged that California's definition of land surveying "criminalizes a vast amount of informal mapmaking . . . by anyone without a surveyor's license." Compl. ¶ 143 (giving examples). They have, therefore, met their 12(b)(6) burden.

## B.      Plaintiffs have stated a vagueness claim.

As Plaintiffs have explained, "[s]tatutes that are insufficiently clear are void for three reasons." *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998); ECF 12-1 at 20. One is "to avoid punishing people for behavior that they could not have known was illegal"; another is "to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers"; and a final one is "to avoid any chilling effect on the exercise of First Amendment freedoms." *Id.* Regulations must be clear enough "to allow persons of 'ordinary intelligence a reasonable opportunity to know what is prohibited.'" *Id.* "[P]recision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Yamada v. Snipes*, 786 F.3d 1182, 1187 (9th Cir. 2015) (citation omitted). Plaintiffs have stated a claim that the surveying definition is unconstitutionally vague for three reasons.

*First*, Plaintiffs pled, based on local building department guidance and their own history of making non-authoritative site plan drawings, Compl. ¶¶ 27-60, that the definition is "so vague that there is no way to know it outlaws picture-drawing," *id.* ¶ 137.

*Second*, the Board's own litigation positions demonstrate vagueness. The Board admits that California law says anyone who "[l]ocates . . . or retraces the alignment or elevation" of fixed works *or* "[l]ocates . . . or retraces any property line or boundary" needs a surveying license to do so. MTD 21 (quoting Cal. Bus. & Prof. Code § 8726(a)). It now posits that "there is nothing vague about" that definition. *Id*. But the Board's view of what requires a surveyor license is a moving target. Elsewhere in this litigation, the Board has urged definitions removed from the statutory text and narrower than the textual definition it adopts here. *See* ECF 13 at 18-19 (relying on declarations, rather than the statutory text, to argue that surveying constitutes only "show[ing] the positions of fixed works . . . in relationship to property lines."); *id.* at 21-22 (stating that drawings can show fixed works and property lines, but not "measurements between structures and property lines"). In other words, the Board explained before that land surveying is only when someone shows the *distance between* a fixed work and a property line, but it now agrees with Plaintiffs that merely depicting the location of a fixed work *or* a property line requires a license. *See* MTD 21 ("The violation occurs when a[n] unlicensed person 'does or offers to do any one or more of the' activities" in section 8726(a).).

As the Complaint and the Board's shifting position demonstrates, people "must necessarily guess at [the statute's] meaning" to know whether their informal map is prohibited. *United States v. Johnson*, 626 F.3d 1085, 1090 (9th Cir. 2010) (citation omitted) (invalidating provision on vagueness grounds). That will chill Californians' First Amendment right to draw maps. *See Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) ("Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked." (cleaned up)).

*Third*, the vagueness of the statutory text has resulted in the kind of "arbitrary and discriminatory" enforcement the doctrine guards against. *Foti*, 146 F.3d at 638 (citation omitted). Against Plaintiffs' allegation that "thousands of contractors and homeowners . . . regularly make . . . site plan drawing[s]" just like Plaintiffs do, Compl. ¶ 144, the Board claims—citing exhibits not a part of the Complaint—only a handful of enforcement actions in the last decade. MTD 23. Nor is Plaintiffs' allegation "conclusory," *id*. 22, as the Board asserts. Rather, it is backed by

several examples of local governments *encouraging* lay people—as part of the basic building permit process—to make exactly the kind of drawings the Board has prohibited Plaintiffs from making and accepting those drawings. *See* Compl. ¶¶ 32-39, 44-45; *cf.* MTD 22 (Plaintiffs' site plans are regulated because they are used by local governments). If the Board "has a strong interest" in prohibiting such drawings, MTD 22, its enforcement would come with more "precision and guidance." *Yamada*, 786 F.3d at 1187 (citation omitted). Instead—perhaps because the Board itself does not know what constitutes land surveying—it appears to act "on an entirely ad hoc basis." *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 972 (9th Cir. 1996) (relying on questionable enforcement history to find policy unconstitutionally vague).

## IV. Plaintiffs have sufficiently pleaded substantive due process and equal protection claims.

This court should deny the Board's motion to dismiss Count III of Plaintiffs' Complaint because it is based on cognizable legal theories and is supported by sufficient factual allegations. Count III states an in-the-alternative[8] claim based on substantive due process and equal protection. Compl. ¶¶ 153-74. Both substantive due process and equal protection protect the right to pursue one's chosen profession under the rational basis standard. *Merrifield v. Lockyer*, 547 F.3d 978, 984-92 (9th Cir. 2008). This standard, though deferential to the government, is not "toothless." *Mathews v. Lucas*, 427 U.S. 495, 510 (1976).

Facts are critical under the rational basis test because plaintiffs bear the burden of using evidence to rebut any rational connection between challenged laws and a government interest. *See, e.g.*, *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 (1938) ("[T]he existence of facts supporting the legislative judgment is to be presumed . . . *unless in the light of the facts made known or generally assumed* it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators." (emphasis added)). Indeed, facts are so critical that denial of the opportunity to disprove presumed facts in a rational basis case "would deny due process." *Id*. Where plaintiffs can show facts demonstrating irrationality, they

---

[8] Ultimately, this court will not need to address Count III if it grants relief to Plaintiffs on a different count.

win. *E.g.*, *Merrifield,* 547 F.3d at 984-86 (discussing *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002), and *Cornwell v. Hamilton*, 80 F. Supp. 2d 1101 (S.D. Cal. 1999), in which plaintiffs made factual showings of irrationality); *id.* at 992 (noting record evidence of irrationality in that case). Accordingly, when Plaintiffs plead facts demonstrating irrationality, they can proceed with their case. *E.g.*, *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1183 (10th Cir. 2009) ("Viewing the factual allegations in the light most favorable to the plaintiffs, as we must, the complaint plausibly alleges that the Ordinance is not rationally related to a legitimate government interest. Although the plaintiffs may be unable to demonstrate through evidence that the Ordinance is irrational, the complaint makes out a claim for relief."). As shown below, the Board's motion to dismiss fails because Plaintiffs have pled sufficient facts—which must at this juncture be taken as true—to support their valid legal theories under substantive due process and equal protection.

First, as to substantive due process, the Board offers no argument. The Board says only that this is a rational basis case and therefore it wins. MTD 24. This is wrong. Under substantive due process, there must be (1) a legitimate purpose supporting the regulation and (2) a sufficient fit between that interest and the regulation as applied to the plaintiff. *Merrifield*, 547 F.3d at 986-92 (recognizing that "first aspect of the rational basis test" was met by "the government's interests in public health and safety and consumer protection" but then analyzing the fit between that interest and Merrifield's occupation). Accordingly, while a state can establish standards of qualification to practice an occupation, "any qualification must have a rational connection with the applicant's fitness or capacity to practice [his profession]." *Id.* at 986. Where the government applies a regulatory framework designed for a specific occupation to a person whose occupation is sufficiently different from that occupation, that person faces "an unconstitutional barrier on his liberty under the Due Process Clause." *Id*.

Here, Plaintiffs allege that their "occupation is so different from the occupation of professional land surveyors that the government's interest in regulating professional surveyors—ensuring accurate authoritative location survey products—is not implicated." Compl. ¶ 157. The Board too says that its interest in regulating land surveyors is "the integrity of property boundaries." MTD 25. But Plaintiffs allege they do not implicate that interest; California building departments

accept non-surveyor site plans, *id.* ¶¶ 31-58, Plaintiffs "only engage in activities related to non-authoritative location," "do not claim to be licensed professional surveyors," "do not claim that their site plans are surveys, certified, or authoritative; indeed, they clearly state that their site plans are not surveys, are not certified, and are not a substitute for a survey," *id.* ¶¶ 166-68; *see also id.* ¶¶ 54-75, 92-95, 113-14. Moreover, Plaintiffs allege that being subject to land surveyor licensing results in substantial burdens that are unrelated to their occupation. *Id.* ¶¶ 104, 172. These burdens include the need to obtain at least six years of additional education and experience, spend time as a certified land surveyor-in-training, pass four exams, and earn references from four existing licensees. *Id.* ¶¶ 98-105.

Plaintiffs' allegations therefore state a substantive due process cause of action as recognized in *Merrifield* and other cases. In *Craigmiles*, the plaintiffs just sold caskets but were regulated as licensed funeral directors. 312 F.3d at 224. This meant they had to complete either a year of school and a year of apprenticeship or two years of apprenticeship and pass an examination. *Id.* at 222. This "two years and thousands of dollars" for education and training was "undoubtedly a significant barrier." *Id.* at 224-25. The state defended the requirement as "insur[ing] that those who handle dead bodies may dispose of them safely and prevent the spread of communicable diseases," but plaintiffs "would not handle the bodies, much less engage in any embalming services," making those requirements irrelevant. *Id.* at 225. And without any "rational relationship to any of the articulated purposes of the state," the regulation was unconstitutional as applied to these plaintiffs. *Id.* at 228-29. Similarly, in *Cornwell*, the plaintiff was an "African hair braider" who just engaged in "natural hair care," and argued that California's requirement that she get a cosmetology license was thus unconstitutional as applied to her. 80 F. Supp. 2d at 1102, 1107. The state claimed this requirement was generally supported by the need to protect public health and safety. But based on record evidence, the court concluded that the onerous cosmetology licensing regime had so little overlap with the plaintiff's "limited range of activities" that, as applied to the plaintiff, it violated the constitution. *Id.* at 1108-18.

Given Plaintiffs' factual allegations, they have stated a claim that they are "*different* from" land surveyors "and should not be treated the *same* as them, because such treatment is an

unconstitutional barrier on [their] liberty under the Due Process Clause." *Merrifield*, 547 F.3d at 986; *e.g.*, Compl. ¶ 114 ("Ryan's business through MySitePlan.com, creating non-authoritative site plans for submission to California county and municipal building permit issuing departments, is substantially different than the business of surveyors, who prepare drawings and materials related to authoritative location."). Their substantive due process claim is therefore "based on . . . a cognizable legal theory" and alleges "sufficient facts" under that theory, *Yoshikawa*, 41 F.4th at 1114, and the Board's motion to dismiss it should be denied.

Second, as to equal protection, the Board both misstates Plaintiffs' argument and ignores the facts alleged in the Complaint. The Board claims this is a "class of one" case. MTD 23. It is not. Plaintiffs allege that they are similarly situated to "other non-surveyors, including contractors and homeowners with no surveyor training, who create non-authoritative site plans for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing departments purposes." Compl. ¶ 170. Plaintiffs further allege that California does not prohibit these other non-surveyors from creating non-authoritative site plans for these uses, *id.* ¶ 169, and—based on Plaintiffs' years of experience—that local building departments across California teach non-surveyors how to draw site plans just like Plaintiffs' and accept such site plans from non-surveyors, *id.* ¶¶ 31-60. Because the Board's interest in regulating the practice of land surveying is "the integrity of property boundaries," MTD 25, Plaintiffs allege there is no legitimate reason to prohibit their non-authoritative drawings while allowing other people's non-authoritative drawings. Compl. ¶ 171.

The equal protection clause requires that "similarly situated persons must be treated equally." *Merrifield*, 547 F.3d at 992. A plaintiff need not be "similar in all respects to" the privileged group; instead, the plaintiff "must be similar in those respects that are relevant to [the government's] own interests and its policy." *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017); *accord City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447-48 (1985) (zoning regulation treating group "homes for the mentally retarded" differently than other kinds of group living was unconstitutional because, even though "the mentally retarded as a group are indeed different from" the other groups that could use the land, that difference was irrelevant

because it did not "threaten legitimate interests of the city in a way that other permitted uses . . . would not"). Accordingly, in *Merrifield*, the court declared a licensing requirement unconstitutional because it required the plaintiff to obtain a license but did not require other people to get a license based on a distinction unrelated to public health and safety. The state asserted that Merrifield required a license because he may encounter certain pesticides even though he did not use them. 547 F.3d at 986-88. But the state did not require a license for other non-pesticide pest controllers. *Id.* at 988-89. The distinction was drawn only on the kinds of animal(s) the person controlled, not on their likelihood of encountering pesticides. *Id.* at 989, 991. As the court explained, there was "not a legitimate interest implicated by the classification" because the exception for others cut against the "state's health and public safety interest." *Id.* at 991.

Here, the Board's only argument is that it has enforced the challenged laws against a small number of other non-licensed people. MTD 23. But it bases this argument on facts outside the Complaint. *Id.* Moreover, Plaintiffs more specifically allege not that some, but that "hundreds, if not thousands, of non-surveyors in California routinely submit site plans" just like Plaintiffs do, and have done so for years, without any issue. Compl. ¶¶ 27-52, 169-72. Regardless, the Board's motion elides its own admission that some non-authoritative drawings are regulated and others are not. MTD 22-23.[9] And for purposes of Plaintiffs' equal protection claim, the Complaint says that other people get to do the same non-authoritative drawings, without a license, that Plaintiffs are threatened for doing without a license. Compl. ¶¶ 168-73. Those are the facts that this court must consider and those alleged facts support a cognizable equal protection theory of the case under *Merrifield*. It is, therefore, legally sufficient and the Board's motion to dismiss it should be denied.

## CONCLUSION

For the reasons stated in Plaintiffs' response in opposition, this Court should deny Defendants' motion to dismiss this case.

---

[9] The Board's argument here is thin, but it made the same argument in its opposition to the motion for a preliminary injunction. ECF 13 at 18-19, 21-22. Ultimately, this argument also demonstrates the First Amendment, Overbreadth and Vagueness, and Substantive Due Process problems here: Thousands of other people may well be in violation of the law for just drawing the non-authoritative pictures that local California government agencies teach them to draw and accept from non-surveyors. MTD 23; Compl. ¶ 51.

1   Respectfully submitted this 2nd day of December 2022.

2

3   **THE KERNAN LAW FIRM, APC**                        <u>/s/ Paul V. Avelar</u>
    S. Michael Kernan (CA Bar no. 181747)               Paul V. Avelar* (AZ Bar no. 023078)
4   9663 Santa Monica Blvd., Suite 450                  **INSTITUTE FOR JUSTICE**
    Beverly Hills, California 90210                     398 S. Mill Ave., Suite 301
5   Tel: (310) 490-9777                                 Tempe, AZ 85281
    Fax: (310) 861-0503                                 Tel.: (480) 557-8300
6   Email: MKernan@kernanlaw.net                        Fax: (480) 557-8305
                                                        Email: pavelar@ij.org
7                                                       *Counsel for Service*

8                                                       Michael Greenberg* (DC Bar no. 1723725)
                                                        **INSTITUTE FOR JUSTICE**
9                                                       901 N. Glebe Rd., Suite 900
                                                        Arlington, VA 22203
10                                                      Tel.: (703) 682-9320
                                                        Fax: (703) 682-9321
11                                                      Email: mgreenberg@ij.org

12
                                                        *Admitted *pro hac vice*
13

14                          *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of December 2022, I caused the forgoing

document to be filed with the Court's CM/ECF system and served on the counsel of record for

Defendants by the Court's CM/ECF system.

/s/ Paul V. Avelar
Paul V. Avelar
*Attorney for Plaintiffs*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS