UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CROWNHOLM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RICHARD B. MOORE, et al.,<br><br>Defendants. | No.  2:22-cv-01720-DAD-CKD<br><br>ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION<br><br>(Doc. No. 12) |

This matter came before the court on December 6, 2022 for a hearing on a motion for a preliminary injunction filed on October 18, 2022 on behalf of Ryan Crownholm and Crown Capital Adventures, Inc. ("plaintiffs") seeking declaratory and injunctive relief against Richard B. Moore, Rossana D'Antonio, Michael Hartley, Fel Amistad, Alireza Asgari, Duane Friel, Kathy Jones Irish, Coby King, Elizabeth Mathieson, Paul Novak, Mohammad Qureshi, Frank Ruffino, Wilfredo Sanchez, and Christina Wong ("defendants"), in their official capacities as officers and members of the California Board for Professional Engineers, Land Surveyors, and Geologists (the "Board").  (Doc. No. 12.)  Attorney Paul Avelar appeared by video for plaintiffs.  Deputy Attorney General Sharon O'Grady appeared by video on behalf of defendants.  For the reasons explained below, the court will deny plaintiffs' motion for a preliminary injunction.

/////

1

**BACKGROUND**

Plaintiff Crown Capital Adventures, Inc., a Delaware corporation registered as a foreign corporation in California, operates the website MySitePlan.com, which creates and sells site plans in nearly all states of the United States, including California.  (Doc. No. 12-2 at ¶¶ 5, 49.)  Plaintiff Ryan Crownholm is the sole shareholder, director, and officer of Crown Capital Adventures, Inc., as well as the sole owner and operator of MySitePlan.com.  (*Id.* at ¶¶ 4, 6.)  Mr. Crownholm is not authorized to practice land surveying in California, as he is neither a licensed surveyor nor a civil engineer with a pre-1982 license.  (*Id.* at ¶ 7); *see* Cal. Bus. & Prof. Code § 6731 (stating that civil engineers who became licensed before January 1, 1982 may also practice land surveying).  In California, plaintiffs create site plans using publicly available geographic information system mapping data, satellite imagery, and client-provided information, and then sell them to customers for planning, infrastructure management, general information, and submission to county and municipal building permit departments.  (Doc. No. 1 at ¶¶ 2, 123.)

The Board is a consumer protection agency within the California Department of Consumer Affairs.  (*See* Doc. No. 13-1 at 42.)  The Board regulates the practice of land surveying through administering the California Professional Land Surveyors' Act (the "Act"), California Business & Professions Code §§ 8700 through 8805.  Section 8708 of the Act restricts the practice of land surveying in California to those who have a license or are specifically exempted, and § 8790 grants the Board disciplinary powers to enforce this restriction.  California law defines the practice of land surveying to include, among other things, a person who "[l]ocates, relocates, establishes, reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within the practice of civil engineering"; "[l]ocates, relocates, establishes, reestablishes, or retraces any property line or boundary of any parcel of land, right-of-way, easement, or alignment of those lines or boundaries"; "[d]etermines the information shown or to be shown on any map or document prepared or furnished in connection with any one or more of the functions described in [this statute]"; or "[p]rocures or offers to procure land surveying work for themselves or others."  Cal. Bus. & Prof. Code § 8726(1), (3), (7), (9).

/////

2

On December 28, 2021, the Board issued a citation order to plaintiffs for offering and practicing land surveying without legal authorization, in violation of the Act, on the grounds that the site plans that they offered through MySitePlan.com depicted "the location of property lines, fixed works, and the geographical relationship thereto," falling "within the definition of land surveying." (Doc. Nos. 12-1 at 11, 12; 12-3 at 11.)  Plaintiffs' website includes a disclaimer reading, "THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR REPLACE ONE." (Doc. No. 13-2 at ¶ 9.)  However, the website also displays statements such as: "Guaranteed Acceptance," "Widely accepted by building departments and HO's for residential permitting purposes," "OUR SITE PLANS ARE GREAT FOR [¶] Demolition permits. . . . [¶] Conditional Use Permits. . . . [¶] Construction Permits. . . . [¶] Sign Permits. . . . [¶] Residential and Commercial Site Plans. . . ." (*Id.*)  The citation order issued by the Board directed plaintiffs to pay a fine of $1,000 and to "cease and desist from violating" California Business & Professions Code §§ 8792(a) and (i) and 8726(a)(1), (3), and (9).  (Doc. Nos. 12-3 at 10; 13 at 12.)  California Business & Professions Code § 8792(a) and (i) make it a misdemeanor to "practice[], or offer[] to practice, land surveying in this state" or "manage[] or conduct[] as manager, proprietor, or agent, any place of business from which land surveying work is solicited, performed, or practiced" without legal authorization.

Plaintiffs were advised that they could appeal the citation by requesting an informal conference, a hearing before an administrative law judge ("ALJ"), or both.  (Doc. No. 13 at 13.)  On January 20, 2022, plaintiffs submitted a notice of appeal and requested a hearing before an ALJ.  (*Id.*)  Plaintiffs withdrew the notice of appeal on September 22, 2022, less than one week before the requested hearing scheduled for September 27, 2022, and they expressly accepted the terms of the Board's citation and agreed not to appeal it.  (Doc. No. 13-1 at 4–5, 42.)

On September 29, 2022, plaintiffs filed a complaint against defendants seeking to declare the Act, and in particular, California Business & Professions Code §§ 8726(a)(1), (7), and (9), and 8792(a) and (i), unconstitutional on its face and as applied to them and to enjoin its enforcement.  (Doc. No. 1 at 29.)  Plaintiffs assert three causes of action in their complaint.  The first claim, brought under 42 U.S.C. § 1983 as an as-applied challenge, asserts that defendants

3

violated the First Amendment of the U.S. Constitution by restraining how plaintiffs create and disseminate non-authoritative site plans to customers "for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing department purposes." (*Id.* at 20–22.)  Plaintiffs allege that the way defendants apply the Act is a "content- and speaker-based restriction on the ability to use and generate information." (*Id.* at ¶ 128.)  Plaintiffs' second claim, brought under 42 U.S.C. § 1983 as a facial challenge, asserts that California Business & Professions Code § 8726 is "unconstitutional on its face because it so vague that there is no way to know that it outlaws picture-drawing and/or it is so overbroad that it criminalizes innumerable wholly-innocuous pictures." (*Id.* at 23.)  Plaintiffs bring their third cause of action under the Fourteenth Amendment's Due Process and Equal Protection Clauses. (*Id.* at 26.)

On October 18, 2022, plaintiffs filed the pending motion for a preliminary injunction seeking to enjoin enforcement of the Act.  (Doc. No. 12.)  On November 1, 2022, defendants filed their brief in opposition to the pending motion, and plaintiffs filed their reply thereto on November 14, 2022.  (Doc. Nos. 13, 14.)

# ANALYSIS

## A.   Abstention

### 1.   *Younger* Abstention

Defendants first assert that the court need not consider the merits of the pending motion because the *Younger* abstention doctrine applies here.  (Doc. No. 13 at 14.)  In *Younger*, the U.S. Supreme Court held that "absent extraordinary circumstances, a federal court may not interfere with a pending state criminal prosecution." *Potrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 882 (9th Cir. 2011) (citing *Younger v. Harris*, 401 U.S. 37, 54 (1971)).  The Supreme Court has since extended *Younger* abstention to two additional categories of cases identified in its decision in *New Orleans Pub. Service, Inc. v. Council of New Orleans* ("*NOPSI*"), 491 U.S. 350, 367–68 (1989):  "'[1] state civil proceedings that are akin to criminal prosecutions, and . . . [2] state civil proceedings that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Herrera v. City of Palmdale*, 918 F.3d 1037, 1043 (9th Cir. 2019) (quoting *ReadyLink*

1  *Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014)).  Together, these

2  three categories of cases are known as the *NOPSI* categories.  *Id.* at 1044.

3        "To warrant *Younger* abstention, a state civil action must fall into one of the *NOPSI*

4  categories, and must also satisfy a three-part inquiry:  the state proceeding must be (1) 'ongoing,'

5  (2) 'implicate important state interests,' and (3) provide 'an adequate opportunity . . . to raise

6  constitutional challenges.'"  *Id.* (quoting *Middlesex Cnty. Ethics Comm. v. Garden State Bar*

7  *Ass'n*, 457 U.S. 423, 432 (1982)).  In addition, the Ninth Circuit has "articulated an implied

8  fourth requirement that (4) the federal court action would 'enjoin the proceeding, or have the

9  practical effect of doing so.'"  *Potrero Hills Landfill, Inc.*, 657 F.3d at 882 (quoting

10  *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1148–49 (9th Cir. 2007)).  "For *Younger* to

11  apply, all four requirements must be 'strictly satisfied.'"  *Barra v. City of Kerman*, No. 1:08-cv-

12  01909-OWW-GSA, 2009 WL 1706451, at *5 (E.D. Cal. June 9, 2009) (citing

13  *AmerisourceBergen Corp.*, 495 F.3d at 1149).

14        At the hearing on the pending motion for a preliminary injunction, defendants argued that

15  the first requirement for abstention under *Younger* applies here because plaintiffs agreed to the

16  cease-and-desist order and are subject to further proceedings if they were to violate it.  However,

17  the court finds that the first requirement of *Younger* is absent.  On September 21, 2022, plaintiffs

18  withdrew their notice of appeal and expressly accepted the terms of the citation, including

19  agreeing not to appeal the Board's citation.  (Doc. No. 13-1 at 4, 42.)  Because plaintiffs agreed

20  not to appeal the citation, defendants can point to no ongoing state proceedings.  The fact that the

21  Board could take further measures *if* plaintiffs were to violate the cease-and-desist order does not

22  mean that those civil proceedings are currently ongoing.  Thus, abstention under *Younger* would

23  not appear to be appropriate at this time.

24        2.    <u>*Pullman* Abstention</u>

25        Defendants also argue that the court should abstain from deciding the pending motion for

26  a preliminary injunction under the doctrine explained in *Railroad Commission of Texas v.*

27  *Pullman Co.*, 312 U.S. 496 (1941), which is known as "*Pullman* abstention."  (Doc. No. 13 at

28  16.)  Abstention under *Pullman* "is an extraordinary and narrow exception to the duty of a district

court to adjudicate a controversy." *Wolfson v. Brammer*, 616 F.3d 1045, 1066 (9th Cir. 2010) (internal alterations and quotation marks omitted); *see also Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) ("*Pullman* abstention should rarely be applied.").  It is appropriate only when all three of the following factors are satisfied:

> (1) The case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the proper resolution of the possible determinative issue of state law is uncertain.

*Porter*, 319 F.3d at 492 (internal alteration and quotation marks omitted).

The Ninth Circuit has observed that the first *Pullman* requirement for abstention "is 'almost never' satisfied in First Amendment cases." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 784 (9th Cir. 2014) (quoting *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir. 1989)); *see also Wolfson*, 616 F.3d at 1066 (specifically stating that *Pullman* abstention "is generally inappropriate when First Amendment rights are at stake") (internal alterations and quotation marks omitted).  This is because "there is a risk in First Amendment cases that the delay that results from abstention will itself chill the exercise of the rights that the plaintiffs seek to protect by suit."  *Porter*, 319 F.3d at 487.  Moreover, the Ninth Circuit has stated that "we do not believe that the norm against *Pullman* abstention in First Amendment cases must be limited to instances in which the plaintiff challenges a statute that directly regulates expression.  Government action that does not directly prohibit expressive activity may nonetheless raise profound First Amendment concerns."  *Courthouse News*, 750 F.3d at 787.

Delaying the adjudication of plaintiffs' First Amendment claims would contravene the First Amendment's policy of mitigating any chilling influences on the exercise of rights.  Indeed, plaintiffs themselves allege that the "application of California's surveying definition will chill First Amendment rights."  (Doc. No. 12-1 at 29.)  Defendants have also failed to explain how addressing plaintiffs' First Amendment challenge is not within this federal court's purview or

/////

/////

1    what alternatives plaintiffs would have to remedy the alleged constitutional wrongs.

2    Accordingly, the court concludes that the first factor required for *Pullman* abstention is not

3    satisfied here, making abstention under *Pullman* inappropriate.

4    **B.**    **Preliminary Injunction**

5            The proper legal standard for preliminary injunctive relief requires a party to demonstrate

6    "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the

7    absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

8    is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting

9    *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v.*

10    *Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that

11    irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'")

12    (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).  The Ninth

13    Circuit has also held that an "injunction is appropriate when a plaintiff demonstrates . . . that

14    serious questions going to the merits were raised and the balance of hardships tips sharply in the

15    plaintiff's favor."  *All. for Wild Rockies*, 632 F.3d at 1134–35 (citation omitted).  The party

16    seeking the injunction bears the burden of proof as to each of these elements.  *Klein v. City of San*

17    *Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844

18    F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm

19    sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a

20    prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy

21    that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

22    *Winter*, 555 U.S. at 22.

23         1.    <u>Likelihood of Success on the Merits</u>

24            The likelihood of success on the merits is the most important *Winter* factor.  *See Disney*

25    *Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).  Plaintiffs bear the burden of

26    demonstrating that they are likely to succeed on the merits of their claims or, at the very least, that

27    "serious questions going to the merits were raised."  *All. for Wild Rockies*, 632 F.3d at 1131.  For

28    the reasons stated below, the court concludes that plaintiffs have neither shown a likelihood of

success on the merits nor raised serious questions going to the merits of their First Amendment freedom of speech, void for vagueness, and overbreadth claims.[1]

      a.    *Plaintiffs Have Failed to Show That the Law and Facts Clearly Favor Their Argument That the Act Violates the First Amendment*

      i.    Plaintiffs Have Not Clearly Shown That the Act Is Content Based

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Family & Life Advocates v. Becerra* ("*NIFLA*"), ___ U.S. ___, 138 S. Ct. 2361, 2371 (2018). Under the First Amendment, a government cannot "restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). A law that is content based is generally subject to strict scrutiny. *See id.* at 164. A law may be content based in two ways: it may be content based "on its face" or alternatively, it may rely on a content-based "purpose and justification." *Id.* at 163–64. "A regulation of speech is facially content based under the First Amendment if it 'target[s] speech based on its communicative content'—that is, if it 'applies to particular speech because of the topic discussed or the idea or message expressed.'" *City of Austin, Texas v. Reagan Nat'l Advert. of Austin, LLC*, ___ U.S. ___, 142 S. Ct. 1464, 1471 (2022) (alteration in original) (quoting *Reed*, 576 U.S. at 163).

Plaintiffs argue that the California licensing requirement at issue here is content based on its face because it singles out a particular form of speech: the depiction of "property lines, fixed works, and the geographical relationship thereto." (Doc. No. 12-1 at 19.) Specifically, they contend that "[i]f Plaintiffs instead created and disseminated drawings depicting virtually anything besides 'property lines, fixed works, and the geographical relationship thereto,' . . . the Board would not have applied the surveyor-licensing law to restrict the drawings." (Doc. No. 12-

---

[1] Plaintiffs bring their third cause of action under the Fourteenth Amendment's Due Process and Equal Protection Clauses. However, neither their motion for a preliminary injunction nor their reply in support of that motion contain any argument to that effect. Accordingly, the court will not address plaintiffs' third cause of action in addressing their motion for a preliminary injunction.

1 at 19.)  This argument is both circular and unavailing to plaintiffs.  Merely defining the conduct

to be regulated, i.e., "locat[ing] property lines," and "establish[ing] . . . the alignment or elevation

for . . . fixed works embraced within the practice of civil engineering," does not make the Act

content based.  Cal. Bus. & Prof. Code § 8726(a)(1), (3); *see Kagan v. City of New Orleans*, 957

F. Supp. 2d 774, 779 (E.D. La. 2013), *aff'd sub nom. Kagan v. City of New Orleans, La.*, 753

F.3d 560 (5th Cir. 2014) (maintaining that the mere fact that the licensing scheme referred to the

conduct that it regulated did not mean that it was content based).  Adopting plaintiffs' position

that the Act is content based because it describes the content to be regulated would

inappropriately blur the distinction between speech and conduct.  *See United States v. O'Brien*,

391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of

conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to

express an idea.").

The court finds nothing on the face of the Act suggesting that it is directed at any

message, speaker, or group of speakers.  The court is also unable to discern any viewpoints,

topics, or subject matters that the Act singles out for differential treatment.  *See Reagan Nat'l

Advert.*, 142 S. Ct. at 1472 (finding that a sign ordinance was not subject to strict scrutiny because

it did not "single out any topic or subject matter for differential treatment").  The Act's definition

of land surveying does not mention speech at all and, instead, focuses on the non-expressive

conduct that falls within the purview of the Act, for example, "establish[ing] . . . the alignment or

elevation for . . . fixed works embraced within the practice of civil engineering."  Cal. Bus. &

Prof. Code § 8726(a)(1).  Additionally, the Act distinguishes not based on the speaker but based

on whether one is legally authorized to practice land surveying.  Cal. Bus. & Prof. Code § 8708.

There is no indication that California's licensing scheme prevents certain speakers or groups of

speakers from obtaining a license based on anything but their qualifications.

Next, the court must determine whether plaintiffs are likely to show that the Act relies on

a content-based purpose or justification because of disagreement with the message it conveys.

*See Reed*, 576 U.S. at 164; *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011) ("Even if the

hypothetical measure on its face appeared neutral as to content and speaker, its purpose to

suppress speech and its unjustified burdens on expression would render it unconstitutional."). Here, the court also finds nothing to indicate that the Act was motivated by a desire to suppress any message based on disagreement with it.  In fact, in their papers, plaintiffs offered no evidence or argument that they intend to express any idea or message through their distribution of land surveying products.  At the hearing on the pending motion for a preliminary injunction, when asked by the court what idea plaintiffs were trying to convey with their site plans, plaintiffs responded that they were trying to portray the distance between a fixed work and a property line. Plaintiffs' response does not go beyond land surveying conduct or claim a "significant expressive element" in their site plans.  *See HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676, 682, 685 (9th Cir. 2019) (finding that the challenged ordinance—which prohibited processing transactions for unlicensed properties—only regulated conduct, and that this conduct lacked any "significant expressive element").

Rather than regulating the practice of land surveying to suppress speech or expression, California's purpose and justification for the Act are directed at the non-speech-related risks of land surveying.  *See Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F. 3d 389, 409 (9th Cir. 2015) (finding that the district court did not err in finding that plaintiff did not show a likelihood of success on the merits with respect to its First Amendment Claim because the challenged ordinance did not target expressive activity).  Any limitations on speech are incidental to the Act's purpose, which is "to safeguard property and public welfare."  Cal. Bus. & Prof. Code § 8708.  According to declarations defendants filed in support of their position, the consequences of providing incorrect land surveys include incorrect locations of property lines, gaps in the location of property ownership rights, and the construction of fixed improvements that encroach on required setbacks or on the property line itself, all of which can injure the value of the client's land, create disputes with neighbors regarding property, and result in litigation.  (*See* Doc. Nos. 13-1 at ¶ 15; 13-2 at ¶ 6; 13-3 at ¶ 4.)  The Act's licensing requirement helps ensure that those practicing land surveying are qualified and competent to do so and follow the applicable laws. (*See* Doc. Nos. 13-1 at ¶ 4; 13-2 at ¶ 4; 13-3 at ¶ 3.)

/////

1          ii.      Plaintiffs Have Not Clearly Shown That the Act Regulates

2                   Speech Rather Than Conduct

3          The First Amendment does not protect "nonexpressive conduct" or "prevent restrictions

4   directed at . . . conduct from imposing incidental burdens on speech." *Sorrell*, 564 U.S. at 567.

5   Because "[i]t is possible to find some kernel of expression in almost every activity a person

6   undertakes," an activity containing a "kernel of expression" is not sufficient to bring the conduct

7   within the First Amendment's protection. *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  The

8   Supreme Court has recently reaffirmed[2] that "[s]tates may regulate professional conduct, even

9   though that conduct incidentally involves speech." *NIFLA*, 138 S. Ct. at 2372; *see also Tingley v.*

10  *Ferguson*, 47 F.4th 1055, 1077, 1078 (9th Cir. 2022) (applying *NIFLA* and finding that

11  Washington's conversion therapy law was a regulation on conduct that incidentally burdened

12  speech and that it survived rational basis review).  "While drawing the line between speech and

13  conduct can be difficult, [the Supreme Court's] precedents have long drawn it." *NIFLA*, 138 S.

14  Ct. at 2373.

15         Based on the record before the court, it appears that California's restrictions on land

16  surveying regulate professional *conduct* by requiring a license and that this requirement does not

---

17  [2]  A long line of Supreme Court precedent has upheld states' power to regulate professional

18  conduct by mandating professional licensing requirements and prohibiting unlicensed practice.
    *See, e.g.*, *Dent v. West Virginia*, 129 U.S. 114, 122 (1889) ("As one means to this end [of securing

19  the general welfare] it has been the practice of different states, from time immemorial, to exact in
    many pursuits a certain degree of skill and learning upon which the community may confidently

20  rely . . . . The nature and extent of the qualifications required must depend primarily upon the
    judgment of the state as to their necessity.  If they are appropriate to the calling or profession, and

21  attainable by reasonable study or application, no objection to their validity can be raised because
    of their stringency or difficulty."); *Hawker v. New York*, 170 U.S. 189, 195 (1898) ("It is within

22  the power of the legislature to enact such laws as will protect the people from ignorant pretenders,
    and secure them the services of reputable, skilled, and learned men.") (quotation marks omitted);

23  *Schware v. Bd. of Bar Exam. of N.M.*, 353 U.S. 232, 239 (1957) ("A State can require high
    standards of qualification, such as good moral character or proficiency in its law, before it admits

24  an applicant to the bar, but any qualification must have a rational connection with the applicant's
    fitness or capacity to practice law."); *Thomas v. Collins*, 323 U.S. 516, 545 (1945) (Jackson, J.,

25  concurring) ("The modern state owes and attempts to perform a duty to protect the public from
    those who seek for one purpose or another to obtain its money.  When one does so through the

26  practice of a calling, the state may have an interest in shielding the public against the
    untrustworthy, the incompetent, or the irresponsible, or against unauthorized representation of

27  agency.  A usual method of performing this function is through a licensing system.").

28

1    impose more than an incidental burden on speech.  The Act prevents one from practicing land

2    surveying—i.e., "relocat[ing] . . . the alignment or elevation for any of the fixed works embraced

3    within the practice of civil engineering"—without being licensed.  Cal. Bus. & Prof. Code §

4    8726(a)(1).  It does not prevent individuals from speaking about land surveying topics.  For

5    example, the Act does not prevent an unlicensed person from making a speech urging people to

6    adopt certain land surveying practices.  *See Thomas v. Collins*, 323 U.S. at 544 (Jackson, J.,

7    concurring) ("A state may forbid one without its license to practice law as a vocation, but I think

8    it could not stop an unlicensed person from making a speech about the rights of man or the rights

9    of labor, or any other kind of right, including recommending that his hearers organize to support

10   his views. Likewise, the state may prohibit the pursuit of medicine as an occupation without its

11   license but I do not think it could make it a crime publicly or privately to speak urging persons to

12   follow or reject any school of medical thought.").  Because the Act regulates what activities fall

13   within the ambit of land surveying requiring licensure, not what one can say, it is a regulation on

14   conduct, not speech.  *See Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60

15   (2006) ("[T]he Solomon Amendment regulates conduct, not speech.  It affects what law schools

16   must *do*—afford equal access to military recruiters—not what they may or may not *say*.").  While

17   it might be possible to find a "kernel of expression" in the practice of land surveying, that is

18   insufficient to trigger strict scrutiny.  *See Stanglin*, 490 U.S. at 25.

19                          iii.     Plaintiffs Have Not Clearly Shown That the Act Does Not

20                                   Withstand Scrutiny

21           Having determined that the Act regulates professional conduct with no more than an

22   incidental burden on speech, the court must determine what level of scrutiny is appropriately

23   applied in reviewing the Act.  The Ninth Circuit recently stated in *Tingley* that "*Pickup*'s

24   treatment of regulations of professional conduct incidentally affecting speech survives *NIFLA*."

25   47 F.4th at 1076.  In *Pickup v. Brown*, *abrogated on other grounds by NIFLA*, 740 F.3d 1208 (9th

26   Cir. 2014), the Ninth Circuit subjected a regulation of professional conduct that had an incidental

27   effect on speech to the rational basis review test.  *Id.* at 1231.  Here, because the Act regulates

28   professional conduct, rational basis review is also appropriate.  "A law is 'presumed to be valid

                                                     12

and will be sustained' under rational basis review if it is 'rationally related to a legitimate state interest.'"  *Tingley*, 47 F.4th at 1078.

According to the Act, the licensing requirement at issue advances California's legitimate interest in "safeguard[ing] property and public welfare."  Cal. Bus. & Prof. Code § 8708. Without a doubt, safeguarding property and the public welfare is an important and legitimate state interest.  According to a declaration submitted by defendants, and as noted above, surveying incorrectly done "may result in incorrect locations of property lines, gaps in the location of property ownership rights, or the construction of fixed improvements that encroach on required setbacks, or even on the property line itself, potentially injuring the value of the client's land, creating disputes with neighbors whose property lines are affected, and even resulting in litigation."  (Doc. No. 13-1 at ¶ 15.)

The means used to effectuate this purpose is rationally related to California's interests. *See F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) ("[A] legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.").  California's legislature may have decided not to exempt land surveys with disclaimers from its licensing requirement to prevent building permits from being issued based on incorrect property lines.  The licensing requirement helps ensure that land surveyors have demonstrated competency and knowledge of relevant state laws and that licensees who violate those standards are subject to discipline.  (Doc. Nos. 13-1 at ¶ 4; 13-2 at ¶ 4; 13-3 at ¶ 3.)  As explained above, there is no indication that the challenged Act is in any way related to the suppression of ideas.  Rather, the Act merely targets the non-expressive consequences of land surveying without a license.

Once a person obtains the required qualifications, they may sell site plans for building permits that include the depiction of property lines and measurements.  *See* Cal. Bus. & Prof. Code § 8708.  Even without obtaining a license, plaintiffs remain free to sell site plans that are not land surveying products, and they can speak with the public and their clients regarding any subject they choose.  (*See* Doc. No. 13 at 25.)  They can also continue doing business in California by offering site plans that do not require a land surveyor's license.  (*See id.* at 29.)  For

13

these reasons, the court concludes that plaintiffs are unlikely to be successful in showing that the Act does not meet rational basis review.

Moreover, defendants have presented an alternative basis upon which to uphold the Act against plaintiffs' First Amendment challenge. Defendants argue in their opposition that the Act would likely be upheld because there is a long tradition of states regulating land surveying. (Doc. No. 13 at 22.) Plaintiffs do not address this argument in their reply. (Doc. No. 14.) The court finds defendants' reasoning in this regard to be persuasive.

The Supreme Court acknowledged in *NIFLA* that governments may impose even content-based restrictions on speech where there is a "persuasive evidence . . . of a long (if heretofore unrecognized) tradition [of regulation] to that effect." *NIFLA*, 138 S. Ct. at 2372 (internal quotations and citations omitted). Recently, in *Tingley*, the Ninth Circuit relied on this principle as an alternative basis for upholding a challenged Washington law. 47 F.4th at 1080.

Here, there is persuasive evidence before the court establishing a long history of regulating land surveying. California has regulated land surveyors since 1891. (Doc. Nos. 13 at 22; 13-6 at 6 –8.)[3]  California's definition of land surveying has remained relatively unchanged since 1941 and, in that time, has not specifically exempted site plans disclaiming that they are not legal surveys. (Doc. No. 13-6 at 17–79.) Declarations that defendants submitted indicate that all 50 states and the U.S. territories require that land surveyors be licensed. (Doc. Nos. 13-1 at ¶ 16; 13-2 at ¶ 4; 13-5 at ¶ 4.) Moreover, neither party has cited any case in any jurisdiction striking down a state's definition of land surveying or requirement that persons engaged in land surveying must be licensed.

/////

---

[3]  Defendants request that this court take judicial notice of various versions of California statutes regulating land surveying since 1891. (Doc. No. 13-6.) Plaintiffs do not object to defendants' request for judicial notice. Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, the court grants defendants' request and takes judicial notice of the California statutes. *See id.*; *see also Intri-Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

Thus, defendants have shown that the Act likely satisfies the requisite scrutiny, whether the court views it as falling under the exception from heightened scrutiny for regulations on professional conduct that incidentally involve speech or as falling under the tradition of land surveying regulations.  *See Tingley*, 47 F.4th at 1080.[4]

b.  *Plaintiffs Have Failed to Show That the Law and Facts Clearly Favor Their Argument That the Act Is Vague and Overbroad*

Plaintiffs raise a facial constitutional challenge to California's definition of land surveying set forth in California Business & Professions Code § 8726 on vagueness and overbreadth grounds.  As to this challenge, plaintiffs confront a "heavy burden" in advancing their claim. *Nat'l Endowment for the Arts v. Finle*y, 524 U.S. 569, 580 (1998).  As explained below, the court concludes that plaintiffs have not clearly shown that the challenged Act is void for vagueness or overbroad.

i.  Plaintiffs Have Not Clearly Shown that the Act Is Void for Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."  *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The vagueness doctrine reflects two related requirements.  First, "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly."  *Id.* at 108.  Ordinarily, all that is required to satisfy this due process concern is "'fair notice' of the conduct a statute proscribes."  *Sessions v. Dimaya*, __U.S.__, 138 S. Ct. 1204, 1212 (2018).  "But where First Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required, and courts ask whether language is sufficiently murky that speakers will be compelled to steer too far clear of any forbidden areas."  *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019) (internal citations, quotations, and brackets omitted). Second, the vagueness doctrine demands that laws "provide explicit standards for those who

---

[4]  Defendants also argue that the Act would pass muster as a regulation of commercial speech. (Doc. No. 13 at 23.)  Because the court has determined that plaintiffs have not shown a likelihood of success on the merits of their claims, it need not address defendants' commercial speech argument in this order.

apply them" in order to avoid "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108.  Thus, when a statute's enforcement depends on a "completely subjective standard" it is constitutionally suspect. *Id.* at 113.

Although "vagueness concerns are more acute when a law implicates First Amendment rights," *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001), "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).  Rather, "[t]he touchstone of a facial vagueness challenge in the First Amendment context . . . is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *Cal. Teachers Ass'n*, 271 F.3d at 1152.  It follows that "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'" *Id.* at 1151 (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)).  At bottom, facial invalidation of a statute is "strong medicine" that should be employed "sparingly and only as a last resort." *Finley*, 524 U.S. at 580.  Thus, the party seeking facial invalidation, even in the First Amendment context, faces a "heavy burden" in advancing their claim. *Id.*

Plaintiffs advance three arguments in contending that they are likely to succeed on the merits of their claim that the Act's land surveying definition is void for vagueness.  (Doc. No. 12-1 at 28–30.)  First, plaintiffs contend that "the land surveying definition did not give Plaintiffs fair notice that their site plan drawings were illegal," that "MySitePlan.com has been in business since 2013 and has done thousands of drawings in California" and California building departments had accepted plaintiffs' drawings without objection.  (*Id.* at 28.)  Second, they claim that "the Board's selective enforcement against Plaintiffs underscores the surveyor-licensing law's vagueness," and suggest that contractors and homeowners also engage in unlawful land surveying without being sanctioned.  (*Id.*)  Third, they argue that the "the vague text and arbitrary application of California's surveying definition will chill First Amendment rights."  (*Id.* at 29.)

Responding to plaintiffs' first argument, defendants maintain that despite plaintiffs' disclaimers, such as "THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR

REPLACE ONE," plaintiffs' site plans show "property lines and structures with measurements between major features" and "products which provide dimensional ties from existing structures to the property lines" and thus fall squarely within California Business & Professions Code § 8726(a)(1) and (3).  (*See* Doc. Nos. 13 at 28; 13-2 at ¶ 9); *see also* Cal. Bus. & Prof. Code § 8726(a)(1), (3) (defining a person practicing land surveying as one who ""[l]ocates, relocates, establishes, reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within the practice of civil engineering" and "[lo]cates, relocates, establishes, reestablishes, or retraces any property line or boundary of any parcel of land, right-of-way, easement, or alignment of those lines or boundaries.").  The court finds defendants' arguments in this regard to be persuasive.  Defendant Richard B. Moore has submitted a declaration in which he included screenshots of MySitePlan.com showing that the website advertised "site plans for permits," offering "three standard site plans which vary in level of detail."  (Doc. No. 13-1 at 17.)  The website's "basic site plans" included "property lines," "primary structures," "lot dimensions," "north arrow," "scale," and "measurements between major features."  (Doc. No. 13-1 at 18.)  A person of ordinary intelligence would have understood from the plain language of the statute—which includes in the definition of land surveying "relocat[ing] . . . the alignment or elevation for any of the fixed works within the practice of civil engineering" and "relocat[ing] . . . any property line or boundary of any parcel of land"—that they cannot distribute or offer to distribute "site plans for permits" or other uses that establish "property lines," "lot dimensions," "scale," or "measurements between major features" without being a licensed land surveyor or being otherwise exempted from the Act and that a disclaimer does not shield them from liability.  Cal. Bus. & Prof. Code §§ 8708, 8726(a)(1), (3), (9).  Accordingly, plaintiffs should have been aware that their conduct qualified as land surveying, and since they were not licensed or exempted, that they were at risk of being sanctioned.  As defendants argue, the fact that MySitePlan.com operated illegally for several years before any enforcement action took place does not render the Act vague.  (Doc. No. 13 at 28).  The Board is responsible for prosecuting violations of the Act "coming to its notice."  Cal. Bus. & Prof. Code § 8790.  According to defendant Moore's declaration, the Board is not set up in a manner that allows it to engage in

17

1   general investigations; rather, the Board's enforcement actions begin when a complaint is filed

2   with it.  (Doc. No. 13-1 at ¶ 7.)

3          There is also no support for plaintiffs' second argument that the Board selectively

4   enforces the Act.  On the contrary, the records defendants submit[5] indicate that the Board

5   investigates all complaints received and has taken enforcement action against other unlicensed

6   persons.  (Doc. No. 13-1 at 128–62.) The Board does not waive its ability to enforce the Act

7   merely because some unlicensed persons have not come to the Board's attention.

8          Defendants do not directly respond to plaintiffs' third argument that the statutory

9   definition of land surveying would chill First Amendment rights and that "non-surveyors like

10  homeowners and contractors may stop creating site plan drawings altogether after learning of the

11  Board's application of the licensing law to Plaintiffs."  (Doc. No. 12-1 at 29, 30.)  Nonetheless,

12  the court finds that plaintiffs expressed concerns are speculative, without support in the record

13  before the court, and in any event, would not be problematic because it would not involve the

14  chilling of protected expression.  Rather, it would involve chilling the type of unlawful land

15  surveying conduct that plaintiffs are purportedly engaged in.  Moreover, even if there might be

16  "uncertainty at [the] statute's margins," plaintiffs have not shown that a "substantial amount of

17  legitimate speech will be chilled" by the Act's definition of land surveying.  *See Cal. Teachers*

18  *Ass'n*, 271 F.3d at 1151, 1152.

19         For these reasons, plaintiffs' challenge to the Act on void for vagueness grounds is not

20  likely to succeed on its merits.

21  /////

22  /////

23

24  _____

    [5]  Defendants seek judicial notice of exhibits 9 through 14 of the declaration of Richard B. Moore.

25  (Doc Nos. 13-1 at 128–62; 13-6 at 3.)  These are records of the Board's final enforcement actions.
    Having reviewed defendants' request, which plaintiffs do not oppose, the court takes judicial

26  notice of these documents for the limited purpose of establishing that the Board has taken
    enforcement against others.  *See* Fed. R. Evid. 201(b)–(c); *Burnell v. Marin Humane Soc'y*, No.

27  14-cv-05635-JSC, 2015 WL 6746818, at *2 n.1 (N.D. Cal. Nov. 5, 2015) (stating that "it is well
    established that a court may take judicial notice of records from other court proceedings, . . .

28  including state judicial and administrative proceedings in particular") (citations omitted).

ii.     Plaintiffs Have Not Clearly Shown That the Act Is Overbroad

Plaintiffs also complain that California Business & Professions Code § 8726(a) is facially unconstitutional because "it is so overbroad that it criminalizes innumerable wholly-innocuous pictures."  (Doc. No. 1 at ¶ 137.)

Under the doctrine of overbreadth, litigants may be "permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."  *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).  However, the Supreme Court has cautioned that invalidating a statute under the First Amendment overbreadth doctrine is "'strong medicine' that is not to be casually employed." *United States v. Sineneng-Smith*, __ U.S. __, 140 S. Ct. 1575, 1581 (2020) (quotations and citations omitted).  A statute is not overbroad just because "one can conceive of some impermissible applications."  *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984).  Rather, particularly in cases like this one where the challenged law regulates conduct and not merely speech, the overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."  *Broadrick*, 413 U.S. at 615; *see also Knox v. Brnovich*, 907 F.3d 1167, 1180 (9th Cir. 2018) ("In the First Amendment context, a party bringing a facial challenge need show only that 'a substantial number of [a law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'") (quoting *United States v. Stevens*, 559 U.S. 460, 473 (2010)); *United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014) ("An overbreadth challenge . . . will rarely succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating).") (citations, internal quotations, and modifications omitted).

According to plaintiffs, the Act's definition of land surveying is overbroad because it "bans a substantial amount of informal maps (based on their content), no matter whether those depictions purport to provide location information with any legally binding effect."  (Doc. No. 14 at 18.)  At the hearing on the pending motion, plaintiffs commented that their site plans are only intended to be used for "non-authoritative" purposes, as the opening to a conversation with

19

permitting agencies, and not to definitively establish property boundaries. In support of their claim that the Act's definition of land surveying is overbroad, plaintiffs pointed to the fact that the definition of land surveying from the National Council of Examiners for Engineering and Surveying ("NCEES") Model Rules excludes non-authoritative activities from its definition of land surveying. (Doc. No. 1 at ¶¶ 91, 92.)[6] They complain that "[t]he Board has never adjusted its own rules or enforcement practices to reflect the NCEES Model Rules. To the contrary . . . the Board enforces California's vague, broad, and outdated statutes, rules, and regulations governing 'land surveying' to their utmost limits." (*Id.* at ¶ 96.) Even if the NCEES Model Rules do not prohibit the dissemination of the type of non-authoritative, preliminary site plans that plaintiffs claim they make, California is not required to follow the NCEES Model Rules. Within the bounds of the U.S. Constitution, it is within each state's police power to determine how to regulate land surveying, if at all.

The Act has the "plainly legitimate sweep" of protecting the public's welfare and maintaining property lines. *See Broadrick*, 413 U.S. at 615. To the extent that the Act may restrict expressive conduct, plaintiffs have failed to show a "substantial number" of instances where it cannot be applied constitutionally in relation to its "plainly legitimate sweep." *See Knox*, 907 F.3d at 1180. Plaintiffs have not cited to any evidence that California Business & Professions Code § 8726 has been enforced against someone engaged in protected speech, despite the Act's long history. (Doc. No. 13-6 at 17, 19 [excerpt of the 1941 Act indicating that the definition of land surveying has changed little since then]). Instead, plaintiffs provide hypothetical prosecutions of protected speech under the Act, such as for drawing "a simple map on a cocktail napkin for a lost tourist." (Doc. No. 12-1 at 24.) Because plaintiffs have not shown that the alleged overbreadth is "real" or "substantial," they are not likely to prevail on the merits

---

[6] At the hearing, defendants' counsel disagreed with plaintiffs' characterization of their site plans as merely being preliminary, arguing instead that the site plan dimensions are relied upon for obtaining building permits. Additionally, David Cox, the Chief Executive Officer of the NCEES, has submitted a declaration stating that the exclusions under the NCEES Model Law do "not extend to providing building permits or depicting fixed works" and that plaintiffs would have violated the NCEES Model Law and Rules if they had been applicable. (Doc. No. 13-5 at ¶¶ 7, 12.)

1   with respect to their overbreadth challenge to the Act.  *See Broadrick*, 413 U.S. at 615; *United*

2   *States v. Phomma*, 561 F. Supp. 3d 1059, 1068 (D. Or. 2021) (holding that the party failed to

3   make the requisite showing that the challenged statute was overbroad because they had not cited

4   any prosecutions under the statute for engaging in protected speech and provided only

5   hypothetical situations).

6         2.   <u>Irreparable Harm</u>

7        The phrase "irreparable harm" is a term of art, meaning a party has suffered a wrong

8   which cannot be adequately compensated by remedies available at law, such as monetary

9   damages.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also E. Bay*

10   *Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) ("Irreparable harm is 'harm for

11   which there is no adequate legal remedy, such as an award for damages.'"); *Los Angeles Mem'l*

12   *Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("The

13   possibility that adequate compensatory or other corrective relief will be available at a later date,

14   in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (quoting

15   *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

16        Following the Supreme Court's decision in *Winter*, one moving for a preliminary

17   injunction must show that irreparable harm is "likely" to occur.  *Ctr. for Food Safety*, 636 F.3d at

18   1172; *All. for Wild Rockies*, 632 F.3d at 1131.  In this regard, a showing of a speculative injury, or

19   mere allegations of an imminent harm that would satisfy standing, are not sufficient to warrant

20   the issuance of a preliminary injunction.  *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d

21   668, 674 (9th Cir. 1988); *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466,

22   472 (9th Cir. 1984).  Rather, a plaintiff must demonstrate that they face a real and immediate

23   threat of an irreparable harm.  *See Caribbean Marine*, 844 F.2d at 674; *Midgett v. Tri-Cnty.*

24   *Metro. Transp. Dist. of Or.*, 254 F.3d 846, 850–51 (9th Cir. 2001).

25        Plaintiffs contend that they will suffer irreparable harm absent this court granting

26   preliminary injunctive relief.  (Doc. No. 12-1 at 30.)  They allege loss of their First Amendment

27   freedoms, which typically constitute irreparable harm.  (*Id.* at 30, 31); *see also Elrod v. Burns*,

28   427 U.S. 347, 373–74 (1976) ("The loss of First Amendment freedoms, for even minimal periods

of time, unquestionably constitutes irreparable injury.") (citing *N.Y. Times Co. v. United States*, 403 U.S. 713 (1971)).  However, the court has already concluded that plaintiffs have failed to demonstrate a likelihood of success on the merits of their First Amendment claim, and, therefore, that harm cannot be considered.

Plaintiffs also complain that without an injunction, a sizeable part of plaintiffs' business will be impacted because MySitePlan.com's sale of site plan drawings in California constitutes approximately 16 percent of its existing total business.  (Doc. Nos. 12-1 at 31; 12-2 at ¶ 81.) They also claim that a preliminary injunction is needed to prevent "permanently losing a satisfied customer base Plaintiffs spent years and money carefully cultivating."  (Doc. No. 12-1 at 31.) Conversely, defendants contend that plaintiffs overstate the impact of the Act on their business due to the incorrect assumption that they cannot operate in California at all without Mr. Crownholm becoming a licensed land surveyor.  (Doc. No. 13 at 29.)  According to defendants, plaintiffs could still do the kinds of drawings that they already make for general informational uses:  "There is no reason why these kinds of drawings necessarily need to indicate for example, measurements between structures and property lines, thereby crossing over from drafting into land surveying."  (*Id.* at 30.)

Even assuming that plaintiffs' assessment is not overstated, these effects do not constitute irreparable harm that would warrant the issuance of a preliminary injunction.  All of the specified harms could be adequately compensated with money damages if plaintiffs were to ultimately succeed in this action.  *See Keyoni Enters., LLC v. Cnty. of Maui*, No. 15-cv-00086-DKW, 2015 WL 1470847, at *9 (D. Haw. Mar. 30, 2015) (citations and quotations omitted) (finding that the plaintiffs had not shown an irreparable injury to warrant a preliminary injunction where the plaintiffs complained "that without an injunction, their businesses would suffer a 75% loss in sales, fines totaling as much as $1,000 per day from the date the NOVs were issued, and ultimately, the potential shuttering of operations.").

The court finds that plaintiffs have not satisfied their burden of showing that they are likely to face imminent irreparable harm absent preliminary injunctive relief.

/////

22

3.     Balance of Equities and Public Interest

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. "In assessing whether the plaintiffs have met this burden, the district court has a duty to balance the interests of all parties and weigh the damage to each." *Stormans*, 586 F.3d at 1138 (internal quotation marks and alteration omitted). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020)) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).

Plaintiffs argue that because they have raised serious First Amendment concerns, the balance of hardships tip sharply in their favor. (Doc. No. 12-1 at 31.) However, having determined that plaintiffs have not raised serious First Amendment concerns, these considerations do not apply.

Rather, California is likely to suffer irreparable harm if the court were to enjoin its enforcement of the Act. *See Maryland v. King,* 567 U.S. 1301, 1303 (2012); *see also Wiese v. Becerra*, 263 F. Supp. 3d 986, 994 (E.D. Cal. 2017) ("The State has a substantial interest . . . in enforcing validly enacted statutes."). In enacting California Business & Professions Code §§ 8726 and 8792, the California legislature aimed to prevent the public from being adversely affected by ignorance and incapacity in the practice of land surveying. To that end, the legislature mandated a certain level of knowledge and skill in the land surveying profession and created the Board to oversee the statutory scheme. Enjoining the law would prevent the state from conducting meaningful oversight of unlicensed land surveying and thus would expose Californians to the consequences of ignorance and incapacity in the pursuit of land surveying. (*See* Doc. Nos. 13-1 at ¶ 4; 13-2 at ¶ 4; 13-3 at ¶ 3.)

Accordingly, under the applicable legal standards, plaintiffs have not satisfied their burden of showing that the balance of the equities and the public interest weighs in favor of granting their request for preliminary injunctive relief.

**CONCLUSION**

For the reasons explained above, plaintiffs' motion for a preliminary injunction (Doc. No. 12) is denied.

IT IS SO ORDERED.

Dated:   **December 23, 2022**

_____
UNITED STATES DISTRICT JUDGE

24