UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN CROWNHOLM, et al.,, <br><br>Plaintiffs, <br><br>v. <br><br>RICHARD B. MOORE, et al., <br><br>Defendants. | No. 2:22-cv-01720-DAD-CKD <br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS <br><br>(Doc. No. 15) |

This matter is before the court on the motion to dismiss filed by Richard B. Moore, Rossana D'Antonio, Michael Hartley, Fel Amistad, Alireza Asgari, Duane Friel, Kathy Jones Irish, Coby King, Elizabeth Mathieson, Paul Novak, Mohammad Qureshi, Frank Ruffino, Wilfredo Sanchez, and Christina Wong ("defendants") on November 18, 2022. (Doc. No. 15.) A hearing by video was held on the pending motion on January 17, 2023. Attorney Paul Avelar appeared for plaintiffs. Deputy Attorney General Sharon O'Grady appeared on behalf of defendants. For the reasons explained below, the court will grant defendants' motion to dismiss.

## BACKGROUND

Plaintiff Crown Capital Adventures, Inc., a Delaware corporation registered as a foreign corporation in California, operates the website MySitePlan.com, which creates and sells site plans in nearly all states of the United States, including California. (Doc. No. 1 at ¶¶ 11, 73.) Plaintiff Ryan Crownholm is the sole shareholder, director, and officer of Crown Capital Adventures, Inc.,

1

1   as well as the sole owner and operator of MySitePlan.com. (*Id.* at ¶¶ 9, 12.) Plaintiff Crownholm
2   is not authorized to practice land surveying in California, since he is neither a licensed surveyor
3   nor a civil engineer with a pre-1982 license. (*Id.* at ¶ 81); *see* Cal. Bus. & Prof. Code § 6731
4   (stating that civil engineers who became licensed before January 1, 1982 may practice land
5   surveying). In California, plaintiffs create site plans using publicly available geographic
6   information system mapping data, satellite imagery, and client-provided information, and then
7   sell them to customers for planning, infrastructure management, general information, and
8   submission to county and municipal building permit departments. (Doc. No. 1 at ¶¶ 2, 123.)
9   Plaintiffs' website includes a disclaimer reading, "THIS IS NOT A LEGAL SURVEY, NOR IS
10  IT INTENDED TO BE OR REPLACE ONE." (*Id.* at ¶ 62.)

11          Defendants are officers and members of the California Board for Professional Engineers,
12  Land Surveyors, and Geologists (the "Board"), a consumer protection agency within the
13  California Department of Consumer Affairs. (*See id.* at ¶¶ 13–18.) The Board regulates the
14  practice of land surveying through its administering of the California Professional Land
15  Surveyors' Act (the "Act"), California Business & Professions Code §§ 8700–8805. (*See id.* at ¶
16  76.) Section 8708 of the Act restricts the practice of land surveying in California to those who
17  have a license or are specifically exempted, and § 8790 grants the Board disciplinary powers to
18  enforce this restriction. Cal. Bus. & Prof. Code §§ 8708, 8790. The Act defines the practice of
19  land surveying to include, among other things, a person who "[l]ocates, relocates, establishes,
20  reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within
21  the practice of civil engineering"; "[d]etermines the information shown or to be shown on any
22  map or document prepared or furnished in connection with any one or more of the functions
23  described in [this statute]"; or "[p]rocures or offers to procure land surveying work for themselves
24  or others." (*Id.* at ¶ 84) (quoting Cal. Bus. & Prof. Code § 8726(a)(1), (7), (9)).
25          On December 28, 2021, the Board issued a citation order to plaintiffs for offering and
26  practicing land surveying without legal authorization, in violation of the Act, on the grounds that
27  the site plans that they offered through MySitePlan.com depicted "the location of property lines,
28  fixed works, and the geographical relationship thereto," and therefore fall "within the definition

1   of land surveying." (*Id.* at ¶¶ 77, 82.) The citation order issued by the Board directed plaintiffs to
2   pay a fine of $1,000 and to "cease and desist from violating [California] Business & Professions
3   Code §§ 8792(a) and (i)." (*Id.* at ¶¶ 79, 81.) California Business & Professions Code § 8792(a)
4   and (i) make it a misdemeanor to "practice[], or offer[] to practice, land surveying in this state" or
5   "manage[] or conduct[] as manager, proprietor, or agent, any place of business from which land
6   surveying work is solicited, performed, or practiced" without legal authorization. (*Id.* at ¶ 83)
7   (quoting Cal. Bus. & Prof. Code § 8792).

8         On September 29, 2022, plaintiffs filed the complaint initiating this action against
9   defendants, in which plaintiffs seek a declaration by the Court that the Act, and in particular,
10  California Business & Professions Code § 8726(a)(1), (7), and (9), and § 8792(a) and (i), is
11  unconstitutional on its face and as applied to them. (*Id.* at 29.) On that basis, plaintiffs also seek
12  to enjoin defendants from enforcing the Act. (*Id.*) Plaintiffs assert the following three causes of
13  action in their complaint.

14        The first claim, brought under 42 U.S.C. § 1983 as an as-applied challenge, asserts that
15  defendants violated the First Amendment of the U.S. Constitution by restraining how plaintiffs
16  create and disseminate non-authoritative site plans to customers "for planning, infrastructure
17  management, general information, and submission to California county and municipal building
18  permit issuing department purposes." (*Id.* at 20–22.) Plaintiffs allege that the way defendants
19  apply the Act is a "content- and speaker-based restriction on the ability to use and generate
20  information." (*Id.* at ¶ 128.) They also contend the "defendants lack a state interest, compelling
21  or otherwise, in preventing Plaintiffs from creating and disseminating non-authoritative site plans
22  to their customers for planning, infrastructure management, general information, and submission
23  to California county and municipal building permit issuing department purposes." (*Id.* at ¶ 129.)

24        Plaintiffs' second claim, brought under 42 U.S.C. § 1983 as a facial challenge, alleges that
25  California Business & Professions Code § 8726 is "unconstitutional on its face because it so
26  vague that there is no way to know that it outlaws picture-drawing and/or it is so overbroad that it
27  criminalizes innumerable wholly-innocuous pictures." (*Id.* at 23.) Plaintiffs allege that § 8726 is
28  void for vagueness by "not providing fair warning to reasonable persons of ordinary intellect that

their conduct is prohibited by the law in question" and specifically that the "use of preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing department purposes is illegal." (*Id.* at ¶¶ 139, 146.) Plaintiffs allege that their customers have submitted thousands of their site plans to California county and municipal permit issuing departments over the years. (*Id.* at ¶ 147.) In addition, plaintiffs allege that "thousands of contractors and homeowners . . . regularly make such site plan drawing[s] and submit them to local jurisdictions, and the local jurisdictions accept[] such site plan drawings from non-surveyors." (*Id.* at ¶ 144.) Furthermore, plaintiffs allege that California Business & Professions Code § 8726(a)(1), (7), and (9) is overbroad because it "criminalizes a vast amount of informal mapmaking and information conveying by anyone without a surveyor's license." (*Id.* at ¶ 143.) They allege:

> [a]nyone who draws a picture of a property by retracing the alignment or elevation for a street or home (such as by copying a GIS map), draws a picture of a building on the earth (such as by copying a GIS map), retraces property lines (such as by copying a GIS map), determines the information to be shown in a drawing of property (such as choosing what information to copy from a GIS map), or offers to do any of those things, without a state license is a criminal.

(*Id.*) Additionally, plaintiffs point to the fact that the definition of land surveying from the National Council of Examiners for Engineering and Surveying ("NCEES") Model Rules excludes non-authoritative activities from its definition of land surveying. (*Id.* at ¶¶ 91, 92.) They allege that "[t]he Board has never adjusted its own rules or enforcement practices to reflect the NCEES Model Rules. To the contrary . . . the Board enforces California's vague, broad, and outdated statutes, rules, and regulations governing to their utmost limits." (*Id.* at ¶ 96.)

Plaintiffs bring their third cause of action under the Fourteenth Amendment's due process and equal protection clauses. (*Id.* at 26.) As unlicensed land surveyors, plaintiffs allege that "[f]orcing Plaintiffs into a regulatory framework meant to regulate professional surveyors results in unjustified barriers to Plaintiffs practicing their own occupation in violation of Due Process." (*Id.* at ¶ 158.) They allege that "[p]laintiffs' occupation is so different from the occupation of professional land surveyors that the government's interest in regulating professional surveyors—

4

ensuring accurate authoritative location survey products—is not implicated" and that the "years of education experience and exams" required to become a licensed land surveyor "are not rationally related to any legitimate government interest as applied to Plaintiffs' non-authoritative site plan drawings." (*Id.* at ¶¶ 157, 160). They further allege that "[o]n information and belief, hundreds, if not thousands, of non-surveyors in California routinely submit site plans based on copied GIS data or Google Maps to county and municipal building permit issuers" and that "county and municipal building permit issuers routinely accept" such site plans. (*Id.* at ¶¶ 51, 52.)

On October 18, 2022, plaintiffs filed a motion for a preliminary injunction, which the court denied on December 27, 2022. (Doc. Nos. 12, 21.) On November 18, 2022, defendants filed the pending motion to dismiss all of plaintiffs' claims. (Doc. No. 15.) On December 2, 2022, plaintiffs filed their opposition to the motion, and on December 12, 2022, defendants filed their reply thereto. (Doc. Nos. 17, 20.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed factual allegations, a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir.

1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019).

When a complaint asserts statutory challenge claims that are subject to the rational basis level of scrutiny, the court may apply the rational basis test at the pleadings stage in ruling on a motion to dismiss, and the court can hypothesize a legitimate government interest.[1]  *See Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 938 (9th Cir. 2000) (affirming the district court's grant of the defendant's motion to dismiss because the challenged statutes passed rational basis review, and accordingly, "the plaintiff [had failed] to state a constitutional claim upon which relief [could] be granted"); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1077–78 (D. Haw. 2021) (dismissing a First Amendment free exercise claim under rational basis review on a motion to dismiss); *HSH, Inc. v. City of El Cajon*, 44 F. Supp. 3d 996, 1008 (S.D. Cal. 2014) ("In applying the rational basis test at the motion to dismiss stage, a court may go beyond the pleadings to hypothesize a legitimate governmental purpose."); *Est. of Vargas v. Binnewies*, No. 1:16-cv-01240-DAD-EPG, 2018 WL 1518568, at *7 (E.D. Cal. Mar. 28, 2018) (dismissing an equal protection claim under rational basis review on a motion to dismiss); *see also Sammon v. New Jersey Bd. of Med. Exam'rs*, 66 F.3d 639, 645 (3d Cir. 1995) ("Determining whether a particular legislative scheme is rationally related to a legitimate governmental interest is a question of law."). Nevertheless, courts have recognized that "rational basis review at the motion to dismiss stage poses unique

---

[1] The court notes that some district courts in the Ninth Circuit have held that applying the rational basis test is not appropriate at the motion to dismiss stage. *See, e.g.*, *Sacramento Cnty. Retired Emps. Ass'n v. Cnty. of Sacramento*, No. 2:11-cv-0355-KJM, 2012 WL 1082807, at *6 (E.D. Cal. Mar. 31, 2012); *FFV Coyote LLC v. City of San Jose*, No. 22-cv-00837-VKD, 2022 WL 15174254, at *7 (N.D. Cal. Oct. 26, 2022). However, given that "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the [government]," *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993), this court finds that it is proper to apply the rational basis test at the motion to dismiss stage, rather than waiting for summary judgment. *See also HSH, Inc.*, 44 F. Supp. 3d at 1008 (stating that when it comes to determining a legislature's purpose, courts may "hypothesize a legitimate governmental purpose" at the motion to dismiss stage, so long as the rational relationship is "real"). Nonetheless, as noted by the Seventh Circuit "[t]he rational basis standard, of course, cannot defeat the plaintiff's benefit of the broad Rule 12(b)(6) standard." *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992). As a result, under Rule 12(b)(6), the court must assume the truth of the complaint's allegations and decline to dismiss the complaint if its allegations, if proven, would overcome the presumption of constitutionality. *Id.* at 460.

challenges." *HSH, Inc.*, 44 F. Supp. 3d at 1008 (citation and internal quotations omitted).  It has been recognized that a tension exists between the more liberal "plausibility" standard under Rule 12(b)(6) and the "heavy presumption of validity of government conduct inherent in the rational basis standard." *Olson v. California*, No. 19-cv-10956-DMG-RAO, 2020 WL 6439166, at *5 (C.D. Cal. Sept. 18, 2020) (quoting *A.J. Cal. Mini Bus, Inc. v. Airport Comm'n of the City & Cnty. of S.F.*, 148 F. Supp. 3d 904, 918–19 (N.D. Cal. 2015)).  Therefore, when applying rational basis at the pleading stage, "[a] court should 'take as true all of the complaint's allegations and reasonable inferences that follow,' but the 'plaintiff must allege facts sufficient to overcome the presumption of rationality'" that applies to government conduct.  *HSH, Inc.*, 44 F. Supp 3d at 1008 (quoting *Wroblewski*, 965 F.2d at 460).

## ANALYSIS

In their pending motion, defendants seek dismissal of all three of plaintiffs' causes of action due to plaintiffs' failure to state a claim under Rule 12(b)(6).  (Doc. No. 15-1 at 10.)[2]  The court will address each of plaintiffs' claims under the Rule 12(b)(6) standard in turn.

**A.     First Amendment Free Speech Claim**

In moving to dismiss plaintiffs' First Amendment claim, defendants argue that "the Act regulates conduct, and not protected speech, and as such it is subject to deferential rational basis review, which it easily passes."  (Doc. No. 15-1 at 23.)  The court agrees.  In its order denying plaintiff's motion for a preliminary injunction, the court determined that the Act's restrictions on land surveying regulate professional *conduct* by requiring a license and this requirement does not impose more than an incidental burden on speech.  (Doc. No. 21 at 11–12.)  Accordingly, the court concluded that rational basis review is the appropriate standard of review, consistent with the Ninth Circuit's recent decision in *Tingley v. Ferguson*, 47 F.4th 1055, 1077, 1078 (9th Cir. 2022).  (*Id.* at 12.)

---

[2] Defendants also move to dismiss the complaint pursuant to the *Younger* abstention doctrine, or in the alternative, to stay this action pursuant to the *Pullman* abstention doctrine. (Doc. No. 15-1 at 10.)  In the court's order denying plaintiffs' motion for a preliminary injunction, the court explained why the *Younger* and *Pullman* abstention doctrines do not apply in this situation, and the court will not repeat its reasoning, which remains unchanged, here.  (Doc. No. 21 at 4–7.)

1          Under rational basis review, California's land surveying law is "accorded a strong
2   presumption of validity." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993). The Act is
3   constitutional if (1) it has a "legitimate governmental purpose" and (2) there is a "rational
4   relationship between" that purpose and the means chosen by the government to achieve that
5   purpose. *Id.* at 320. Taking as true all the factual allegations of plaintiffs' complaint and the
6   reasonable inferences that follow, the court applies the facts in light of the rational basis standard.
7   *See HSH, Inc.*, 44 F. Supp 3d at 1008.

8           Here, the challenged provisions of the Act satisfy both prongs of the rational basis test.
9   The Act specifically states that its licensing requirement advances California's interest in
10  "safeguard[ing] property and public welfare." Cal. Bus. & Prof. Code § 8708. California's state
11  legislature has found that "[u]nlicensed activity in the professions and vocations regulated by the
12  Department of Consumer Affairs is a threat to the health, welfare, and safety of the people of the
13  State of California." Cal. Bus. & Prof. Code § 145(a). There is no question that states may enact
14  licensing laws to protect the public from the consequences of ignorance or incapacity in the
15  pursuit of professions. *See Hawker v. New York*, 170 U.S. 189, 195 (1898) ("It is within the
16  power of the legislature to enact such laws as will protect the people from ignorant pretenders,
17  and secure them the services of reputable, skilled, and learned men.") (citation omitted).

18          The Act's definition of land surveying and its licensing requirement are rationally related
19  to California's interest in protecting the public from incompetent people and entities
20  disseminating land surveying products. California's legislature's decision not to create a
21  licensing exception for what plaintiffs describe as "non-authoritative" uses is rationally related to
22  the state's goals of both protecting consumers and ensuring that building permits are not issued
23  based on incorrect property lines. Moreover, the licensing scheme helps ensure the competence
24  of those who render land surveying services by requiring them to meet numerous requirements,
25  which include multiple years of education and experience and four examinations. The Board
26  protects consumers from the negligence of licensed land surveyors by disciplining them and
27  suspending and revoking licenses. (Doc. No. 15-1 at 27.) The Board also protects consumers
28  from unqualified land surveyors by issuing citation orders against persons and entities that offer

8

illegal and unlicensed services when those activities have been brought to the Board's attention. (*Id.*)

Given this legitimate governmental purpose, the complaint's allegations are insufficient to overcome "the presumption of rationality" that applies to government conduct. *See Olson v. California*, 2020 WL 6439166, at *5; *HSH, Inc.*, 44 F. Supp 3d at 1008. Plaintiffs do allege that "various California county and municipal building permit issuers know that these site plans are not prepared by licensed surveyors and accept them because the permit issuers do not need legal surveys for their purposes," and "just need a general picture of the site." (*See* Doc. No. 1 at ¶¶ 41, 75.) Plaintiffs further allege that "[n]o building department or client has ever complained to Plaintiffs about MySitePlan.com site plan drawings." (*Id.*) But these facts, accepted as true, are insufficient to show that California's definition of land surveying is irrational or fails to serve the state's legitimate interests. Even if some permitting agencies accept unauthorized land surveys, plaintiffs' complaint does not negate California's rational basis for making these products (like plaintiffs' site plan drawings) subject to the licensing scheme and giving the Board power to enforce such violations of the Act.

Because plaintiffs have alleged insufficient facts to support a plausible claim that the Act's land surveying definition is irrational, the court will grant defendants' motion to dismiss plaintiffs' First Amendment claim.

**B.    Vagueness and Overbreadth Claim**

Plaintiffs' second claim, brought under 42 U.S.C. § 1983 as a facial challenge, asserts that California Business & Professional Code § 8726 is "unconstitutional on its face because it so vague that there is no way to know that it outlaws picture-drawing and/or it is so overbroad that it criminalizes innumerable wholly-innocuous pictures." (Doc. No. 1 at 23.)

     1.     Void for Vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The vagueness doctrine reflects two related requirements. First, "laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act

9

accordingly." *Id.* Ordinarily, all that is required to satisfy this due process concern is "'fair notice' of the conduct a statute proscribes." *Sessions v. Dimaya*, __U.S.__, 138 S. Ct. 1204, 1212 (2018). "But where First Amendment freedoms are at stake, an even greater degree of specificity and clarity of laws is required, and courts ask whether language is sufficiently murky that speakers will be compelled to steer too far clear of any forbidden areas." *Edge v. City of Everett*, 929 F.3d 657, 664 (9th Cir. 2019) (internal citations, quotations, and brackets omitted). Second, the vagueness doctrine demands that laws "provide explicit standards for those who apply them" in order to avoid "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108. Thus, when a statute's enforcement depends on a "completely subjective standard" it is constitutionally suspect. *Id.* at 113.

As noted, "vagueness concerns are more acute when a law implicates First Amendment rights." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001). But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989). Rather, "[t]he touchstone of a facial vagueness challenge in the First Amendment context . . . is not whether *some* amount of legitimate speech will be chilled; it is whether a *substantial* amount of legitimate speech will be chilled." *Cal. Teachers Ass'n*, 271 F.3d at 1152. It follows that "uncertainty at a statute's margins will not warrant facial invalidation if it is clear what the statute proscribes 'in the vast majority of its intended applications.'" *Id.* at 1151 (quoting *Hill v. Colorado*, 530 U.S. 703, 733 (2000)). At bottom, facial invalidation of a statute is "strong medicine" that should be employed "sparingly and only as a last resort." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). Thus, the party seeking facial invalidation, even in the First Amendment context, faces a "heavy burden" in advancing their claim. *Id.* Whether a statute is unconstitutionally vague "'is a question of law' . . . that may be resolved on a motion to dismiss." *Mayfair House, Inc. v. City of W. Hollywood*, No. 13-cv-7112-GHK-RZ, 2014 WL 12599838, at *3 (C.D. Cal. May 5, 2014) (quoting *United States v. Erickson*, 75 F. 3d 470, 475 (9th Cir. 1996)).

/////

As noted above, the Act defines the practice of land surveying to include, among other things, a person who "[l]ocates, relocates, establishes, reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within the practice of civil engineering"; "[d]etermines the information shown or to be shown on any map or document prepared or furnished in connection with any one or more of the functions described in [this statute]"; or "[p]rocures or offers to procure land surveying work for themselves or others." Cal. Bus. & Prof. Code § 8726(a)(1), (7), (9).

Based on this plain language of the statute, the court finds that § 8726 is not unconstitutionally vague. The court is not persuaded by plaintiffs' contention that this statute is void for vagueness by "not providing fair warning to reasonable persons of ordinary intellect that their conduct is prohibited by the law in question" and by not "provid[ing] fair warning to [p]laintiffs that their use of preexisting public GIS data and other information to create and disseminate non-authoritative site plans to their customers for planning, infrastructure management, general information, and submission to California county and municipal building permit issuing department purposes is illegal." (*See* Doc. No. 1 at ¶¶ 139, 146.) In the court's views, a person of ordinary intelligence would understand from the plain language of the statute that, absent a license, they cannot distribute or offer to distribute site plans to customers for building permits if those site plans retrace or reestablish boundary lines from preexisting public geographic information system data, and also that inclusion of a disclaimer does not shield them from liability. Notably, § 8726(a)(1) does not limit itself to the original surveyor who established a boundary line for the first time. Most of the words in § 8726(a)(1) describing what constitutes surveying begin with the prefix "re," commonly understood to mean "again," attached to the root word: locate, relocate (locate again), establish, reestablish (establish again), or retrace (trace again). Moreover, nowhere does the statute provide that a disclaimer, such as "this is not a legal survey," would serve to exclude that activity from the definition of land surveying or the licensing requirement. Accordingly, plaintiffs' factual allegations, accepted as true, are insufficient to show that the Act does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at

108. Indeed, the Act's text is sufficiently clear that plaintiffs should have known their conduct qualified as land surveying under California law and is prohibited because plaintiffs were not licensed or exempted, and thus that they were at risk of being sanctioned pursuant to the Act's enforcement provisions.

As defendants argue, the fact that plaintiffs and other non-licensed persons have violated the statute without being cited for doing so does not render the Act vague. (*See* Doc. No. 15-1 at 30.) The Board is responsible for prosecuting violations of the Act "coming to its notice." Cal. Bus. & Prof. Code § 8790. The Board does not waive its enforcement authority merely because some unlicensed persons violating the provisions of the Act have not come to the Board's attention.

Accordingly, defendants' motion to dismiss plaintiffs' void for vagueness claim will also be granted.

2. Overbreadth

Plaintiffs' overbreadth claim presents a steep hurdle; the Supreme Court has cautioned that invalidating a statute under the First Amendment overbreadth doctrine is "'strong medicine' that is not to be 'casually employed.'" *United States v. Sineneng-Smith*, __ U.S. __, 140 S. Ct. 1575, 1581 (2020) (citation omitted). A statute is not overbroad just because "one can conceive of some impermissible applications." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). Rather, particularly in cases like this one where the challenged law regulates conduct and not merely speech, the asserted overbreadth must "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Taxpayers for Vincent*, 466 U.S. at 801. Because the purpose of the overbreadth doctrine is to prevent the chilling of protected speech, "[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

Because the court has already determined that the Act's definition of land surveying regulates professional conduct with no more than an incidental burden on speech, plaintiffs face a significant obstacle in stating a claim upon which relief can be granted in this regard. *See Hicks*, 539 U.S. at 124; (Doc. No. 21 at 11–12.) The court finds that plaintiffs' allegations do not support an overbreadth challenge. Plaintiffs' allegations that the Act "criminalizes a vast amount of informal mapmaking and information conveying by anyone without a surveyor's license" and, for example, that "[a]nyone who draws a picture of a property by retracing the alignment or elevation for a street or home (such as by copying a GIS map) . . . without a state license is a criminal" are insufficient to state a cognizable claim. (*See* Doc. No. 1 at ¶ 143). Even accepting these allegations as true, they do not demonstrate that there is a realistic or actual danger that the statute will infringe upon recognized First Amendment protections. *See Taxpayers for Vincent*, 466 U.S. at 801. Plaintiffs have not alleged that the Act has been enforced against someone engaged in protected speech (such as an artist whose painting retraces the alignment or elevation of a house), let alone that such an application constitutes a "substantial" number of enforcement actions. *See Broadrick*, 413 U.S. at 615 ("Although . . . laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.").

Even if the NCEES Model Rules do not prohibit the dissemination of the type of non-authoritative, preliminary site plans that plaintiffs contend they make, California is not required to follow the NCEES Model Rules. Within the bounds of the U.S. Constitution, it is within each state's police power to determine how to regulate land surveying, if at all. The California legislature has chosen to proscribe the dissemination of maps depicting fixed works and geographical relationships, and it does not make an exception for situations where a person's land survey includes a disclaimer stating, "THIS IS NOT A LEGAL SURVEY, NOR IS IT INTENDED TO BE OR REPLACE ONE." That is, the statute does not support plaintiffs' view that a disclaimer of this sort renders their maps "informal" and "non-authoritative."

In addition, to support a claim of overbreadth, the party challenging the statute must identify a "significant difference between their claim that the [statute] is invalid on overbreadth grounds and their claim that it is unconstitutional when applied to their [own conduct]." *Taxpayers for Vincent*, 466 U.S. at 802, 803 (declining to entertain an overbreadth challenge where the "appellees' attack on the ordinance is basically a challenge to the ordinance as applied to their activities"). Here, plaintiffs "have failed to identify any significant difference" between their claim that the Act's definition of land surveying is invalid on overbreadth grounds and their claim that the Act is unconstitutional when applied to their conduct. *See id.* at 802. In both scenarios, plaintiffs' allegations and arguments are that the Act should not regulate "informal" or "non-authoritative" site plans, regardless of whether those plans are offered by plaintiffs (plaintiffs' as-applied challenge) or by other non-licensed persons "not before the Court" (plaintiffs' facial overbreadth challenge). *See id.* at 801.

Accordingly, defendants' motion to dismiss plaintiffs' facial overbreadth claim will be granted.

**C.     Fourteenth Amendment Claim**

Plaintiffs bring their third claim under the Fourteenth Amendment's due process and equal protection clauses. (Doc. No. 1 at 26.) The court will address each of these theories in turn.

1.     <u>Substantive Due Process</u>

"[T]he Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). However, the due process clause does not guarantee an unrestricted right to practice an occupation. *See id.* at 292 (clarifying that the right to choose one's field of private employment is "nevertheless subject to reasonable government regulation"); *Dent v. West Virginia*, 129 U.S. 114, 121–22 (1889) (holding "there is no arbitrary deprivation" of the right of plaintiff to "practice his profession" (medicine) "where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society"); *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 486–87 (1955) (holding that an Oklahoma law making it unlawful for an optician to fit lenses without a prescription from a licensed optometrist or

ophthalmologist did not violate the optician's due process right to do business); *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021), *cert. denied sub nom. Slidewaters LLC v. Wash. Dep't of Lab. & Indus.*, __U.S.__, 142 S. Ct. 779 (2022) ("The right to pursue a common calling is not considered a fundamental right."). Ordinary economic and commercial regulations, such as the land surveying licensing scheme at issue here, are generally subject only to rational basis review. *See, e.g., Hodel v. Indiana*, 452 U.S. 314, 331–32 (1981); *Slidewaters*, 4 F.4th at 758. Indeed, plaintiffs concede that the rational basis test is appropriately applied to their Fourteenth Amendment claim. (Doc. No. 17 at 29.)

"The proper test for judging the constitutionality of statutes regulating economic activity is whether the legislation bears a rational relationship to a legitimate state interest." *Slidewaters*, 4 F.4th at 758 (internal quotations, citations, and modifications omitted). Under this standard, plaintiffs must show that California's actions are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or general welfare." *Id.* (quoting *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)) (citation omitted); *see also Hodel*, 452 U.S. at 331–32 ("Social and economic legislation . . . that does not employ suspect classifications or impinge on fundamental rights . . . carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality."). Plaintiffs must negate "every conceivable basis which might support it." *Beach Commc'ns, Inc.*, 508 U.S. at 314–15; *see also Fields v. Legacy Health Sys.*, 413 F.3d 943, 955 (9th Cir. 2005) ("The challenger bears the burden of negating every conceivable basis which might support the legislative classification, whether or not the basis has a foundation in the record.").

Here, plaintiffs have not met their burden of alleging facts sufficient to show that California's actions are "clearly arbitrary and unreasonable." *Slidewaters*, 4 F.4th at 758. California, pursuant to its police power, has a legitimate interest in regulating those who practice land surveying within its borders to ensure that they provide at least minimally competent services to the public and to avoid building permits being issued based on unreliable data. *See Bradford v. State of Hawaii*, 846 F. Supp. 1411, 1420 (D. Haw. 1994) (upholding the use of Hawaiian language terms in the state's land surveyor's license exam under the rational basis test

in response to an equal protection and substantive due process challenge); *Martinez v. Goddard*, 521 F. Supp. 2d 1002, 1009–11 (D. Ariz. 2007) (granting defendants' motion to dismiss, finding that Arizona's contractor licensing law did not violate the Fourteenth Amendment's due process and equal protection clauses, as analyzed under the rational basis test). California's interest in this regard is furthered by requiring those practicing land surveying to have a license, even if land surveys are only used during the early stages in the permitting process and even if the site plans do not purport to be authoritative.

Although plaintiffs allege that the "years of education experience and exams" required to become a licensed land surveyor "are not rationally related to any legitimate government interest as applied to Plaintiffs' non-authoritative site plan drawings," (Doc. No. 1 at ¶ 160), this is merely an unsupported conclusion on plaintiffs' part. Plaintiffs contend that their site maps should not be deemed as legal surveys because they are "non-authoritative," i.e., the site maps contain a disclaimer that they are not legal surveys. (Doc. No. 17 at 24.) In so arguing, plaintiffs suggest that it is not reasonable to rely on these "non-authoritative" site plans given that they disclaim that they are legal surveys. (*Id.* at 23, 24). Thus, according to plaintiffs, because their "non-authoritative" site maps should not be defined as legal surveys, there is no rational basis to subject plaintiffs to the same qualifications as land surveyors. (*Id.* at 24.) Plaintiffs' argument is unavailing. California has rationally chosen not to include the exemption to its land surveying definition that plaintiffs wish to have included in the Act; under California law, what plaintiffs characterize as "non-authoritative" maps *are* nevertheless land surveys regulated by the Act. Moreover, plaintiffs' argument that there is no rational basis to make the distribution of such land surveys unlawful (if done without a license) is undercut by plaintiffs' allegations that their customers use their site maps for planning and infrastructure management and local government agencies routinely accept these site maps for purposes of issuing permits. (Doc. No. 1 at ¶ 39, 40, 51, 52, 127.)

Plaintiffs' complaint does not plausibly allege that the government has acted irrationally in regulating land surveying. Rather, their claim appears to simply amount to a disagreement with California's land surveying regulations. However, as the Ninth Circuit recently noted,

"government regulation does not constitute a violation of constitutional substantive due process rights simply because the businesses or persons to whom the regulation is applied do not agree with the regulation or its application." *Slidewaters*, 4 F.4th at 759.

For these reasons, the court will grant defendants' motion to dismiss plaintiffs' Fourteenth Amendment substantive due process claim.

2. Equal Protection

Plaintiffs do not allege they were subject to discrimination based on membership in a protected class. Rather, it appears that plaintiffs assert a "class of one" claim, arguing that they are being treated differently than others similarly situated to them. *See N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) ("When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."). "In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that the [government] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id.* "To succeed, 'plaintiffs must demonstrate that they were treated differently than someone who is *prima facie* identical in all relevant respects.'" *Occhionero v. City of Fresno*, No. 1:05-cv-1184-LJO-SMS, 2008 WL 2690431, at *9 (E.D. Cal. July 3, 2008), *aff'd*, 386 F. App'x 745 (9th Cir. 2010) (citation omitted).

Plaintiffs do not adequately plead that defendants violated their right to equal protection. It is insufficient for plaintiffs to allege that "[o]n information and belief, hundreds, if not thousands, of non-surveyors in California routinely submit site plans based on copied GIS data or Google Maps to county and municipal building permit issuers." (Doc. No. 1 at ¶ 51.) Plaintiffs must also allege that those individuals' site maps similarly violated the statute, were reported to the Board, and despite that, defendants chose only to investigate and cite plaintiffs. *See Chico Scrap Metal, Inc. v. Raphael*, 830 F. Supp. 2d 966, 975 (E.D. Cal. 2011), *aff'd and remanded sub nom. Chico Scrap Metal, Inc. v. Robinson*, 560 F. App'x 650 (9th Cir. 2014). Plaintiffs have not done that. To reiterate, the Board is only responsible for prosecuting violations of the Act "coming to its notice." Cal. Bus. & Prof. Code § 8790. Thus, even if, as plaintiffs allege, "hundreds, if not thousands, of non-surveyors in California routinely submit site plans based on

copied GIS data or Google Maps to county and municipal building permit issuers" (Doc. No. 1 at ¶ 51), if those individuals were not reported to the Board, no intentional discrimination—and hence no denial of equal protection—plausibly occurred. *See N. Pacifica LLC*, 526 F.3d at 486; *Daniel v. Richards*, No. 13-cv-02426-VC, 2014 WL 2768624, at *2 (N.D. Cal. June 18, 2014) (granting a motion to dismiss the plaintiff's equal protection claim where the plaintiff did not allege facts that would demonstrate that any difference in treatment was intentionally directed at him). Furthermore, in support of their motion to dismiss, defendants have provided the court with copies of the Board's records, which show that the Board has enforced the Act against others similarly situated to plaintiffs. (Doc. No. 15-2 at 119–53.)[3]

For these reasons, plaintiffs' complaint fails to state a claim against defendants for violation of the equal protection clause, and defendants' motion to dismiss this claim will be granted as well.

**D.     Leave to Amend**

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, courts will generally grant leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted). At the hearing on the motion to dismiss, the court repeatedly invited plaintiffs to seek leave to amend their complaint. However, plaintiffs declined the opportunity to amend the complaint and instead chose to stand on their operative complaint. Accordingly, the court concludes that the granting of leave to amend would be futile.

/////

---

[3] Defendants seek judicial notice of the records of the Board's final enforcement actions. (Doc. No. 15-2 at 119–53.) Having reviewed defendants' request, which plaintiffs do not oppose, the court takes judicial notice of these documents for the limited purpose of establishing that the Board has taken enforcement against others. *See* Fed. R. Evid. 201(b)–(c); *Burnell v. Marin Humane Soc'y*, No. 14-cv-05635-JSC, 2015 WL 6746818, at *2 n.1 (N.D. Cal. Nov. 5, 2015) (stating that "it is well established that a court may take judicial notice of records from other court proceedings, . . . including state judicial and administrative proceedings in particular") (citations omitted).

**CONCLUSION**

For the reasons explained above:

1. Defendants' request for judicial notice (Doc. No. 15-2) is granted;
2. Defendants' motion to dismiss (Doc. No. 15) is granted in its entirety, without leave to amend;
3. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 23, 2023**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE